JACOB BLANCO
7083223

FRESNO COUNTY JAIL
PO BOX 872

FRESNO, CA, 93712
DEFENDANT IN PRO PRIA PERSONA

FILED

JAN 30 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
             DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      PLAINTIFF,

      V.

JACOB BLANCO,

      DEFENDANT,

CASE NO. 1:17-CR-00140 LJO/SKO

MOTION TO SUPPRESS

REQUEST FOR EVIDENTIARY HEARING

JUDGE: HON. LAWRENCE J. O'NEILL

    DEFENDANT JACOB BLANCO ("DEFENDANT") HEREBY DOES MOVE THE HONORABLE LAWRENCE J. O'NEILL, UNITED STATES CHIEF DISTRICT JUDGE TO SUPPRESS: (1) ANY AND ALL EVIDENCE OBTAINED FROM CALIFORNIA STATE SEARCH WARRANT AUTHORED BY DETECTIVE SCOTT SCHWAMB ON APRIL 19, 2017 AND EXECUTED ON APRIL 20, 2017; AND (2) ANY AND ALL EVIDENCE OBTAINED FROM CALIFORNIA STATE SEARCH WARRANT AUTHORED BY DETECTIVE DAVID WILKIN ON MAY 2, 2017 AND EXECUTED ON MAY 5, 2017. DEFENDANT ALSO RESPECTFULLY REQUESTS AN EVIDENTIARY HEARING IN THIS MATTER PURSUANT TO FRANKS V. DELAWARE, 438 US 154, 98 S.CT 2674, 57 L.ED 2D 667 (1978) AS DEFENDANT HAS PRESENTED A SUFFICIENT SHOWING WITHIN THE INSTANT MOTION SUCH THAT AN EVIDENTIARY HEARING SHOULD BE CONDUCTED.

    ADDITIONALLY, DEFENDANT MOVES THIS COURT TO ORDER THE RETURN OF ALL PROPERTY AND ITEMS SEIZED WHICH ARE NOT RELEVANT TO THE CRIMINAL MATTER AND DIRECTLY A PART OF THE INVESTIGATION.

RECEIVED

JAN 30 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

1    A COPY OF BOTH SEARCH WARRANTS AND THEIR AFFIDAVITS ARE AS FOLLOWS: DET SCHWAMBS WARRANT AND

2    AFFIDAVIT AS   EXHIBIT A.  DET WILKINS WARRANT AND AFFIDAVIT AS EXHIBIT B.

3         THIS MOTION IS MADE ON THE GROUNDS THAT SUCH USE OF THE AFOREMENTIONED EVIDENCE, AND ANY

4    FRUITS DERIVED THEREFROM WOULD BE IN VIOLATION OF DEFENDANTS RIGHTS UNDER THE FOURTH AMENDMENT

5    OF THE CONSTITUTION OF THE UNITED STATES AND IS BASED ON THE COURTS FILE, THE ATTACHED MEMORANDUM OF

6    POINTS AND AUTHORITIES, AND SUCH FURTHER LAW AND EVIDENCE AS MAY BE PRESENTED AT THE TIME OF

7    THE HEARING AND IN ANY SUBSEQUENT WRITTEN OR ORAL SUBMISSIONS.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I      BRIEF BACKGROUND ...................................................................... 1

II.    THE LAW ......................................................................................... 2

III    ARGUMENT ...................................................................................... 7

      A.    NASSAU BRIEF ..................................................................... 7

      B.    DET SCHWAMBS WARRANT AFFIDAVIT .......................... 8

        I.    DET SCHWAMBS AFFIDAVIT CONTAINED NUMEROUS MATERIAL FALSE STATEMENTS AND OMISSIONS ................................................. 8

        II.    DET SCHWAMBS AFFIDAVIT INCLUDES A GLARING DEFICIENCY, LEADING TO THE AUTHORIZATION TO SEIZE RECORDS FOR AN IP ADDRESS NEVER ASSOCIATED WITH THE ACCOUNT ........................................... 13

      C.    DET WILKINS WARRANT AFFIDAVIT ................................ 14

        I.    DET WILKINS AFFIDAVIT CONTAINED A MATERIAL FALSE STATEMENT AND OMISSION ............................................................................. 14

        II.    DET WILKINS AFFIDAVIT CONTAINS AN UNTRACED IP ADDRESS, CONCLUSORY STATEMENTS AND UNDER NINTH CIRCUIT PRECEDENT, FOUNDATIONLESS EXPERT OPINION. ........................................................... 16

        III.    THE SEARCH WAS UNREASONABLE BECAUSE NEW MATERIAL FACTS WERE UNCOVERED BEFORE THE EXECUTION OF THE WARRANT THAT UNDERMINED THE ORIGINAL PROBABLE CAUSE DETERMINATION ........................ 20

IV.    CONCLUSION .................................................................................. 23

TABLE OF AUTHORITIES

CASES

BROAM V. BOGAN
  323 F.3D 1023 (9TH CIR 2003) — 4, 10, 12

CHISM V. WASHINGTON STATE
  661 F.3D 380 (9TH CIR 2011) — 2, 4, 9, 10, 12, 13

EWING V. CITY OF STOCKTON
  588 F.3D 1218 (9TH CIR 2009) — 4

FRANKS V. DELAWARE
  438 US 154, 98 S.CT 2674, 57 L.ED 2D 667 (1978) — 4

GROH V. RAMIREZ
  540 US 551 (2004) — 11

HERRING V. UNITED STATES
  129 S.CT. 695 (2009) — 6

ILLINOIS V. GATES
  462 US 213, 103 S.CT 2317, 76 L.ED 2D 527 (1983) — 2

JOHNSON V UNITED STATES
  333 US 10, 68 S.CT 367, 92 L.ED 436 (1948) — 18

MADIVALE V. SAVAIKO
  117 F.3D 1321 (11TH CIR 1997) — 5, 10, 12

MAPP V. OHIO
  367 US 643, 81 S.CT 1684, 6 LED 2D 1081 (1961) — 5

WEEKS V. UNITED STATES
  232 US 383, 34 S.CT 341, 58 L.ED 652 (1914) — 5

UNITED STATES V. BOWLING
  900 F.2D 926 (6TH CIR 1990) — 18

UNITED STATES V. CRAIGHEAD
  539 F.3D 1073 (9TH CIR 2008) — 10, 15

UNITED STATES V. CREWS
  502 F.3D 1130 (9TH CIR 2007) — 9, 15

UNITED STATES V. DAVIS
  714 F.2D 896 (6TH CIR 1983) — 9, 11

UNITED STATES V. DELEON
  955 F.2D 1346 (9TH CIR 1992) — 4

UNITED STATES V. DOZIER
  844 F.2D 701 (9TH CIR 1988) — 5

UNITED STATES V. FLORES
  697 F.2D 173 (9TH CIR 1982) — 10, 12

UNITED STATES V. GANN
  732 F.2D 714 (9TH CIR 1984) — 3, 15

UNITED STATES V. GARCIA-ZAMBRANO
  530 F.3D 1049 (10TH CIR 2008) — 10

UNITED STATES V. GOURDE
  440 F.3D 1065 (9TH CIR 2006) (EN BANC) — 2

UNITED STATES V. GIL
  58 F.3D 1414 (9TH CIR 1995) — 2

UNITED STATES V. GRANT
  682 F.3D 827 (10TH CIR 2012) — 3, 15

UNITED STATES V. GYPSUM CO.
  333 US 364, 92 L.ED 746, 68 S.CT 525 (1948) — 5

UNITED STATES V. JACOBS
  986 F.2D 1231 (8TH CIR 1983) — 19

iii

UNITED STATES v. JENNEN
  596 F.3D 594 (9TH CIR 2009) ........................................ 3,17

UNITED STATES v. JOB
  871 F.3D 852 (9TH CIR 2017) ........................................ 5

UNITED STATES v. KELLEY
  482 F.3D 1047 (9TH CIR 2007) ...................... 2,3,5,15,80

UNITED STATES v. LEON
  468 US 897, 104 S.CT 3405, 82 L.ED 2D 677 (1984) .......... 5

UNITED STATES v. LUONG
  470 F.3D 898 (9TH CIR 2006) ........................................ 6

UNITED STATES v. MARIN - BUITRAGO
  734 F.2D 889 (2D CIR 1984) ......................................... 3,17

UNITED STATES v. MARTINEZ-GARCIA
  397 F.3D 1205 (9TH CIR 2005) ...................................... 4

UNITED STATES v. NEPSTEAD
  424 F.2D 269 (9TH CIR 1970) ........................................ 19

UNITED STATES v. PERKINS
  850 F.3D 1109 (9TH CIR 2017) ...................................... 10,12

UNITED STATES v. RUIZ
  758 F.3D 1144 (9TH CIR 2014) ...................................... 5,10,12

UNITED STATES v. SPENCER
  530 F.3D 1003, 382 US APP D.C. 90 (D.C. CIR 2008) ......... 19

UNITED STATES v. STANERT
  762 F.2D 775 (9TH CIR 1982) ....................................... 4

UNITED STATES v. UNDERWOOD
  725 F.3D 1076 (9TH CIR 2013) ..................................... 2,14,16

UNITED STATES v. WEBER
  923 F.2D 1338 (9TH CIR 1990) ..................................... 2,3,16

MEMORANDUM OF POINTS AND AUTHORITIES

I.     BRIEF BACKGROUND

ON APRIL 3, 2017 A REPORT WAS FILED WITH DET. CONSTANTINO OF THE NASSAU COUNTY POLICE DEPARTMENTS SPECIAL VICTIMS UNIT (NEW YORK). IT ALLEGED THAT WHILE USING THE MUSICALLY APPLICATION, A MINOR WAS CONTACTED BY A USER NAMED "SUMMERMEOO1" AND WAS COAXED INTO SENDING SEXUALLY EXPLICIT MATERIAL TO THE USER.

ON APRIL 4, 2017 DET CONSTANTINO AUTHORED A SUBPOENA TO MUSICALLY FOR SUBSCRIBER INFORMATION.

ON APRIL 5, 2017, MUSICALLY RESPONDED WITH SUBSCRIBER INFORMATION FOR "SUMMERMEOO1". USING THIS INFORMATION, DET CONSTANTINO DETERMINED THAT ONE OF IP ADDRESSES ASSOCIATED WITH THE ACCOUNT LOCATED BACK TO FRESNO, CALIFORNIA.

ON APRIL 11, 2017, THE CENTRAL CALIFORNIA INTERNET CRIMES AGAINST CHILDREN ("ICAC") TASK FORCE WAS CONTACTED BY DET. CONSTANTINO. HE PROVIDED THE AFOREMENTIONED INFORMATION.

ON APRIL 19, 2017, USING THE PROVIDED INFORMATION, DET SCHWAMB OF THE FRESNO COUNTY SHERIFF'S DEPARTMENT AUTHORED A SEARCH WARRANT FOR THE SUBSCRIBER INFORMATION PERTAINING TO THE COMCAST CABLE COMMUNICATIONS IP ADDRESSES 75.150.2.223 AND 73.192.178.95.

HE SUBMITTED IT TO COMCAST CABLE COMMUNICATIONS ON APRIL 20, 2017.

ON APRIL 21, 2017, COMCAST RESPONDED STATING THAT THE IP ADDRESS 73.192.178.95 HAS A SERVICE ADDRESS OF 369 W. LEXINGTON #204, FRESNO, CA. THE SECOND IP ADDRESS DID NOT RETURN ANY RECORDS.

ON MAY 2, 2017 DET WILKIN AUTHORED, SUBMITTED AND RECEIVED AUTHORIZATION FOR A SEARCH WARRANT FOR THIS RESIDENCE. IT WAS EXECUTED ON MAY 5, 2017.

THE INDICTMENT CHARGES DEFENDANT WITH SIX COUNTS. COUNTS 1 THROUGH 5 ALLEGES 18 USC § 2251(a) AND(e) - SEXUAL EXPLOITATION OF CHILDREN AND ATTEMPT. COUNT 6 ALLEGES 18 USC §2252 (a)(2) - DISTRIBUTION OF A VISUAL DEPICTION OF A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT.

II.    THE LAW

THE FOURTH AMENDMENT, WHICH PROHIBITS "UNREASONABLE SEARCHES AND SEIZURES", PROVIDES THAT "NO WARRANTS SHALL ISSUE BUT UPON PROBABLE CAUSE, SUPPORTED BY OATH OR AFFIRMATION, AND PARTICULARLY DESCRIBING THE PLACE TO BE SEARCHED, AND THE PERSON OR THINGS TO BE SEIZED." U.S. CONST. IV. PROBABLE CAUSE MEANS A "FAIR PROBABILITY" THAT CONTRABAND OR EVIDENCE IS LOCATED IN A PARTICULAR PLACE. WHETHER THERE IS A "FAIR PROBABILITY" DEPENDS ON THE TOTALITY OF THE CIRCUMSTANCES, INCLUDING REASONABLE INFERENCES, AND IS A "COMMONSENSE, PRACTICAL QUESTION." NEITHER CERTAINTY NOR A PREPONDERANCE OF THE EVIDENCE IS REQUIRED. UNITED STATES V. KELLEY, 482 F.3D 1047, 1050 (9TH CIR 2007) CITING ILLINOIS V. GATES, 462 US 213, 246, 103 S. CT. 2317, 76 LED 2D 527 (1983) AND UNITED STATES V. GOURDE, 440 F.3D 1065, 1069 (9TH CIR 2006) (EN BANC) SPECIFICALLY, AN AFFIDAVIT MUST CONTAIN EVIDENCE THAT (1) A CRIME WAS COMMITTED, (2) IT WAS THE SUSPECT WHO COMMITTED IT, AND (3) EVIDENCE OF THE CRIME WOULD BE FOUND IN THE PLACE TO BE SEARCHED. CHISM V. WASHINGTON STATE, 661 F.3D 380, 389 (9TH CIR 2011). CITING GOURDE, 440 F.3D AT 1071.

WHILE REASONABLE INFERENCES MAY BE CONSIDERED, IN UNITED STATES V. WEBER, 923 F.2D 1338 (9TH CIR 1990) THE NINTH CIRCUIT CAUTIONED AGAINST CREATING A LENGTHY CHAIN OF INFERENCES TO BUTTRESS PROBABLE CAUSE. Id AT 1344-45. SEE ALSO CHISM, 661 F.3D AT 391 (THE FACT THAT SEVERAL SUCCESSIVE INFERENCES NEEDED TO BE DRAWN TO ESTABLISH PROBABLE CAUSE REDUCED THE THRESHOLD TO BELOW A "FAIR PROBABILITY"); UNITED STATES V. UNDERWOOD, 725 F.3D 1076, 1084 (9TH CIR 2013) (TO CONCLUDE THAT THE DEFENDANT WAS A COURIER FOR A DRUG TRAFFICKING ORGANIZATION REQUIRED RELYING ON CONCLUSORY STATEMENTS OR THE DRAWING OF TOO MANY INFERENCES)

CONCLUSIONS OF THE AFFIANT UNSUPPORTED BY UNDERLYING FACTS CANNOT BE USED TO ESTABLISH PROBABLE CAUSE. UNDERWOOD, 725 F.3D AT 1081. AN AFFIDAVIT MUST RECITE UNDERLYING FACTS SO THAT THE ISSUING JUDGE CAN DRAW HIS OR HER OWN REASONABLE INFERENCES AND CONCLUSIONS; IT IS THESE FACTS THAT FORM THE CENTRAL BASIS OF THE PROBABLE CAUSE DETERMINATION. Id.

ITS BEEN LONG ESTABLISHED THAT EXPERT OPINION MAY BE CONSIDERED IN THE TOTALITY OF THE CIRCUMSTANCES ANALYSIS FOR PROBABLE CAUSE. UNITED STATES V. GIL, 58 F.3D 1414, 1418 (9TH CIR 1995) AS WAS HELD IN WEBER, HOWEVER, "IF THE GOVERNMENT PRESENTS EXPERT OPINION ABOUT THE BEHAVIOR OF A PARTICULAR CLASS OF PERSONS, FOR THE OPINION TO HAVE ANY RELEVANCE, THE AFFIDAVIT MUST

1  LAY A FOUNDATION WHICH SHOWS THAT THE PERSON SUBJECT TO THE SEARCH IS A MEMBER OF THE CLASS"

2  923 F.2D AT 1345.

3       IN WEBER, IT WAS HELD THAT PROBABLE CAUSE DID NOT EXIST TO SEARCH A HOUSE FOR CHILD

4  PORNOGRAPHY WHEN AN AFFIDAVIT RECITED THAT A SUSPECT HAD TWO YEARS PREVIOUSLY RECEIVED A

5  CATALOG OF CHILD PORNOGRAPHY AND HAD ORDERED FOUR IMAGES OF POSSIBLE CHILD PORNOGRAPHY. Id AT

6  1345. THE AFFIDAVIT IN WEBER INCLUDED EXPERT OPINION ABOUT THE HABITS OF "CHILD MOLESTERS,"

7  "PEDOPHILES," AND "CHILD PORNOGRAPHY COLLECTORS" AND THAT FROM HIS KNOWLEDGE OF THESE CLASSES OF

8  PERSONS HE COULD EXPECT CERTAIN THINGS TO BE AT THEIR HOUSES, FROM DIARIES TO SEXUAL AIDS TO

9  PHOTO DEVELOPING EQUIPMENT. Id. A LEADING FACTOR IN THE CONCLUSION WAS THAT THE AFFIDAVIT FAILED

10  TO ASSERT, LET ALONE SET FORTH FACTS TO PROVE HE WAS A MEMBER OF THESE GROUPS. Id AT 1345-46. IT WAS

11  CONCLUDED THAT THE OPINION ABOUT CHILD MOLESTERS, PEDOPHILES, AND CHILD PORNOGRAPHY COLLECTORS

12  WAS "FOUNDATIONLESS." Id AT 1345. AND THEREFORE COULD NOT BE USED TO SUPPORT PROBABLE CAUSE. Id

13  AT 1345-46.

14       HOWEVER, THE NINTH CIRCUIT HAS REPEATEDLY DISTINGUISHED WEBER AND MADE CLEAR THAT

15  "THE QUESTION IS WHETHER CONTRABAND IS LIKELY TO BE ON THE SUSPECTS COMPUTER, NOT WHETHER THE

16  AFFIDAVIT SHOWS THAT THE DEFENDANT DID OR DID NOT FALL WITHIN THE CLASS OF PERSONS LIKELY TO

17  COLLECT CHILD PORNOGRAPHY." KELLEY, 482 F.3D AT 1054. THE DETERMINATION IS SIMPLY BASED ON THE

18  TOTALITY OF THE CIRCUMSTANCES WHETHER OR NOT THERE IS A FAIR PROBABILITY THAT CHILD PORNOGRAPHY

19  WILL BE FOUND ON THE COMPUTER AT THE RESIDENCE. KELLEY, 482 F.3D AT 1055.

20       AN OTHERWISE SUFFICIENT WARRANT APPLICATION MAY BECOME STALE ABSENT A "CONTINUING PATTERN

21  OR OTHER GOOD REASONS" THAT THE EVIDENCE IS PRESENTLY AT THE LOCATION, UNITED STATES V. GANN,

22  732 F.2D 714, 722 (9TH CIR 1984) ESPECIALLY IF THE "EVIDENCE CAN BE MOVED". THEREFORE, "THE

23  AFFIDAVIT MUST SUPPORT THE INFERENCE THAT IT IS PRESENTLY IN THE RESIDENCE TO BE SEARCHED, REGARDLESS

24  OF ITS PAST POSITION." UNITED STATES V. GRANT, 682 F.3D 827, 835 (9TH CIR 2012).

25       WHEN OFFICERS LEARN OF NEW, MATERIAL FACTS AFTER A WARRANT IS ISSUED BUT BEFORE THE

26  EXECUTION, THEY HAVE A DUTY TO RETURN TO THE MAGISTRATE TO REEVALUATE THE EXISTENCE OF

27  PROBABLE CAUSE. UNITED STATES V. JENNEN, 596 F.3D 594, 600 (9TH CIR 2009); UNITED STATES V.

28  MARIN-BUITRAGO, 734 F.2D 889, 894 (2D CIR 1984)

3

1   IN FRANKS V. DELAWARE, 438 US 154, 98 S. CT. 2674, 57 L.ED 2D 667 (1978) THE SUPREME COURT

2   HELD THAT THE FOURTH AMENDMENT ENTITLES A DEFENDANT TO CHALLENGE THE CONSTITUTIONAL VALIDITY OF

3   A SEARCH WARRANT IF THE DEFENDANT MAKES A SUBSTANTIAL PRELIMINARY SHOWING THAT (1) THE AFFIDAVIT

4   IN SUPPORT OF THE WARRANT CONTAINS INTENTIONALLY OR RECKLESSLY FALSE STATEMENTS AND (2) THE

5   AFFIDAVIT PURGED OF ITS FALSITIES WOULD NOT BE SUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE.

6   SEE UNITED STATES V. MARTINEZ-GARCIA, 397 F.3D 1205, 1215 (9TH CIR 2005) TO JUSTIFY AN

7   EVIDENTIARY HEARING, THE DEFENDANT IS REQUIRED TO SATISFY BOTH REQUIREMENTS. FRANKS, 438 US AT

8   171-72. IF A HEARING IS GRANTED, THE DEFENDANT HAS THE BURDEN OF PROVING BY A PREPONDERANCE OF

9   THE EVIDENCE THAT THE FALSE STATEMENTS WERE DELIBERATELY MADE OR WERE MADE WITH A RECKLESS

10  DISREGARD FOR THE TRUTH. UNITED STATES V. DELEON, 955 F.3D 1346, 1348 (9TH CIR 1992)

11  IN UNITED STATES V. STANERT, 762 F.2D 775 (9TH CIR 1985) THE NINTH CIRCUIT APPLIED THE RATIONALE

12  OF FRANKS TO INTENTIONAL OR RECKLESS OMISSIONS, HOLDING THAT A DEFENDANT COULD CHALLENGE A

13  FACIALLY VALID AFFIDAVIT BY MAKING A SUBSTANTIAL PRELIMINARY SHOWING THAT THE AFFIANT "INTENTIONALLY

14  OR RECKLESSLY OMITTED FACTS REQUIRED TO PREVENT TECHNICALLY TRUE STATEMENTS IN THE AFFIDAVIT

15  FROM BEING MISLEADING." Id. AT 781. THE COURT STATED THAT "BY REPORTING LESS THAN THE TOTAL STORY,

16  AN AFFIANT CAN MANIPULATE THE INFERENCES A MAGISTRATE WILL DRAW. TO ALLOW A MAGISTRATE TO BE MISLED

17  IN SUCH A MANNER COULD DENUDE THE PROBABLE CAUSE REQUIREMENT OF ALL REAL MEANING." Id. THE

18  OMISSIONS ONLY RISE TO THE LEVEL OF A MISREPRESENTATION IF THE OMITTED FACTS "CAST DOUBT ON THE

19  EXISTENCE OF PROBABLE CAUSE." EWING V. CITY OF STOCKTON, 588 F.3D 1218, 1226 (9TH CIR 2009); SEE

20  ALSO BROAM V. BOGAN, 320 F.3D 1023, 1032 (9TH CIR 2003) (AN OFFICER MAY NOT IGNORE EXCULPATORY

21  EVIDENCE THAT WOULD "NEGATE A FINDING OF PROBABLE CAUSE.") STANERT ALSO STATES THAT IN DETERMINING

22  WHETHER A DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING, "CLEAR PROOF OF DELIBERATE OR RECKLESS

23  OMISSION IS NOT REQUIRED" Id. AT 781.

24  WHEN AN OMISSION IS CLEARLY MATERIAL TO THE PROBABLE CAUSE ANALYSIS, IT CAN BE REASONABLY INFERRED THAT

25  THE FAILURE TO PROVIDE THAT INFORMATION AMOUNTED TO AT LEAST A RECKLESS DISREGARD FOR THE TRUTH. CHISM,

26  661 F.3D AT 388 ("GIVEN THE IMPORTANCE OF THE OMITTED INFORMATION TO THE PROBABLE CAUSE ANALYSIS ... A

27  JURY COULD REASONABLY CONCLUDE THAT THE AFFIANTS FAILURE TO MENTION THAT INFORMATION IN HIS AFFIDANT

28  AMOUNTED TO AT LEAST A RECKLESS DISREGARD FOR THE TRUTH") (CITATION AND BRACKETS OMITTED);

4

1  MADIVALE v. SAVAIKO, 117 F.3d 1321, 1327 (11th Cir 1997) (WHEN THE FACTS OMITTED FROM THE AFFIANT

2  ARE CLEARLY CRITICAL TO THE FINDING OF PROBABLE CAUSE, THE FACT OF RECKLESSNESS MAY BE INFERRED FROM THE

3  PROOF OF THE OMISSION ITSELF)

4      THE KEY INQUIRY IS WHETHER PROBABLE CAUSE REMAINS ONCE THE EVIDENCE PRESENTED TO THE

5  JUDGE IS SUPPLEMENTED WITH THE CHALLENGED OMISSIONS. UNITED STATES V. RUIZ, 758 F.3D 1144, 1149 (9TH

6  CIR 2014)

7      NORMALLY COURTS DO NOT "FLYSPECK" AN AFFIDAVIT FOR A WARRANT THROUGH DE NOVO REVIEW ; RATHER,

8  THE MAGISTRATES DETERMINATION SHOULD BE PAID "GREAT DEFERENCE" KELLEY, 482 F.3D AT 1050, AND

9  WILL BE UPHELD UNLESS CLEARLY ERRONEOUS. EWING, 588 F.3D AT 1223; UNITED STATES V. GYPSUM CO.

10  333 US 364, 395, 92 L.ED 746, 765, 68 S.CT. 525 (1948) (A FINDING IS CLEARLY ERRONEOUS

11  WHEN THE REVIEWING COURT IS LEFT WITH A FIRM CONVICTION THAT A MISTAKE HAS BEEN COMMITTED)

12      HOWEVER, WHEN AN AFFIDAVIT CONTAINS FALSE STATEMENTS AND /OR OMISSIONS, THE EARLIER

13  PROBABLE CAUSE DETERMINATION IS NOT ENTITLED TO THE USUAL DEFERENCE. KELLEY, 482 F.3D AT 1051

14  ("WE AGREE THAT THIS LIMITED EXCEPTION TO THE 'GREAT DEFERENCE' RULE MAKES SENSE, FOR THE

15  MAGISTRATES JUDGEMENT WOULD HAVE BEEN BASED ON FACTS THAT ARE NO LONGER ON THE TABLE") ;

16  UNITED STATES V. DOZIER, 844 F.2D 701, 706 (9TH CIR 1988); SEE ALSO UNITED STATES V. JOB, 871 F.3D 852,

17  864 (9TH CIR 2017) (SIMILARLY, NO DEFERENCE WHERE THE WARRANT IS ISSUED BASED UPON UNLAWFULLY OBTAINED

18  EVIDENCE)

19      <u>GOOD FAITH</u>

20      IF A WARRANT LACKS PROBABLE CAUSE, EVIDENCE OBTAINED DURING ITS EXECUTION SHOULD GENERALLY BE

21  SUPPRESSED UNDER THE EXCLUSIONARY RULE. MAPP V. OHIO, 367 US 643, 655, 81 S CT 1684, 6 L ED 2D 1081

22  (1961); WEEKS V. UNITED STATES, 232 US 383, 393, 34 S. CT. 341, 58 L ED 652 (1914). HOWEVER, IN UNITED

23  STATES V. LEON, THE SUPREME COURT ESTABLISHED THE "GOOD FAITH" EXCEPTION TO THE EXCLUSIONARY

24  RULE, WHICH IS SATISFIED IF AN OFFICER ACTS "IN OBJECTIVELY REASONABLE RELIANCE" ON THE WARRANT.

25  468 US 897, 922, 104 S. CT. 3405, 82 L ED 2D 677 (1984)

26      THE COURT IN LEON IDENTIFIED FOUR SITUATIONS THAT PER SE FAIL TO SATISFY THE GOOD FAITH EXCEPTION.

27  IN THESE SITUATIONS, "THE OFFICER WILL HAVE NO REASONABLE GROUNDS FOR BELIEVING THAT THE WARRANT WAS

28  PROPERLY ISSUED." 468 US AT 922-23, 104 S.CT. 3405. THE FOUR SITUATIONS ARE: (1) WHERE THE AFFIANT

5

1  RECKLESSLY OR KNOWINGLY PLACED FALSE INFORMATION IN THE AFFIDAVIT THAT MISLED THE ISSUING JUDGE;

2  (2) WHERE THE JUDGE WHOLLY ABANDONS HIS OR HER JUDICIAL ROLE; (3) WHERE THE AFFIDAVIT IS "SO LACKING

3  IN INDICIA OF PROBABLE CAUSE AS TO RENDER OFFICIAL BELIEF IN ITS EXISTENCE ENTIRELY UNREASONABLE";

4  AND (4) WHERE THE WARRANT IS "SO FACIALLY DEFICIENT - I.E., IN FAILING TO PARTICULARIZE THE PLACE TO BE

5  SEARCHED OR THE THINGS TO BE SEIZED — THAT THE EXECUTING OFFICERS CANNOT REASONABLY PRESUME IT TO

6  BE VALID." Id. IF ANY OF THESE FOUR SITUATIONS APPLY, THE COURT "NEED NOT INQUIRE FURTHER" AND CAN

7  CONCLUDE THAT THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE DOES NOT APPLY. UNITED STATES V. LUONG,

8  470 F.3D 898, 905 (9TH CIR 2006).

9     IN HERRING V. UNITED STATES, 129 S. CT 695 (2009) THE SUPREME COURT STATED THAT, " TO TRIGGER

10 THE EXCLUSIONARY RULE, POLICE CONDUCT MUST BE SUFFICIENTLY DELIBERATE THAT EXCLUSION CAN MEANINGFULLY

11 DETER IT, AND SUFFICIENTLY CULPABLE THAT SUCH DETERENCE IS WORTH THE PRICE PAID TO THE JUSTICE SYSTEM".

12 Id. AT 702. THE COURT HELD THAT "THE EXCLUSIONARY RULE SERVES TO DETER DELIBERATE, RECKLESS OR

13 GROSSLY NEGLIGENT CONDUCT, OR IN SOME CASES RECURRING OR SYSTEMIC NEGLIGENCE." Id.

14 III.   ARGUMENT

15 A.   NASSAU BRIEF

16 BEFORE PROCEEDING, ITS IMPORTANT TO BRIEFLY RECAP THE INVESTIGATION FROM NASSAU COUNTY, SO IT CAN BE

17 DETERMINED WHAT MUSICALLY WAS REQUIRED TO PROVIDE PURSUANT TO THE SUBPOENA AUTHORED BY DET.

18 CONSTANTINO AND WHAT HE PROVIDED THE CENTRAL CALIFORNIA ICAC TASK FORCE ON APRIL 11, 2017.

19 WHAT MUSICALLY WAS REQUIRED TO PROVIDE

20 ACCORDING TO THE SUBPOENA [EXHIBIT C], MUSICALLY WAS REQUIRED TO PROVIDE "... IP ACTIVITY, INCLUDING LOG

21 INS AND LOG OUTS" FOR THE ACCOUNT. THEY PROVIDED EXHIBIT D.

22 WHAT DET CONSTANTINO PROVIDED

23 DET CONSTANTINO PROVIDED EXHIBIT D (SUBPOENA RESULTS) AND EXHIBIT E, WHICH IS A REPORT HE AUTHORED.

24 WHILE ADDITIONAL INFORMATION MAY HAVE BEEN PROVIDED, THIS IS THE ONLY INFORMATION THAT CAN BE PROVEN

25 TO BE IN BOTH AFFIANTS POSSESSION AND OF WHICH HAVE RELEVANCE TO THE FRANKS VIOLATIONS.

26 FURTHERMORE, THE FACTUAL ASSERTIONS AND BELIEFS IN THE SUBSEQUENT FRANKS SECTIONS ARE MADE FROM THE

27 KNOWLEDGE OF THE OFFICERS, AND THE INFORMATION THEY POSSESED, AT THE TIME OF THE INVESTIGATION AND WHAT

28 COULD REASONABLY BE CONCLUDED FROM SUCH INFORMATION.

B.    DET SCHWAMBS WARRANT AFFIDAVIT

I.    FRANKS

DET SCHWAMBS AFFIDAVIT CONTAINED NUMEROUS MATERIAL FALSE STATEMENTS AND OMISSIONS.

AFFIDAVIT

DET SCHWAMB, IN THE STATEMENT OF PROBABLE CAUSE, ALLEGED MUSICALLY USER "SUMMERME001" WAS INVOLVED IN A SEXUALLY EXPLICIT CHAT WITH A MINOR RESIDING IN NASSAU COUNTY, NEW YORK.

UTILIZING INFORMATION PROVIDED BY DET CONSTANTINO (NASSAU COUNTY PD), HE IMPLICATES IP ADDRESSES 75.150.2.223 AND 73.192.178.95 IN THE ALLEGED OFFENSE. FULL AFFIDAVIT IN EXHIBIT A

OMISSIONS

THE FOLLOWING INFORMATION WAS OMITTED FROM THE AFFIDAVIT (WHILE AN ADDITIONAL OMISSION COULD BE INCLUDED, THESE ARE THE ONLY ONES THAT CAN BE PROVEN TO BE IN HIS POSSESSION)

* THE ALLEGED CRIME OCCURRED ON MARCH 28, 2017 [EXHIBIT E]
* THERE WAS NO ACCOUNT ACTIVITY BEFORE MARCH 30, 2017 AT 22:40:15 (GMT) [EXHIBIT D, PAGE 2, PERIOD 5]
* IP ADDRESSES 172.158.24.166 AND 172.56.41.218 ARE ALSO ASSOCIATED WITH THE ACCOUNT. [EXHIBIT D, PAGE 1-2, PERIOD 4-5]

FALSE STATEMENTS

DET SCHWAMB STATES:

"BASED ON THE ABOVE MENTIONED FACTS AND CIRCUMSTANCES, I BELIEVE COMCAST CABLE COMMUNICATIONS WILL RETAIN INFORMATION THAT MAY LEAD TO THE IDENTITY OF ONE OF THEIR USERS (SUMMERME001) WHO UTILIZED THEIR SERVICE TO COMMUNICATE WITH A MINOR CHILD, SENT SEXUALLY EXPLICIT MATERIAL TO THE MINOR CHILD AND DIRECTED THE MINOR CHILD TO CREATE SEXUALLY EXPLICIT MATERIAL AND DISTRIBUTE IT VIA MUSICALLY, IN VIOLATION OF PC 311.11(a), PC 311.4(a) AND PC 288.2(a)(1)."

THIS STATEMENT ASSERTS THAT THE USER "UTILIZED" COMCASTS SERVICE "TO COMMUNICATE WITH A MINOR CHILD" AND COMMITTED THE ALLEGED OFFENSE. HOWEVER, AS ESTABLISHED, THE ACCOUNT LED BACK TO ADDITIONAL IP ADDRESSES AND AS THE LOG INDICATES, THERE WAS NO ACCOUNT ACTIVITY BEFORE MARCH 30, 2017 AT 22:40:15. LOGICALLY THIS MEANS THAT NONE OF THE IP ADDRESSES (OR THE ACCOUNT FOR THAT MATTER) LINK BACK TO THE ALLEGED CRIME.

DET SCHWAMB POSSESSED NO INFORMATION TO SUPPORT THIS STATEMENT.

1  MOST OF THE AFFIDAVIT IS MEANT TO BE READ AS DET CONSTANTINOS INVESTIGATIVE WORK, MADE EVIDENT

2  BY THE FIRST PARAGRAPH WHICH STATES "DETECTIVE CONSTANTINO PROVIDED THE FOLLOWING INFORMATION:" [EXHIBIT A,

3  PAGE 3, PARAGRAPH 1] DET SCHWAMB STARTS THE THIRD PARAGRAPH ON A SIMILAR NOTE, "DETECTIVE CONSTANTINO

4  RECEIVED A RESPONSE REGARDING SUBSCRIBER INFORMATION..." AND ASSOCIATES IP ADDRESSES 75.150.2.233 AND 73.192.178.95

5  WITH THE ACCOUNT. AGAIN, THIS REAFFIRMS THAT THIS IS DETECTIVE CONSTANTINOS INVESTIGATIVE WORK.

6     THE PROBLEM LIES WITHIN THE FOLLOWING TWO PARAGRAPHS:

7     "A SUBSEQUENT INTERNET SEARCH OF WHO THE ABOVE LISTED IP ADDRESS WERE ASSIGNED TO SHOWED THAT BOTH

8        75.150.2.233 AND 73.192.178.95 ARE ASSIGNED TO COMCAST CABLE COMMUNICATIONS. IP ADDRESS

9        75.150.2.233 SHOWS TO COME BACK TO COMCAST BUSINESS AND GENERALLY LOCATES TO THE UNITED STATES.

10       IP ADDRESS 73.192.178.95 SHOWS TO COME BACK TO THE EASTERN DISTRICT OF CALIFORNIA, MORE SPECIFICALLY

11       THE FRESNO AREA.

12       DUE TO THE IP ADDRESS LOCATING TO THE AREA OF FRESNO, CA, DETECTIVE CONSTANTINO REQUESTED

13       THE CENTRAL CALIFORNIA INTERNET CRIMES AGAINST CHILDREN TASK FORCE ASSIST WITH THE INVESTIGATION."
          [EXHIBIT A, PAGE 3, PARAGRAPH 4-5]

14    THIS LAST PARAGRAPH INDICATES THAT THE ABOVE DETAILED SEARCH WAS CONDUCTED BY DET CONSTANTINO

15  HIMSELF AND STATES THAT DUE TO THIS SEARCH (SPECIFICALLY BECAUSE IP ADDRESS 73.192.178.95 LOCATED BACK TO FRESNO)

16  HE CONTACTED THE CENTRAL CALIFORNIA ICAC TASK FORCE FOR ASSISTANCE. THIS IS SIMPLY NOT TRUE. DET SCHWAMB

17  IS REFERENCING THE SEARCH DETAILED WITHIN EXHIBIT E, WHICH STATES THAT IT WAS IP ADDRESS 75.150.2.233

18  THAT LOCATED BACK TO FRESNO, NOT 73.192.178.95. FURTHERMORE, THE SEARCH WITHIN THE AFFIDAVIT IS INCONSISTENT

19  WITH THE SEARCH HE IS REFERENCING WITHIN EXHIBIT E. EXHIBIT E CONCLUDES IP ADDRESS 75.150.2.233

20  LOCATES BACK TO FRESNO, THE SEARCH WITHIN THE AFFIDAVIT CONCLUDES IT "GENERALLY LOCATES TO THE UNITED

21  STATES." DET. CONSTANTINO IS IDENTIFIED AS THE SOURCE OF THIS SEARCH, YET THE SEARCH HE ACTUALLY CONDUCTED

22  HAD TOTALLY DIFFERENT RESULTS.

23    CLEAR PROOF THAT THIS IS THE EXACT SEARCH HE IS REFERENCING WILL BE SHOWN SOON.

24       INTENTIONAL MISSTATEMENTS AND OMISSIONS

25       OMISSIONS

26  • DATE OF ALLEGED CRIME

27    BEFORE ITS ESTABLISHED WHY HE OMITTED THE DATE, IT WILL HAVE TO BE ESTABLISHED THAT HE HAD IT IN

28  HIS POSSESSION. BUT IN ORDER TO DO THAT, WE FIRST HAVE TO FOCUS ON A FATAL FLAW IN THE AFFIDAVIT.

8

THE FLAW

IN THE AFFIDAVIT, IP ADDRESSES 75.150.2.233 ("SIGN UP IP") AND 73.192.178.95 (FROM THE IP LOG) ARE ASSOCIATED WITH THE ACCOUNT. [EXHIBIT A, PAGE 3, PARAGRAPH 2] HOWEVER, IN THE FOLLOWING PARAGRAPH, WHICH DETAILS THE INTERNET SEARCH, THE LAST TWO DIGITS OF THE "SIGN UP IP" ARE CHANGED TO "223" WHEN IT SHOULD BE "233". DET SCHWAMB INCLUDES THIS ERRONEOUS IP ADDRESS IN ATTACHMENT B OF THE WARRANT, DEMANDING THE RECORDS OF AN IP ADDRESS THAT WAS NEVER ASSOCIATED WITH THE ACCOUNT. [EXHIBIT A, PAGE 6, ATTACHMENT B]

THIS WAS NOT A TYPOGRAPHICAL ERROR ON DET SCHWAMBS BEHALF, RATHER, HE OBTAINED THIS IP ADDRESS DIRECTLY FROM EXHIBIT E, WHERE THIS ERROR ORIGINATED FROM: "APRIL 5, 2017 MUSICALLY RESPONDED WITH SUBSCRIBER INFORMATION FOR "2.SUMMERMEOO1" WHICH HAS AN IP ADDRESS OF 75.150.2.223". [EXHIBIT E]

WHY DOES THIS MATTER? BECAUSE EXHIBIT E ALSO EXPLICITLY STATES THAT THE ALLEGED CRIME OCCURRED ON MARCH 28, 2017. THE MOTIVE FOR THIS OMISSION WILL BE MADE APPARENT BY THE NATURE OF THE NEXT OMISSION, IN AND OF ITSELF.

THE EXCULPATORY IP LOG

THE PROVIDED IP LOG CLEARLY INDICATES ACCOUNT ACTIVITY BEGAN ON "20170330" (MARCH 30, 2017). [EXHIBIT D, PAGE 2, PERIOD 5] THERE IS NO RECORD OF ACCOUNT ACTIVITY ON MARCH 28, 2017. DET SCHWAMB WAS OBVIOUSLY AWARE OF THIS DISCREPANCY, WHICH IS WHY, IN HIS AFFIDAVIT, HE REFERENCES THE MOST RECENT ENTRY ON THE IP LOG, RATHER THAN ONE FROM MARCH 28, 2017 — BECAUSE IT DOES NOT EXIST. SEE EXHIBIT A, PAGE 3, PARAGRAPH 2 ("MUSICALLY ALSO PROVIDED AN IP LOG WHICH ALSO SHOWED THAT IP ADDRESS 73.192.178.95 UTILIZED THE ACCOUNT BETWEEN 04/04/17 05:36:52 (GMT) AND 04/04/17 05:37:53 (GMT)")

THIS MAJOR FACTOR IS OBVIOUSLY CRITICAL TO THE PROBABLE CAUSE DETERMINATION SINCE THE ENTIRE FOUNDATION OF THIS INVESTIGATION IS THAT, ALLEGEDLY, THIS ACCOUNT WAS UTILIZED TO COMMIT A CRIME BEFORE MARCH 30, 2017 AT 22:40:15. YET, IN A CALCULATED MOVE TO SECURE THE AUTHORIZATION OF THIS WARRANT, DET SCHWAMB OMITTED THIS FACTUAL, RELEVANT AND EXCULPATORY INFORMATION.

IP ADDRESSES

THE LAW IS CLEAR THAT AN AFFIANT HAS A DUTY TO PROVIDE ALL RELEVANT INFORMATION TO THE MAGISTRATE, UNITED STATES V. PERKINS, 850 F.3D 1109, 1116 (9TH CIR 2017). THIS AFFIDAVIT CONCERNS IP ADDRESSES. IT IS CLEARLY RELEVANT. YET, DISREGARDING THE LAW, OMITTED THESE FACTS. THE IMPORTANCE OF THIS OMISSION WILL BE SHOWN IN THE NEXT SECTION.

9

1   FALSE STATEMENTS

2   UTILIZING COMCASTS SERVICE

3   WITH THE OMISSIONS IN MIND, DET SCHWAMB HAD ABSOLUTELY NO EVIDENCE TO SUPPORT THIS STATEMENT.

4   CHISM, 661 F.3D AT 387; SEE ALSO CHISM, 661 F.3D AT 390 N.12 (FINDING MISSTATEMENT MATERIAL WHERE THE

5   AFFIANT IDENTIFIED THE INDIVIDUAL AS THE SUSPECT, DESPITE POSSESSING NO SUPPORTING EVIDENCE). THIS STATEMENT WAS

6   A DELIBERATE EFFORT TO MAKE UP FOR THE MATERIAL DEFICIENCIES WITHIN THE INVESTIGATION BY CREATING

7   A DIRECT LINK BETWEEN THE ALLEGED CRIME AND THE COMCAST IP ADDRESSES. AS SUCH, THIS PARAGRAPH MUST BE

8   EXCISED.

9   INTERNET SEARCH

10   AS ESTABLISHED, DET SCHWAMB HAD EXHIBIT E IN HIS POSSESSION. FURTHER, IT IS MANIFEST THAT THE

11   EXACT SEARCH HE IS REFERENCING IS WITHIN EXHIBIT E BECAUSE BOTH SEARCHES EMPLOY THE SAME ERRONEOUS

12   IP ADDRESS. EXHIBIT E, AS THE ORIGIN OF THIS ERROR, MEANS DET SCHWAMB CAN ONLY BE REFERRING TO THIS

13   SEARCH. BUT WHY DO THE RESULTS DIFFER? ITS SIMPLE, DET SCHWAMB CONDUCTED HIS OWN SEARCH AND THEN

14   IDENTIFIED THE SOURCE OF THIS INFORMATION AS COMING FROM DET CONSTANTINO. THIS IS NOT TO SAY THAT

15   DET SCHWAMB COULD NOT CONDUCT HIS OWN SEARCH, BUT TO REPLACE DET CONSTANTINOS SEARCH WITH HIS OWN

16   WHEN HE IS CLEARLY INDICATING THAT THESE WERE THE PROCEDURAL STEPS TAKEN BY DET CONSTANTINO

17   SIMPLY CANNOT SUFFICE. THEREFORE, BY FAILING TO PROPERLY IDENTIFY THE SOURCE OF THIS INFORMATION,

18   DET SCHWAMB MADE IT IMPOSSIBLE FOR THE MAGISTRATE TO EVALUATE THE EXISTENCE OF PROBABLE CAUSE. UNITED

19   STATES V. DAVIS, 714 F.2D 896, 899 (9TH CIR 1983). AS SUCH, THESE PARAGRAPHS SHOULD BE EXCISED.

20   MATERIAL

21   WITH THE OMISSIONS IN MIND, A CORRECTED AFFIDAVIT WOULD UNDOUBTEDLY FAIL, FOR IF THE INVESTIGATIONS

22   FOUNDATION IS THAT, ALLEGEDLY, THIS ACCOUNT WAS UTILIZED TO COMMIT A CRIME BEFORE MARCH 30, 2017, IT IS

23   SIMPLY UNREASONABLE AND ILLOGICAL TO CONCLUDE EVIDENCE OF A CRIME WOULD BE FOUND WHEN THE INFORMATION

24   RECEIVED DIRECTLY FROM MUSICALLY ONLY EXCULPATES THE ALLEGATION. YET, DISREGARDING THE FACTS, DET

25   SCHWAMB PROCEEDED WITH THIS UNLAWFUL SEARCH.

26   FURTHERMORE, WITHOUT THE FALSE STATEMENTS, THE AFFIDAVIT WOULD BE DEVOID OF ANY REFERENCE

27   TO COMCAST CABLE COMMUNICATIONS. THIS ABSENCE FAILS TO PROVIDE THE REQUISITE NEXUS ELEMENT.

28   UNITED STATES V. CREWS, 502 F.3D 1130, 1140 (9TH CIR 2007)

## CONCLUSION

THE INFORMATION WITHIN THE AFFIDAVIT IS CLEARLY INCONSISTENT WITH THE EVIDENCE HE RELIED UPON AND REFERENCED. UNITED STATES V. GARCIA-ZAMBRANO, 530 F.3D 1249, 1257-58 (10TH CIR 2008) (UPHOLDING A FINDING OF RECKLESS DISREGARD FOR THE TRUTH OF A SEARCH WARRANT AFFIDAVIT WHERE THE AFFIDAVIT WAS INCONSISTENT WITH POLICE REPORTS AND WITNESS INTERVIEWS). FURTHERMORE, BECAUSE THE FALSE STATEMENTS AND OMISSIONS ALL BOLSTER THE CASE FOR PROBABLE CAUSE, A REASONABLE FACTFINDER COULD CONCLUDE THAT DET SCHWAMB ACTED INTENTIONALLY OR RECKLESSLY. CHISM, 661 F.3D AT 388. BECAUSE THESE OMISSIONS ARE CLEARLY MATERIAL TO THE PROBABLE CAUSE ANALYSIS, IT CAN REASONABLY BE INFERRED THAT IT WAS DONE IN AT LEAST A RECKLESS DISREGARD FOR THE TRUTH. Id.; SAVAIKO, 117 F.3D AT 1327.

BY PROVIDING AN INCOMPLETE AND MISLEADING RECITATION OF THE FACTS, DET SCHWAMB UNDERMINED THE FOURTH AMENDMENT BY MANIPULATING THE INFERENCES A MAGISTRATE WILL DRAW AND BY DOING THIS, EFFECTIVELY USURPED THE MAGISTRATES DUTY TO CONDUCT AN INDEPENDENT EVALUATION OF PROBABLE CAUSE. UNITED STATES V. PERKINS, 850 F.3D 1109, 1117-18 (9TH CIR 2017) HE DELIBERATELY WITHHELD EXCULPATORY EVIDENCE, WHICH THE FOURTH AMENDMENT MANDATES TO BE INCLUDED. BROAM, 320 F.3D AT 1032 (AN OFFICER MAY NOT IGNORE EXCULPATORY EVIDENCE THAT WOULD "NEGATE A FINDING OF PROBABLE CAUSE")

THE OMISSION RULE DOES NOT REQUIRE THE AFFIANT TO PROVIDE GENERAL INFORMATION ABOUT EVERY POSSIBLE THEORY, NO MATTER HOW UNLIKELY. UNITED STATES V. CRAIGHEAD, 539 F.3D 1073, 1081 (9TH CIR 2008) BUT THE FACT HERE IS THAT THIS IS FACTUAL EVIDENCE THAT HE DELIBERATELY OMITTED. NO THEORY IS NEEDED TO POINT OUT THE OBVIOUS, EXCULPATORY NATURE OF IT. ITS SIMPLY LOGIC AND COMMON SENSE.

THE APPLICATION OF THESE PRINCIPLES HAVE BEEN LONG ESTABLISHED AND AS THE NINTH CIRCUIT REITERATED IN PERKINS. "AN OFFICER PRESENTING A SEARCH WARRANT APPLICATION HAS A DUTY TO PROVIDE, IN GOOD FAITH, ALL RELEVANT INFORMATION TO THE MAGISTRATE." Id. AT 1116.

IN SUM, AS THE COURT HELD IN UNITED STATES V. FLORES, 679 F.2D 173, 177 N.1 (9TH CIR 1982), "A MAGISTRATE CANNOT ADEQUATELY DETERMINE THE EXISTENCE OF PROBABLE CAUSE WITH THE REQUISITE JUDICIAL NEUTRALITY AND INDEPENDENCE IF THE POLICE PROVIDE HIM OR HER WITH A FALSE, MISLEADING, OR PARTIAL STATEMENT OF THE RELEVANT FACTS." THIS WAS A BREACH OF THE DUTY THAT DET. SCHWAMB OWED TO THE COURT. PERKINS, 850 F.3D AT 1119, CITING RUIZ, 758 F.3D AT 1149.

II.    **THE WARRANT IS NOT SUPPORTED BY PROBABLE CAUSE**

DET SCHWAMB'S AFFIDAVIT INCLUDES A GLARING DEFICIENCY, LEADING TO THE AUTHORIZATION TO SEIZE RECORDS FOR AN IP ADDRESS NEVER ASSOCIATED WITH THE ACCOUNT.

**AFFIDAVIT**

IN THE STATEMENT OF PROBABLE CAUSE, ITS ALLEGED THAT MUSICALLY ACCOUNT "SUMMERME00I" WAS INVOLVED IN A SEXUALLY EXPLICIT CHAT WITH A MINOR RESIDING IN NASSAU COUNTY, NEW YORK.

IT THEN STATES THAT IP ADDRESSES 75.150.2.233 ("SIGN UP IP") AND 73.192.178.95 (FROM AN "IP LOG") [EXHIBIT A, PAGE 3, PARAGRAPH 2.] HOWEVER, IN THE FOLLOWING PARAGRAPH, DURING AN INTERNET SEARCH TO DETERMINE THE LOCATION OF THE IP ADDRESSES, THE LAST TWO DIGITS OF THE "SIGN UP IP" ARE CHANGED TO "223" WHEN IT SHOULD BE "233". THIS ERRONEOUS IP ADDRESS ALSO MADE ITS WAY INTO ATTACHMENT B OF THE WARRANT, AUTHORIZING THE SEIZURE OF RECORDS FOR AN IP ADDRESS <u>NEVER</u> ASSOCIATED WITH THE ACCOUNT. EXHIBIT A, PAGE 5, ATTACHMENT B.]

THIS ERROR POSES TWO ADDITIONAL PROBLEMS

FIRST, IF THE IP ADDRESS RETURNS NO RECORDS, IT WILL ERRONEOUSLY NARROW THE SEARCH TO THE LOCATION PERTINENT TO THE IP ADDRESS 73.192.178.95. THIS IS SIGNIFICANT BECAUSE, "A TRUTHFUL ANSWER WOULD HAVE BEEN OF SUFFICIENT PROBATIVE IMPORTANCE TO THE INQUIRY SO THAT AS A MINIMUM, FURTHER FRUITFUL INVESTIGATION WOULD HAVE OCCURRED." DAVIS, 714 F.3D AT 900 (APPLYING THIS PRINCIPLE TO A FRANKS VIOLATION)

SECONDLY, IF RESULTS ARE FOUND, IT WILL LEAD TO AN ADDITIONAL UNLAWFUL SEARCH OF SOMEONES HOME.

**CONCLUSION**

THE AFFIDAVIT CONTAINS A GLARING DEFICIENCY, LEADING TO THE AUTHORIZATION TO SEIZE RECORDS FOR AN IP ADDRESS NEVER ASSOCIATED WITH THE ACCOUNT. ITS CLEAR, HAD THE MAGISTRATE NOTICED THIS ERROR, THIS WARRANT WOULD NOT HAVE BEEN AUTHORIZED. THE MAGISTRATES DETERMINATION MUST BE REVERSED.

**GOOD FAITH**

DET. SCHWAMB BOTH AUTHORED AND EXECUTED THIS WARRANT. THE LEON EXCEPTION FORBIDS AN OFFICER FROM RELYING ON AN ERROR OF HIS OWN MAKING. GROH V. RAMIREZ, 540 US 551, 564 (2004) (BECAUSE THE OFFICER "HIMSELF PREPARED THE INVALID WARRANT, HE MAY NOT ARGUE THAT HE REASONABLY RELIED ON THE MAGISTRATES ASSURANCE "THAT THE WARRANT WAS VALID") THUS, THE GOOD FAITH EXCEPTION DOES NOT APPLY HERE. ALL EVIDENCE MUST BE SUPPRESSED.

C.   DET WILKINS WARRANT AFFIDAVIT

I.   FRANKS

DET. WILKINS AFFIDAVIT CONTAINED A MATERIAL FALSE STATEMENT AND OMISSION

AFFIDAVIT

DET WILKIN, IN THE STATEMENT OF PROBABLE CAUSE, ALLEGES MUSICALLY USER "SUMMERMEOO!" WAS INVOLVED IN A SEXUALLY EXPLICIT CHAT WITH A MINOR RESIDING IN NASSAU COUNTY, NEW YORK ON MARCH 28 AND 29, 2017.

UTILIZING THE FRUITS OF DET. SCHWAMBS PREVIOUS, UNLAWFUL SEARCH AND THE SUBPOENA RESULTS PROVIDED BY DET. CONSTANTINO (NASSAU COUNTY PD), DET WILKIN STATES THAT THE RESIDENTS OF 369 W. LEXINGTON #204 COMMITTED THE ALLEGED CRIME AND THAT EVIDENCE OF A CRIME WOULD BE FOUND AT THIS LOCATION. FULL AFFIDAVIT IN EXHIBIT B

OMISSION

THE FOLLOWING INFORMATION WAS OMITTED FROM THE AFFIDAVIT

- THERE WAS NO ACCOUNT ACTIVITY BEFORE MARCH 30, 2017 AT 22:40:15 (GMT) [EXHIBIT D, PAGE 2, PERIOD 5]

FALSE STATEMENTS

DESPITE KNOWING OF THIS, DET WILKIN FALSELY STATES THAT THE RESIDENTS COMMITTED THE ALLEGED CRIME.

INTENTIONAL MISSTATEMENTS AND OMISSIONS

OMISSION

IN HIS AFFIDAVIT, DET WILKIN STATES THE ALLEGED CRIME OCCURRED ON MARCH 28, 2017 AT APPROXIMATELY "1720 HOURS (EST)" (5:20PM) AND ON MARCH 29, 2017 [EXHIBIT B, PAGE 9, LINE 31 AND 45]. HE FURTHER STATES THAT HE "REVIEWED" THE SUBPOENA RESULTS. [EXHIBIT B, PAGE 10, LINE 10]. WITH THESE RESULTS, WILKIN SHOWS THAT IP ADDRESSES 75.150.2.233 AND 73.192.178.95 ARE ASSOCIATED WITH THE ACCOUNT. [EXHIBIT B, PAGE 10, LINE 17-21] HE THEN STATES THAT "ADDITIONAL T-MOBILE BASED IP ADDRESSES WERE ALSO USED." [EXHIBIT B, PAGE 10, LINE 21] GIVEN THE PLURALITY OF THIS STATEMENT ("IP ADDRESSES") AND THE FACT THAT THERE ARE ONLY TWO ADDITIONAL IP ADDRESSES ON THE IP LOG; 172.58.24.166 AND 172.56.41.218 [EXHIBIT D, PAGES 1-2, PERIOD 4 AND 5] IT CAN BE DEDUCED THAT THESE ARE THE T-MOBILE BASED IP ADDRESSES.

13

1   DET WILKIN OBTAINED IP ADDRESS 172.56.41.218 (AND GAVE IT HIS DIRECT ATTENTION TO DETERMINE

2   WHAT COMPANY IT WAS ASSIGNED TO) DIRECTLY FROM "PERIOD 5" OF THE IP LOG — THE EARLIEST ENTRY AND KEY

3   PROBLEM WITH THIS INVESTIGATION.

4   THIS ENTRY CLEARLY INDICATES THAT ACCOUNT ACTIVITY BEGAN ON "20170330" (MARCH 30, 2017) AT

5   "22:40:15", ALMOST TWO DAYS AFTER THE LAST ALLEGED INCIDENT. THERE IS NO RECORD OF ACCOUNT ACTIVITY

6   ON MARCH 28 OR 29, 2017.

7   DET WILKIN KNEW OF THE DATES OF THE ALLEGED CRIME, PERSONALLY REVIEWED THE IP LOG AND

8   EVEN EXAMINED THE SINGLE SOURCE OF THE PROBLEM — PERIOD 5. HE WAS OBVIOUSLY AWARE OF THIS DISCREPANCY.

9   THIS MAJOR FACTOR IS OBVIOUSLY CRITICAL TO THE PROBABLE CAUSE DETERMINATION SINCE THE ENTIRE FOUNDATION

10   OF THIS INVESTIGATION IS THAT, ALLEGEDLY, THIS ACCOUNT WAS UTILIZED TO COMMIT A CRIME BEFORE MARCH 30,

11   2017 AT 22:40:15. YET, IN A CALCULATED MOVE TO SECURE THE AUTHORIZATION OF THIS WARRANT (AND IN CONCERT

12   WITH DET. SCHWAMB), DET WILKIN OMITTED THIS FACTUAL, RELEVANT AND EXCULPATORY INFORMATION.

13   FALSE STATEMENT

14   WITH THE OMISSION IN MIND, DET WILKIN HAD ABSOLUTELY NO EVIDENCE TO SUPPORT THE SUSPECT

15   IDENTIFICATION. CHISM, 661 F.3D AT 390 N.12 (FINDING MISSTATEMENT MATERIAL WHERE THE AFFIANT

16   IDENTIFIED THE INDIVIDUAL AS THE SUSPECT, DESPITE POSSESSING NO SUPPORTING EVIDENCE) THIS STATEMENT

17   WAS DELIBERATELY USED TO BOLSTER PROBABLE CAUSE.

18   MATERIAL

19   WITH THE OMISSION IN MIND, A CORRECTED AFFIDAVIT WOULD UNDOUBTEDLY FAIL, FOR IF THE

20   INVESTIGATIONS FOUNDATION IS THAT, ALLEGEDLY, THIS ACCOUNT WAS UTILIZED TO COMMIT A CRIME BEFORE MARCH

21   30, 2017, IT IS SIMPLY UNREASONABLE AND ILLOGICAL TO CONCLUDE EVIDENCE OF A CRIME WOULD BE FOUND WHEN

22   THE INFORMATION RECEIVED DIRECTLY FROM WHISICALLY ONLY EXCULPATES THE ALLEGATION. YET, DISREGARDING

23   THE FACTS, DET WILKIN PROCEEDED WITH THIS UNLAWFUL SEARCH.

24   CONCLUSION

25   BECAUSE THE OMISSION AND FALSE STATEMENT ALL BOLSTER THE CASE FOR PROBABLE CAUSE, A REASONABLE

26   FACTFINDER COULD CONCLUDE THAT DET WILKIN ACTED INTENTIONALLY OR RECKLESSLY. CHISM, 661 F.3D AT 388.

27   FURTHERMORE, BECAUSE THIS OMISSION IS CLEARLY MATERIAL TO THE PROBABLE CAUSE ANALYSIS, IT CAN BE

28   REASONABLY INFERRED THAT IT WAS DONE IN AT LEAST A RECKLESS DISREGARD FOR THE TRUTH. Id. ;

14

1   SAVAIKO, 117 F.3D AT 1327.

2       BY PROVIDING AND INCOMPLETE AND MISLEADING RECITATION OF THE FACTS, DET WILKIN SUCCESSFULLY

3   UNDERMINED THE FOURTH AMENDMENT BY MANIPULATING THE INFERENCES A MAGISTRATE WILL DRAW AND BY

4   DOING THIS, EFFECTIVELY USURPED THE MAGISTRATES DUTY TO CONDUCT AN INDEPENDENT EVALUATION OF

5   PROBABLE CAUSE. PERKINS, 850 F.3D AT 1117-18. HE DELIBERATELY WITHHELD EXCULPATORY EVIDENCE, WHICH

6   THE FOURTH AMENDMENT MANDATES BE INCLUDED. BROAM, 320 F.3D AT 1032 (AN OFFICER MAY NOT IGNORE

7   EXCULPATORY EVIDENCE THAT WOULD "NEGATE A FINDING OF PROBABLE CAUSE")

8       NO THEORY IS NEEDED TO SEE THE EXCULPATORY NATURE OF THE OMITTED INFORMATION, CRAIGHEAD, 539 F.3D

9   AT 1081, ITS SIMPLY LOGIC AND COMMON SENSE.

10       THE APPLICATION OF THESE PRINCIPLES HAVE BEEN LONG ESTABLISHED. AS THE NINTH CIRCUIT RECENTLY

11   REITERATED, "AN OFFICER PRESENTING A SEARCH WARRANT APPLICATION HAS A DUTY TO PROVIDE, IN GOOD FAITH,

12   ALL RELEVANT INFORMATION TO THE MAGISTRATE." PERKINS, 850 F.3D AT 1116.

13       IN SUM, "A MAGISTRATE CANNOT ADEQUATELY DETERMINE THE EXISTENCE OF PROBABLE CAUSE WITH THE

14   REQUISITE JUDICIAL NEUTRALITY AND INDEPENDENCE IF THE POLICE PROVIDE HIM OR HER WITH A FALSE,

15   MISLEADING, OR PARTIAL STATEMENT OF THE RELEVANT FACTS." FLORES, 679 F.2D AT 177 N.1. THIS WAS

16   A BREACH OF THE DUTY THAT DET WILKIN OWED TO THE COURT. PERKINS, 850 F.3D AT 1119, CITING RUIZ, 758

17   F.3D AT 1149.

18       II.   THE WARRANT IS NOT SUPPORTED BY PROBABLE CAUSE

19       DET. WILKINS AFFIDAVIT CONTAINS AN UNTRACED IP ADDRESS, CONCLUSORY STATEMENTS AND UNDER NINTH CIRCUIT

20   PRECEDENT, FOUNDATIONLESS EXPERT OPINION.

21       AFFIDAVIT

22       DET WILKIN, IN THE STATEMENT OF PROBABLE CAUSE, ALLEGES MUSICALLY USER "SUMMER MEOOI" WAS

23   INVOLVED IN A SEXUALLY EXPLICIT CHAT WITH A MINOR RESIDING IN NASSAU COUNTY, NEW YORK ON MARCH 28

24   AND 29, 2017.

25       UTILIZING THE FRUITS OF DET SCHWIMBS PREVIOUS, UNLAWFUL SEARCH AND THE SUBPOENA RESULTS

26   PROVIDED BY DET CONSTANTINO (NASSAU COUNTY PD), DET WILKIN STATES THAT THE RESIDENTS OF   369

27   W. LEXINGTON #204 COMMITTED THE ALLEGED CRIME AND THAT EVIDENCE OF A CRIME WOULD BE

28   FOUND AT THIS LOCATION. FULL AFFIDAVIT IN EXHIBIT B

15

1

UNTRACED IP ADDRESS

2

THE AFFIDAVIT STATES THAT DET CONSTANTINO CONTACTED WILKIN FOR ASSISTANCE AND PROVIDED THE "ABOVE

3

DETAILS, WHICH INCLUDES IP ADDRESS "75.150.2.223" (NOTE THE LAST TWO DIGITS.) EXHIBIT B, PAGE 10,

4

LINE 5-10] IT THEN REFERS TO DET SCHWAMBS UNLAWFUL AND UNSUCCESSFUL SEARCH FOR RECORDS RELATING

5

TO THIS IP ADDRESS [EXHIBIT B, PAGE 10, LINE 22-29] THE IP ADDRESS RETURNED NO RECORDS,

6

THE IP ADDRESS RETURNED NO RECORDS IT IS NOT THE CORRECT IP ADDRESS ASSOCIATED WITH THIS ACCOUNT.

7

THE CORRECT IP ADDRESS IS STATED AS "75.150.2.233" THE LAST TWO DIGITS DIFFER. [EXHIBIT B, PAGE 10,

8

LINE 17]

9

THE  IP ADDRESS, WHICH WAS USED TO REGISTER THE ACCOUNT, WENT UNTRACED.

10

TOTALITY OF THE CIRCUMSTANCES

11

° MUSICALLY ACCOUNT "SUMMERMEOO1" IS ALLEGED TO HAVE COMMITTED A CRIME ON MARCH 28 AND 29,
2017. [EXHIBIT B, PAGE 7, LINE 31 AND 45]

12

° THE IP ADDRESS USED TO REGISTER THE ACCOUNT WENT UNTRACED

13

° THERE IS A KNOWN DEVICE : SAMSUNG SM-G930T [EXHIBIT B, PAGE 10, LINE 18]

14

° THE DEVICE HAS BEEN ACCESSED MULTIPLE LOCATIONS / IP ADDRESSES , INCLUDING T-MOBILE BASED IP ADDRESSES.
[EXHIBIT B, PAGE 10, LINE 17-21]

15

° THE DEVICE WAS ACCESSED AT 369 W. LEXINGTON #204 (73.192.178.95) AT AN UNKNOWN DATE AND TIME.
[EXHIBIT B, PAGE 10, LINE 20-21]

16

VIEWING THE FACTS IN A COMMON SENSE MANNER, THEY CAN BE SEEN AS THE FOLLOWING :

17

MOBILE DEVICE : SAMSUNG SM-G930T

18

THIS DEVICE IS OBVIOUSLY MOBILE, MADE EVIDENT BY THE FACT THAT ITS BEEN TO MULTIPLE LOCATIONS AND WAS

19

ACCESSED BY T-MOBILE BASED IP ADDRESSES. THIS ELEMENT IS SIGNIFICANT BECAUSE AS THE ONLY DEVICE, THIS IS THE

20

DEVICE DET WILKIN EXPECTS TO FIND AT THE LOCATION. THIS WILL BE CRITICAL IN CHALLENGING THE EXPERT

21

OPINION.

22

UNTRACED IP ADDRESS

23

THE ACCOUNT WAS CREATED BY A USER FROM A WHOLLY SEPARATE LOCATION, WHICH WENT UNTRACED. IN CHISM

24

V. WASHINGTON STATE, THE COURT FOUND IT SIGNIFICANT THAT THERE WAS AN IP ADDRESS THAT WAS ASSOCIATED WITH

25

THE OFFENDING WEBSITE THAT WENT UNTRACED. 661 F.3D AT 387. IT WAS ALSO FOUND SIGNIFICANT THAT THE IP

26

ADDRESS USED TO REGISTER THE OFFENDING WEBSITE WAS TRACED TO PEOPLE OTHER THAN THE CHISMS. Id AT 390.

27

WHILE THESE FACTS WERE OMITTED FROM THE AFFIDAVIT IN THAT CASE, THEY WERE SIGNIFICANT OMISSIONS.

28

WHO WAS THE USER WHO CREATED THIS ACCOUNT?

### TESTING THE AFFIDAVIT

#### A CRIME WAS COMMITTED

THE AFFIDAVIT DOES SET FORTH THE ALLEGATION THAT A CRIME WAS COMMITTED. IT PASSES THE FIRST TEST.

#### IT WAS THE SUSPECT WHO COMMITTED IT

THE AFFIDAVIT SHOWS THAT THE ACCOUNT WAS CREATED BY SOMEONE FROM AN UNTRACED, SEPARATE LOCATION. IT THEN INFERS THAT THE DEVICE WAS ACCESSED FROM 369 W. LEXINGTON AT AN UNKNOWN DATE AND TIME. IT PROVIDES NO UNDERLYING FACTS THAT THE RESIDENTS COMMITTED THE ALLEGED CRIME. FURTHER, THE MERE ASSOCIATION WITH AN ACCOUNT SUSPECTED OF CRIME HOLDS NO WEIGHT. FOR EXAMPLE, IN UNITED STATES V. UNDERWOOD, IT WAS HELD THAT THE MERE ASSOCIATION WITH A DRUG TRAFFICKING ORGANIZATION DID NOT SUPPORT THE CONCLUSION THAT THE DEFENDANT WAS A COURIER FOR THAT ORGANIZATION. 725 F. 3D AT 1083-84. LIKEWISE, THE MERE FACT THAT THE USER, WHO CREATED THE ACCOUNT FROM AN ENTIRELY DIFFERENT PLACE, ACCESSED THE DEVICE FROM A NEW LOCATION / IP ADDRESS, CANNOT SUPPORT THE CONCLUSION THAT THE RESIDENTS OF THAT LOCATION COMMITTED THE ALLEGED OFFENSE. THIS IS SIMPLY A CONCLUSORY STATEMENT.

ULTIMATELY, THE AFFIDAVIT "SUPPORTS ONLY THE FOLLOWING INNOCENT CONCLUSIONS": THE RESIDENTS KNOW THE USER; AND HE ACCESSED THEIR WIFI AT AN UNKNOWN DATE AND TIME. UNDERWOOD, 725 F. 3D AT 1086. THEREFORE, THE AFFIDAVIT WOULD FAIL THIS ELEMENT.

#### EVIDENCE OF A CRIME WOULD BE FOUND IN THE PLACE TO BE SEARCHED

THE VAST MAJORITY OF THE SCOPE OF THIS WARRANT IS DICTATED BY DET WILKINS EXPERT OPINION. [EXHIBIT B, PAGE 11-12]. FURTHER, CONSIDERING DET WILKIN NEVER MENTIONS THE DEVICE "SAMSUNG SM-G930T" IN ATTACHMENT B OF THE WARRANT, HE IS CLEARLY RELYING ON HIS EXPERT OPINION TO BE SUFFICIENT.

THE EXPERT OPINION, WHICH PLACES THE RESIDENTS IN THE CATEGORY OF PEOPLE WHO ARE SEXUALLY INTERESTED IN CHILDREN, IS TAILORED AROUND THE CONCLUSORY ALLEGATIONS OF THE RESIDENTS BEING SUSPECTS, MADE EVIDENT BY THE CONTINUOUS USE OF THE TERM "SUSPECTS" IN HIS LENGTHY RECITATION AND SPECIFIC STATEMENTS SUCH AS: "BASED ON THE ABOVE FACTS IT COULD BE EITHER SUSPECT COOK OR SUSPECT BLANCO, WHO BOTH HAVE ACCESS TO THE COMCAST IP ADDRESS." [EXHIBIT B, PAGE 12, LINE 20-21] AND "THE SUSPECT HAS USED THE INTERNET TO CONTACT A 6 YEAR OLD GIRL TO PRODUCE CHILD PORNOGRAPHY. DUE TO THIS FACT I AM REQUESTING TO SEARCH ALL DATA ON THE COMPUTER FOR EVIDENCE OF THE POSSESSION OF CHILD PORNOGRAPHY." [EXHIBIT B, PAGE 12, LINE 33-35]

17

1   BUT, AS ENUNCIATED BY THE NINTH CIRCUIT, THE QUESTION IS WHETHER A COMPUTER <u>CURRENTLY LOCATED</u>

2   ON THE PREMISE CONTAINS CONTRABAND. KELLEY, 482 F.3D AT 1054-55.

3   <u>WHETHER THE DEVICE IS PRESENTLY AT THE LOCATION</u>

4   THE SOLE FOUNDATION OF THE EXPERT OPINION IS BASED ON THE FACT THAT AT SOME <u>UNKNOWN DATE AND TIME</u>,

5   THE DEVICE WAS ACCESSED AT 369 W. LEXINGTON #204.

6   HOWEVER, IN CONSIDERING ALL OF THE CIRCUMSTANCES, THE UNDERLYING FACTS RENDER THE AFFIDAVIT

7   IMPERMISSIBLY STALE, FOR IT DOES NOT SET FORTH ANY "CONTINUING PATTERN OR OTHER GOOD REASONS" THAT THE

8   DEVICE IS PRESENTLY AT THE LOCATION. GANN, 732 F.3D AT 722. MOREOVER, THE FACT THAT THIS DEVICE

9   IS OBVIOUSLY MOBILE IS A FACTOR THAT MUST BE CONSIDERED IN THE TOTALITY OF THE CIRCUMSTANCES

10   ANALYSIS, FOR STALENESS "MUST BE EVALUATED IN LIGHT OF THE PARTICULAR FACTS OF THE CASE AND THE

11   NATURE OF THE CRIMINAL ACTIVITY AND PROPERTY SOUGHT." UNITED STATES V. CREWS, 502 F.3D 1130, 1140 (9TH

12   CIR 2007) IN OTHER WORDS, "BECAUSE EVIDENCE CAN BE MOVED", THE AFFIDAVIT MUST SUPPORT THE INFERENCE

13   THAT IT IS PRESENTLY IN THE RESIDENCE TO BE SEARCHED, REGARDLESS OF ITS PAST POSITION." GRANT, 682

14   F.3D AT 835.

15   THE AFFIDAVIT DOES NOT SUPPORT THIS REQUISITE INFERENCE. IT WOULD MERELY SUGGEST THAT THE PERSON

16   WHO CREATED THE ACCOUNT ACCESSED THE DEVICE FROM A NEW LOCATION – 369 W. LEXINGTON #204 – AT

17   AN UNKNOWN DATE AND TIME. THE FACTS PRESENTED HERE SIMPLY DO NOT REASONABLY INFER THAT IT IS

18   PRESENTLY THERE.

19   FURTHER, THE FACT THAT THE AFFIDAVIT STATES THAT MUSICALLY PROVIDED THE SUBPOENA RESULTS ON

20   APRIL 5, 2017 SHOWS THAT ANY INFORMATION RELIED UPON IS AT MINIMUM, 27 DAYS OLD AT THE TIME OF

21   ISSUANCE (MAY 2, 2017) AND 30 DAYS AT THE TIME OF EXECUTION (MAY 5, 2017).

22   OF COURSE, DET WILKINS EXPERT OPINION IS DESIGNED TO DIMINISH ANY EFFECT OF STALENESS. HOWEVER,

23   THIS DOES NOT PRECLUDE INQUIRY INTO THE FACTS ON WHICH THIS EXPERT OPINION IS BASED. IN OTHER

24   WORDS, UNDER NINTH CIRCUIT PRECEDENT, IN ORDER FOR THE EXPERT OPINION TO BE SUFFICIENT (TO HAVE

25   A FOUNDATION), THE AFFIDAVIT MUST SUPPORT THE INFERENCE THAT THE DEVICE IS <u>STILL ON THE PREMISES</u>,

26   REGARDLESS OF ITS PAST POSITION. KELLEY, 482 F.3D AT 1055; GRANT, 682 F.3D AT 835. IN THIS CASE,

27   IT DOES NOT.

28   IN SUM, THE EXPERT OPINION, UNDER NINTH CIRCUIT PRECEDENT, IS FOUNDATIONLESS AND CANNOT BE USED

18

1  TO SUPPORT PROBABLE CAUSE.

2      CONCLUSION

3      FOR THE AFOREMENTIONED REASONS (CONCLUSORY STATEMENTS AND FOUNDATIONLESS EXPERT OPINION) THE AFFIANT

4  LACKS A "SUBSTANTIAL BASIS" FOR PROBABLE CAUSE. KELLEY, 482 F.3D AT 1051.

5      GOOD FAITH

6      THE THIRD SITUATION UNDER LEON, WHICH IS REFERRED TO AS A "BARE BONES" AFFIDAVIT, APPLIES IN THIS

7  CASE. THE AFFIDAVITS IN WEBER AND UNDERWOOD WERE HELD AS BARE BONES BECAUSE THEIR EXPERT OPINIONS

8  WERE "FOUNDATIONLESS." WEBER, 923 F.2D AT 1345; UNDERWOOD, 725 F.3D AT 1083. THE SITUATION IS THE SAME HERE.

9      RELIANCE UPON A BARE BONES AFFIDAVIT IS NEVER REASONABLE. UNDERWOOD, 725 F.3D AT 1087.

10  ACCORDINGLY, ALL EVIDENCE MUST BE SUPPRESSED.

11  III.   NEW MATERIAL FACTS

12      THE SEARCH WAS UNREASONABLE BECAUSE NEW, MATERIAL FACTS WERE UNCOVERED BEFORE THE EXECUTION

13  OF THE WARRANT THAT UNDERMINED THE ORIGINAL PROBABLE CAUSE DETERMINATION.

14      THE WARRANT

15  THE WARRANT WAS ISSUED ON MAY 2, 2017 AND EXECUTED ON MAY 5, 2017.

16      THE AFFIDAVIT

17  DET WILKIN STATES THAT ON APRIL 3, 2017, A SEX CRIME INVOLVING A MINOR WAS REPORTED TO DET

18  CONSTANTINO OF NASSAU COUNTY [EXHIBIT B, PAGE 9, LINE 20-21] AFTER SOME INVESTIGATION, DET WILKIN

19  CONCLUDES THAT STEELE COOK AND JACOB BLANCO ARE THE SUSPECTS. [EXHIBIT B, PAGE 11, LINE 7-8]

20      ATTACHMENT A AND B

21  ATTACHMENT A OF THE WARRANT, WHICH DELINEATES WHERE THEY CAN SEARCH, INCLUDES "369 W. LEXINGTON

22  #204 FRESNO CA" [EXHIBIT B, PAGE 9, ITEM 1]

23  ATTACHMENT B OF THE WARRANT, WHICH DELINEATES WHAT THEY CAN SEARCH FOR, INCLUDES STEELE

24  COOK AND ITEMS SPECIFICALLY RELATED TO STEELE COOK [EXHIBIT B, PAGE 9, ITEM 1 AND 3]

25  THIS WAS BECAUSE, AT THE TIME OF ISSUANCE OF THIS WARRANT (MAY 2, 2017) IT WAS REASONABLE TO CONCLUDE

26  THAT STEELE COOK RESIDED AT 369 W. LEXINGTON, CONSIDERING HE WAS ON THE LEASE. [EXHIBIT B, PAGE 11,

27  LINE 4-5].

28

19

### STEELE COOKS NEW RESIDENCE

EXHIBIT F IS A SEARCH WARRANT FOR STEELE COOKS NEW RESIDENCE.

THE AFFIDAVIT, WHICH WAS ALSO AUTHORED BY DET. WILKIN, SPECIFICALLY DETAILS THAT ON MAY 3, 2017, HE LEARNED THAT SUSPECT COOK "MOVED OUT" OF 369 W. LEXINGTON "A MONTH AGO" [EXHIBIT F, PAGE 11, LINE 19-20] WILKIN THEN CONDUCTED ADDITIONAL INVESTIGATION AND ON MAY 5, 2017 CONFIRMED THAT STEELE COOK WAS RESIDING AT 2217 MARY ST SANGER, CA: "BASED ON THIS EVIDENCE SUSPECT COOK IS NOW RESIDING AT 2217 MARY ST SANGER CA" [EXHIBIT F, PAGE 12, LINE 5] WILKIN EVEN MAKES SURE TO NOTE THAT "A PREVIOUS WARRANT (WHICH HAS NOT BEEN EXECUTED AT THE TIME OF THE AUTHORIZATION OF THIS WARRANT) AUTHORIZES THE SEARCH OF SUSPECT BLANCO AND 369 W. LEXINGTON # 204 FRESNO CA" [EXHIBIT F, PAGE 12, LINE 19-21]

### MATERIAL

DET. WILKIN, DESPITE KNOWING SUSPECT COOK NO LONGER RESIDED AT 369 W. LEXINGTON #204, CONTINUED WITH THE EXECUTION OF THIS WARRANT, KNOWING FULL WELL THAT IT AUTHORIZED THE SEARCH / SEIZURE OF HIM AND ITEMS RELATED TO HIM AT 369 W. LEXINGTON #204.

BECAUSE IT EFFECTS THE ITEMS TO BE SEARCHED / SEIZED, IT EFFECTS PROBABLE CAUSE AND IS THEREFORE MATERIAL.

### THE LAW

IN UNITED STATES V. MARIN-BUITRAGO, 734 F. 2D 889 (2D CIR 1984), THE SECOND CIRCUIT HELD THAT THE POLICE HAVE A DUTY TO APPRISE THE ISSUING MAGISTRATE JUDGE WHEN THERE HAS BEEN A MATERIAL CHANGE IN THE FACTS UNDERLYING HIS OR HER PROBABLE CAUSE DETERMINATION BEFORE EXECUTION OF THE WARRANT. ID AT 894. THE COURT CONCLUDED THAT "IT IS THE MAGISTRATE, NOT THE EXECUTING OFFICERS, WHO MUST DETERMINE WHETHER PROBABLE CAUSE STILL EXISTS." ID.

THE NINTH CIRCUIT CITED MARIN-BUITRAGO WITH APPROVAL IN UNITED STATES V. JENNEN, AND CONCLUDED THAT BECAUSE THE FACTS UNDERLYING THE WARRANT HAD NOT MATERIALLY CHANGED, LAW ENFORCEMENT WERE NOT OBLIGATED TO APPLY FOR AN AMENDED WARRANT. 596 F.3D 594, 600 (9TH CIR 2009) ("BECAUSE THERE WAS NO UNREASONABLE DELAY IN EXECUTING THE WARRANT AND THE 'FACTS UNDERLYING THE MAGISTRATES DETERMINATION OF PROBABLE CAUSE' DID NOT 'MATERIAL[LY] CHANGE' THERE WAS NO NEED, AS JENNEN ARGUES, FOR THE SPD TO CONFER WITH A JUDICIAL OFFICER TO SEE IF 'PROBABLE CAUSE STILL EXIST[ED]."

1   QUOTING MARIN-BUITRAGO, 734 F.2D AT 894)

2      THIS PRINCIPLE IS ECHOED THROUGHOUT OTHER FEDERAL CIRCUITS. FOR EXAMPLE, IN UNITED STATES V.

3   BOWLING, 900 F.2D 926 (6TH CIR 1990), WHILE ONE GROUP OF OFFICERS WERE OBTAINING A WARRANT, A SECOND

4   GROUP WAS WAITING OUTSIDE THE DEFENDANTS HOME. AT SOME POINT, DEFENDANTS CONSENTED TO A SEARCH

5   BY THE SECOND GROUP OF OFFICERS, WHICH WAS PERFORMED HASTILY. AND REVEALED NOTHING INCRIMINATING.

6   WHEN THE FIRST GROUP OF OFFICERS LATER ARRIVED WITH THE SEARCH WARRANT, THE SECOND GROUP INFORMED

7   THEM ABOUT THE UNSUCCESSFUL SEARCH. THE OFFICERS THEN EXECUTED THE WARRANT WITHOUT FIRST

8   DISCLOSING TO THE MAGISTRATE THAT AN INITIAL SEARCH HAD ALREADY BEEN CONDUCTED.

9      ON APPEAL, THE DEFENDANTS ARGUED THAT THE UNSUCCESSFUL INITIAL SEARCH NEGATED PROBABLE CAUSE

10   AND THAT IT SHOULD HAVE BEEN DISCLOSED TO THE MAGISTRATE JUDGE BEFORE THE WARRANT WAS EXECUTED.

11   THE GOVERNMENT RESPONDED THAT THE DETERMINATION OF WHETHER THE SECOND SEARCH WAS CONDUCTED

12   IN GOOD FAITH SHOULD BE BASED ON INFORMATION KNOWN WHEN THE WARRANT WAS ISSUED, AND INFORMATION

13   OBTAINED AFTER THE WARRANT WAS ISSUED DID NOT HAVE TO BE DISCLOSED TO THE MAGISTRATE. Id AT 931.

14      IN REJECTING THE GOVERNMENTS ARGUMENT, THE SIXTH CIRCUIT BEGAN BY EXPLAINING THAT IN

15   JOHNSON V. UNITED STATES, 333 US 10, 68 S CT 367, 92 L.ED 436 (1948), THE SUPREME COURT

16   "EMPHATICALLY CAUTIONED THAT IN THE ABSENCE OF URGENT CIRCUMSTANCES OFFICERS SHOULD NOT RELY ON

17   THERE OWN DISCRETION, BUT SHOULD INSTEAD RESORT TO A NEUTRAL MAGISTRATE, TO DETERMINE IF PROBABLE

18   CAUSE TO CONDUCT A SEARCH EXISTS." BOWLING, 900 F.2D AT 933. THE COURT THEN CONTINUED

19      "ALTHOUGH JOHNSONS ADMONITION SPEAKS SPECIFICALLY TO THE SITUATION IN WHICH OFFICERS CONDUCT A

20      WARRANTLESS SEARCH, WE THINK IT IS EQUALLY APPLICABLE TO CASES IN WHICH OFFICERS POSSESS A

21      WARRANT BUT ARE ALERTED TO CIRCUMSTANCES WHICH EFFECT THE PROBABLE CAUSE FOR ITS

22      EXECUTION. THE FOURTH AMENDMENTS PROTECTION AGAINST UNREASONABLE SEARCHES AND

23      SEIZURES WOULD BE AN INCOMPLETE AND HIGHLY MANIPULABLE SAFEGUARD IF A NEUTRAL MAGISTRATE

24      COULD NOT PLAY THE SAME IMPARTIAL ROLE IN ASSESSING CONTINUING PROBABLE CAUSE THAT HE PLAYS

25      IN DETERMINING PROBABLE CAUSE TO ISSUE THE WARRANT IN THE FIRST PLACE. BECAUSE NO

26      EXIGENT CIRCUMSTANCES ARE PRESENTED BY THE FACTS OF THIS CASE, THE OFFICERS SHOULD HAVE

27      REFRAINED FROM THE SECOND SEARCH UNTIL A NEUTRAL MAGISTRATE DETERMINED THAT PROBABLE

28      CAUSE CONTINUED TO EXIST."

21

1    *Id.* See also United States v. Jacobs, 986 F.2D 1231 (8th Cir 1983) (execution of search

2  was not reasonable, in part, because officers failed to provide the magistrate judge with information

3  that was obtained after the warrant was issued "which would have undercut the warrants validity")

4  ; United States v. Spencer, 530 F.3D 1003, 1008, 382 US App D.C. 90 (D.C. Cir 2008) ("it is true that

5  when officers learn of new facts that negate probable cause, they MAY NOT rely on an earlier

6  issued warrant but instead must return to the magistrate..."); United States v. Nepstead,

7  424 F.2D 269, 271 (9th Cir 1970) ("while it is desirable that police be given reasonable latitude

8  to determine when a should be executed, it is also necessary that search warrants be executed

9  with some promptness in order to lessen the possibility that the facts upon which probable cause

10  was initially based do not become dissipated.")

11    CONCLUSION

12    The law is clear, because this information "changed the facts upon which the original

13  affidavit was based", which no longer "gave the [officers] probable cause to believe that

14  articles subject to the" search and seizure were at the location, Nepstead, 424 F.2D

15  at 271, Det Wilkin had a duty to return to the magistrate and apprise him of these

16  new material facts. This was an unreasonable search.

17    GOOD FAITH

18    In United States v. Jacobs, 986 F.2D 1231 (8th Cir 1983), the court was confronted with

19  a case in which after issuance of a warrant, the officers were alerted to additional,

20  material facts that would have undercut the warrants validity. Yet, without apprising the

21  magistrate judge with these new facts, the officers executed the warrant. The court

22  held that such an act would be insufficient to any "good faith" defense. *Id.* at 1235-36.

23    Therefore, the government cannot use this defense and all evidence should be

24  suppressed.

25

26

27

28

IV.   CONCLUSION

THE DEFENSE HAS ESTABLISHED DELIBERATE FALSEHOODS AND RECKLESS DISREGARD FOR THE TRUTH IN THE SEARCH WARRANT AFFIDAVITS BY EXAMINING THE INFORMATION THEY USED TO PREPARE EACH AFFIDAVIT. THESE MISREPRESENTATIONS MANIPULATED THE MAGISTRATES INFERRENCES IN THE PROBABLE CAUSE DETERMINATION.

ITS ALSO CLEAR THAT EACH WARRANT AFFIDAVIT SUFFERED FROM OTHER DEFICIENCIES, SUCH AS AN ERRONEOUS FINDING OF PROBABLE CAUSE, CONCLUSORY STATEMENTS AND FOUNDATIONLESS EXPERT OPINION. ADDITIONALLY, DET WILKIN DID NOT APPRISE THE ISSUING MAGISTRATE WITH NEW MATERIAL FACTS THAT UNDERCUT THE WARRANTS VALIDITY. AS ESTABLISHED IN EACH SECTION, BOTH AFFIANTS HAVE NO GROUNDS TO ASSERT A "GOOD FAITH" DEFENSE.

FOR THE AFUREMENTIONED, THE GOVERNMENT VIOLATED THE DEFENDANTS RIGHTS UNDER THE FOURTH AMENDMENT AND THEREFORE, ANY AND ALL EVIDENCE, AND ANY FRUITS DERIVED FROM THESE SEARCHES SHOULD BE SUPPRESSED.

DATED: JANUARY 24, 2019

JACOB BLANCO

DEFENDANT IN PROPRIA PERSONA

23

DECLARATION OF JACOB BLANCO

1. I, JACOB BLANCO, DECLARE:

1. I AM THE DEFENDANT IN THIS ACTION, PROCEEDING IN PROPRIA PERSONA

2. THE FACTUAL STATEMENTS AND ASSERTIONS WHICH ARE CONTAINED IN THE INSTRUT ARE TRUE AND CORRECTED TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND AS TO THOSE MATTERS STATES ON INFORMATION AND BELIEF, I BELIEVE THEM TO BE TRUE.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA, THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

EXECUTED ON JANUARY 24, 2019 AT FRESNO, CALIFORNIA.

JACOB BLANCO

EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**
1100 Van Ness Avenue
Fresno, California 93724-0002

| AGENCY CASE NUMBER:<br>217cr0016635 | **SEARCH WARRANT** | WARRANT NUMBER: |
|---|---|---|

The PEOPLE OF THE STATE OF CALIFORNIA to any peace officer in Fresno County.

The affidavit below, sworn and subscribed before me, has established probable cause for this search warrant which you are ordered to execute as follows:

**Place(s) to be searched:** Described in Attachment A, attached hereto and incorporated by reference.

**Property to be searched:** Described in Attachment B, attached hereto and incorporated by reference.

**Night service:** [If initialed by Judge] For good cause shown, as set forth in the Statement of Probable

Cause, night service is authorized: _____

**Disposition of Property:** All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further order of the court, pursuant to Penal Code §§ 1528(a) & 1536.

**X** - The oath was administered orally over the telephone by the magistrate to the affiant.

| 4/19/2017 4:56:29 PM | _Jartha B(akas_ |
|---|---|
| Date and time warrant issued | Judge of the Superior Court |

## AFFIDAVIT

**Incorporation:** The facts in support of this warrant are contained in the Statement of Probable Cause which is incorporated by reference. Also, incorporated by reference and attached hereto are Attachment A, describing the place(s) to be searched; and Exhibit B, describing the evidence to be seized.

**Evidence Type:** (Penal Code § 1524)

☐ Stolen or embezzled property.

☐ Property or things to be used as a means of committing a felony.

☐ Property or things in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing it from being discovered.

☐ Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person has committed a felony.

☐ Property or things that are evidence that tends to show that sexual exploitation of a child, in violation of Penal Code §311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code §311.11 has occurred or is occurring.

☑ Other:   When a provider of electronic communication has records pursuant to PC1524.3.

☐ Night Service: [If checked] Authorization for night service is requested based on information in the Statement of Probate Cause, filed herewith.

**Declaration:** I declare under penalty of perjury that the information within my personal knowledge contained in this affidavit, including all incorporated documents, is true.

| 04/19/2017 | /s/ Detective Scott Schwamb |
|---|---|
| Date | Affiant |

**SEARCH WARRANT**

**U.S. v. JACOB BLANCO; 000207**

Warrant ID 000006420

## AFFIDAVIT

Your Affiant, Detective Scott Schwamb, being duly sworn, hereby deposes and states as follows:

Your Affiant states he has been a duly sworn peace officer with the Fresno County Sheriff's Department since June 24, 2002.  Your Affiant is currently assigned to the Central California Internet Crimes Against Children Task Force (ICAC), where he is assigned as a Detective.  Your Affiant is responsible for investigating internet crimes including child pornography, child exploitation, and other crimes where a computer and the internet were utilized.

Prior to my current assignment, Your Affiant was assigned to the Field Services Detective Bureau in Area 3 as a Burglary-Robbery Detective.  During that time, my primary duty was investigating property related crimes.  During the course of my investigations into property related crimes, Your Affiant came across evidence stored on computers, cell phones and other digital information storage devices and Your Affiant is familiar with the recovery, evidence collection, and viewing of such information.

In addition, Your Affiant has worked various assignments with the Fresno County Sheriff-Coroner's Office including, bailiff duties, patrol Deputy, and K9 Handler.  While in these capacities, I made arrests of known criminals involved in crimes against persons including but not limited to sexual assault, indecent exposure, and possession of child pornography.

Your Affiant was also a member of the K9 Unit for 7 years.  During my time as a K9 handler, my duties ranged from working uniformed patrol, assisting in search/arrest warrants, participating in SWAT incidents, and the apprehension of wanted subjects.  Your Affiant has participated in the service of search warrants in which child predators were arrested and evidence of child pornography was recovered.

Your Affiant has had the following training and education: the Basic Police Academy consisting over 986 hours of training, Basic and Intermediate POST Certificate, (3) hours of training on search warrant preparation and service, (40) hours Interview and Interrogation/Behavior Analysis, (40) hours of Cognitive Interview and Statement Analysis, and (40) hours of ICAC Task Force Investigative Techniques .  Your Affiant has hundreds of hours of on the job training involving investigations of child sexual abuse, computer evidence handling and other police matters. Your Affiant has also received training from subject-matter experts in the investigation of child sexual exploitation and specifically the use of the internet for this purpose.

Your Affiant has personally examined photography, computer images, and videos depicting children involved in illegal sexual activities with themselves and adults.  Your Affiant has also been trained to recognize the physical characteristics of prepubescent and pubescent children.  Your Affiant has been involved in more than fifty (50) law enforcement search warrants, many involving sexual assaults and internet crimes against children.

Your Affiant has spoken with other peace officers and investigators who are knowledgeable regarding the methods and means used by individuals who buy, sell, trade, send, and/or receive child pornography, and who sexually exploit children via the internet and have related their personal knowledge and provided Your Affiant with insights as to the manner in which evidence of these crimes are kept.

U.S. v. JACOB BLANCO; 000208 00006420

## STATEMENT OF PROBABLE CAUSE

On April 11, 2017, Members of the Central California ICAC Task Force, a multi-agency task force which investigates child exploitation cases, was contacted by Detective A. Constantino (Nassau County Police Department) regarding a child exploitation case. Detective Constantino provided the following information:

On April 03, 2017, ▮▮▮▮ ▮▮▮ (DOB: ▮▮▮▮▮▮) reported she was looking at the iPad her daughter uses and went into her **Musical.ly** app. While looking at the videos her daughter created, the complainant came across a string of messages from another **Musical.ly** user (**@summerme001**). The messages were sexually explicit and directed the ▮▮ victim to create explicit images and send them to the subject. The text content was sexually explicit as well and discussed having sexual contact with the victim and the dog.

The following is a list of actions taken by Detective Constantino after the report:
**4/3/2017:** Preservation sent to Musical.ly via FAX.
**4/3/2017:** Advanced Logical extraction performed on iPad.
**4/4/2017:** Examination of device was completed and a report was created. Images of device need to be completed to secure content of communications.
**4/4/2017:** Images and video of iPad secured.
**4/4/2017:** Usernames identified checked for de-confliction.
**4/4/2017:** An e-mail to ADA Slane sent requesting user information for usernames identified.
**4/4/2017:** Subpoena sent to Musical.ly via e-mail submission by ADA Slane.
**4/5/2017:** I/D received a subpoena response via e-mail from Musical.ly. It identifies multiple IP addresses. Some indicating, through open sources, as returning to California.
**4/10/2017:** I/D returned a call from victim's father, Max. He was informed of the findings as they are known to be at this time. Subpoenas will be requested from ADA Slane.

Detective Constantino received a response regarding subscriber information about **Musical.ly** subscriber: **summerme001.** The subscriber information showed an associated email address of smog1234555hejsj@gmail.com, a sign up date of **03/22/2017 5:40:23 am (GMT +8)**, sign up IP address: **75.150.2.233. Musical.ly** also provided an IP log which also showed IP address **73.192.178.95** utilized the above listed account between **04/04/2017 05:36:52 (GMT)** and **04/04/2017 05:37:53 (GMT)**.

A subsequent internet search of who the above listed IP address were assigned to showed that both **75.150.2.223** and **73.192.178.95** are assigned to **Comcast Cable Communications.** IP address **75.150.2.223** shows to come back to Comcast Business and generally locates to the United States. IP address **73.192.178.95** shows to come back to the Eastern District of California, more specifically the Fresno Area.

Due to the IP address locating to the area of Fresno, Ca, Detective Constantino requested the Central California Internet Crimes Against Children Task force assist with the investigation.

Based on the above mentioned facts and circumstances, I believe **Comcast Cable Communications** will retain information that may lead to the identity of one of their users (**summerme001**) who utilized their service to communicate with a minor child, sent sexually explicit material to the minor child and directed the minor child to create sexually explicit material and distribute it via Musical.ly, in violation of PC 311.11(a), PC 311.4(a) and PC 288.2(a)(1).

I have reasonable cause to believe that the grounds for the issuance of a search warrant exist, as set forth in Section 1524 of the Penal Code of the State of California, based upon the aforementioned information, facts and circumstances.

Your Affiant requests that **Comcast Cable Communications** be commanded, within 5 days after receipt of this search warrant, to deliver by mail or otherwise, to the above named law enforcement officer, together with the declaration as set forth below, a true, durable and legible copy of the requested records listed in Attachment "B" (see California Penal Code 1524.2).

Your Affiant is requesting that **Comcast Cable Communications** be commanded to complete and sign the "Declaration of Custodian" which accompanies this search warrant. The "Declaration of Custodian" shall be returned with a copy of the requested records. (See California Penal Code 1546.1(d)(3), and 1524.2(b)(4).)

As required by California Penal Code 1546.1(d), any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

## ORDER FOR NON-DISCLOSURE PURSUANT TO PC 1546.2(a)

Your affiant, **Detective Scott Schwamb**, at the Fresno County Sheriffs-Coroner's Office, hereby applies to this Court, pursuant to Section 1546.2(b)(1) of the Penal Code, for an order delaying for **90** days the notification required by Section 1546.2(a) of the Penal Code in connection with the Search Warrant

This delay is requested because there is reason to believe based on my training and investigative experience, when the suspect or target of a child exploitation investigation is notified of the existence of said investigation, there is a high probability that the suspect/target will destroy (delete) evidence and/or flee in an attempt to attempt to avoid prosecution.

Pursuant to an official criminal investigation of a suspected felony being conducted by the **Fresno County Sheriff's Office**, IT IS HEREBY ORDERED that **Comcast Cable Communications** furnish, upon presentation of this Search Warrant, all records described in this Search Warrant. There is probable cause to believe that disclosure of this Search Warrant or the criminal investigation could impede the investigation being conducted. IT IS HEREBY ORDERED that **Comcast Cable Communications** refrain from directly or indirectly disclosing the existence of this Search Warrant or the criminal investigation to the Targeted Accounts or any person associated therewith until further notice of this court or another court of competent jurisdiction, **not to exceed 90 days**. IT IS HEREBY ORDERED that if for any reason **Comcast Cable Communications** alters the service associated with the Targeted Accounts or any person associated therewith, **Comcast Cable Communications** shall not reveal that it has received legal process or that the alteration of service is related to receipt of legal process.

## ATTACHMENT "A"

**TO MAKE A SEARCH OF THE FOLLOWING LOCATION(S):**
The premises known as **Comcast Cable Communications**, located at 650 Centerton Road, Moorestown, NJ 08057, Attn: Comcast Legal Compliance Center, Telephone (866)947-8572, described as an internet service provider. Service via FAX at (866) 947-5587.

## ATTACHMENT "B":

**The search will be for the following:**

1. All **Comcast Cable Communications** Basic Subscriber Information associated with user account(s) utilizing the following IP address(es) between **04/04/2017 05:36:52 (GMT)** and **04/04/2017 05:37:53 (GMT):**

**IP Address: 75.150.2.223**

**IP Address: 73.192.178.95**

-Basic subscriber information includes but is not limited to: subscriber's name, date of birth, social security number, street address(es), telephone number(s), email address(es), or similar contact information provided by the subscriber to the provider to establish or maintain an account or communication channel, a subscriber or account number or identifier, the length of service, and the types of services used by a user or subscriber to a service provider.

Your Affiant requests that **Comcast Cable Communications** be commanded, within 5 days after receipt of this search warrant, to deliver by mail or otherwise, to the above named law enforcement officer, together with the declaration as set forth below, a true, durable and legible copy of the requested records listed in Attachment "B" (see California Penal Code 1524.2).

Your Affiant is requesting that **Comcast Cable Communications** be commanded to complete and sign the "Declaration of Custodian" which accompanies this search warrant. The "Declaration of Custodian" shall be returned with a copy of the requested records. (See California Penal Code 1546.1(d)(3), and 1524.2(b)(4).)

As required by California Penal Code 1546.1(d), any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

## ORDER FOR NON-DISCLOSURE PURSUANT TO PC 1546.2(a)

Your affiant, Detective Scott Schwamb, at the Fresno County Sheriffs-Coroner's Office, hereby applies to this Court, pursuant to Section 1546.2(b)(1) of the Penal Code, for an order delaying for 90 days the notification required by Section 1546.2(a) of the Penal Code in connection with the Search Warrant

This delay is requested because there is reason to believe based on **JACOB BLANCO** W000421 00006420

experience, when the suspect or target of an child exploitation investigation is notified of the existence of said investigation, there is a high probability that the suspect/target will destroy (delete) evidence and/or flee in an attempt to attempt to avoid prosecution.

Pursuant to an official criminal investigation of a suspected felony being conducted by the **Fresno County Sheriff's Office**, IT IS HEREBY ORDERED that **Comcast Cable Communications** furnish, upon presentation of this Search Warrant, all records described in this Search Warrant. There is probable cause to believe that disclosure of this Search Warrant or the criminal investigation could impede the investigation being conducted. IT IS HEREBY ORDERED that **Comcast Cable Communications** refrain from directly or indirectly disclosing the existence of this Search Warrant or the criminal investigation to the Targeted Accounts or any person associated therewith until further notice of this court or another court of competent jurisdiction, **not to exceed 90 days**. IT IS HEREBY ORDERED that if for any reason **Comcast Cable Communications** alters the service associated with the Targeted Accounts or any person associated therewith, **Comcast Cable Communications** shall not reveal that it has received legal process or that the alteration of service is related to receipt of legal process.

EXHIBIT B

| **SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**<br>1100 Van Ness Avenue<br>Fresno, California 93724-0002 | | |
|---|---|---|
| AGENCY CASE NUMBER:<br>**17-28265** | **SEARCH WARRANT** | WARRANT NUMBER: |

The PEOPLE OF THE STATE OF CALIFORNIA to any peace officer in Fresno County.

The affidavit below, sworn and subscribed before me, has established probable cause for this search warrant which you are ordered to execute as follows:

**Place(s) to be searched:** Described in Attachment A, attached hereto and incorporated by reference.

**Property to be searched:** Described in Attachment B, attached hereto and incorporated by reference.

**Night service:** [If initialed by Judge] For good cause shown, as set forth in the Statement of Probable

Cause, night service is authorized: _____

**Disposition of Property:** All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further order of the court, pursuant to Penal Code §§ 1528(a) & 1536.

**X** -The oath was administered orally over the telephone by the magistrate to the affiant.

| | |
|---|---|
| **5/2/2017 2:36:58 PM**<br>Date and time warrant issued | *Gary D. Hoff*<br>Judge of the Superior Court |

### AFFIDAVIT

**Incorporation:** The facts in support of this warrant are contained in the Statement of Probable Cause which is incorporated by reference. Also, incorporated by reference and attached hereto are Attachment A, describing the place(s) to be searched; and Exhibit B, describing the evidence to be seized.

**Evidence Type:** (Penal Code § 1524)

- ☐ Stolen or embezzled property.
- ☑ Property or things to be used as a means of committing a felony.
- ☐ Property or things in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing it from being discovered.
- ☑ Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person has committed a felony.
- ☑ Property or things that are evidence that tends to show that sexual exploitation of a child, in violation of Penal Code §311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code §311.11 has occurred or is occurring.
- ☐ Other: _____
- ☐ Night Service: [If checked] Authorization for night service is requested based on information in the Statement of Probate Cause, filed herewith.

**Declaration:** I declare under penalty of perjury that the information within my personal knowledge contained in this affidavit, including all incorporated documents, is true.

| | |
|---|---|
| 05/01/2017<br>Date | /S/ David Wilkin #1297<br>Affiant |

**ATTACHMENT "A"**

TO MAKE SEARCH OF THE FOLLOWING:

1. **THE PREMISES known as 369 W Lexington #204, Fresno CA** is described as a single family apartment located within the city limits of Fresno, Ca. The apartment is located within the two story apartment complex on the northwest corner of E Nees and N Poplar. An entrance to the apartment complex is on E Nees west of N Poplar. There is a sign that reads "Terrace View to the east of the driveway. The apartments consist of a light brown / crème colored stucco and consist of a multitude of addresses. The apartment identified as 369 W Lexington #204 is located south of W Lexington Av and east of W Audubon. The building which the apartment is in is the second building south of W Lexington and four buildings eat of W Audubon. The apartment is located on the north side of said building two apartments east of the west side of the building. The apartment the second floor apartment and has a brown metal door. The door faces in a westerly direction and is recessed into the entry way for apartments 104, 105, and 205. The numbers "205" are affixed to the center of the door in off white numbers on a brown plastic emblem background.

2. **ANY VEHICLE** in the custody or control of the resident/or owner of **369 W Lexington #204, Fresno CA** as evidenced by ignition keys, or car door keys, or vehicle ownership documents in his/her possession, or on his/her person, or under his/her dominion and control, or by statements of witnesses, or any vehicle within the garages, grounds, or storage areas to be searched. Such search shall include containers of any kind within the vehicle.

3. **The Vehicle** belonging to Suspect Steele Knight Valor Cook described as follows:

   California License Plate # ████████
   1999 Ford Mustang (Green in Color)
   VIN: 1FAFP4047XF225321

4. **The Vehicle** registered to Suspect Jacob E Blanco described as follows:

   California License Plate # ████████
   2005 Honda Civic (White in Color)
   VIN: HMMES96665S020263

5. The detention and search of the person of **Steele Knight Valor Cook** as identified by California Department of Motor Vehicles (DMV) Driver's License ████████, Date of Birth (DOB) ████████.

6. The detention and search of the person of **Jacob Eric Blanco** as identified by California Department of Motor Vehicles (DMV) Driver's License ████████, Date of Birth (DOB) ████████.

**ATTACHMENT "B"**

FOR THE FOLLOWING PROPERTY:

1. I am requesting the authority to search the body of **Steele Knight Valor Cook,** in order to obtain any and all electronic devices in his custody and control, capable of containing evidence of child sexual exploitation. I also request the authority to compel a fingerprint from **Steele Knight Valor Cook** if it becomes necessary to access any electronic device under his custody or control which is locked via a fingerprint scanner. I will use the least amount of reasonable force necessary to collect the described evidence

2. I am requesting the authority to search the body of **Jacob Eric Blanco,** in order to obtain any and all electronic devices in his custody and control, capable of containing evidence of child sexual exploitation. I also request the authority to compel a fingerprint from **Jacob Eric Blanco** if it becomes necessary to access any electronic device under his custody or control which is locked via a fingerprint scanner. I will use the least amount of reasonable force necessary to collect the described evidence

3. Indicia in the name of "**Steele Knight Valor Cook**" and / or Jacob Eric Blanco that will tend to show the domination and control of **369 W Lexington #204, Fresno CA.**

4. Articles of personal property tending to establish the identity of persons in control of the premises, vehicles, storage areas, consisting of in part utility company receipts, rent receipts, cancelled mail envelopes, vehicles registration, address mail, personal identification, purchase or sales receipts, photographs, usage or transactions or which connect occupants to the residence and or transactions, and keys which are found on the premises or the person of occupants which tend to connect the occupants with the residence or vehicles.

5. Images, pictures, magazines, correspondence, videos, VHS tape, and 8mm tape or other media depicting sexual conduct, as described in PC 311.3(b), by persons under 18 years of age or appearing to be under 18 years of age whether found in actual physical form or stored digitally on computer media.

6. Photographic or video equipment that could be used to create images described under item 1.

7. Images, photos, videos, magazines, diaries, records, and correspondence which shows an interest in sexual activity with persons under the age of 18 or appearing to be under the age of 18.

8. Any diaries or journals relating to sexual encounters with persons under or appearing to be under 18 years of age.

**U.S. v. JACOB BLANCO;  000216**

9. Sexual aids, behavioral grooming aids, or items of property that could be used to assist in the completion of or the development of a willingness to engage in sexual acts by minors.

10. Any name and address ledgers that could include names, addresses, phone numbers, email addresses, or lists of persons with similar sexual interests.

11. Any computer system components such as hardware, input/output peripheral and auxiliary devices, related software, storage media, documentation, and data security devices and records, documents, and materials that may contain any of the items listed above in electronic form. (See below for a complete description and explanation).

12. Digital communications devices allowing access to the Internet or to cellular digital networks to include cellular telephones, email devices, and personal digital assistants (not referenced above).

13. Items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.

14. Contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence.

15. Computer software, hardware or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.

**In reference to the above electronic devices I am requesting the authority to search for the following:**

**A. Digital Communications:**

Any and all emails, SMS, MMS threads / communications located on the above listed devices and within various programs installed on the devices containing evidence of child sexual exploitation.   I further request the authority to access the content of any accounts linked to the above referenced devices by interfacing with the linked device.

**B. Photographs / Videos:**

Any and all photographs / videos depicting child sexual exploitation.

**C. Internet Activity:**

Internet Activity includes but is not limited to browsing history, search terms, URL's visited, and cookies pertaining to child sexual exploitation.

**D. Location Data:**

GPS, Location History, IP and MAC Address History, and all EXIF information (metadata) attached to the media files which would tend to show the location of where the files pertaining to child pornography may have been created to assist in identifying victims and suspects in child sexual exploitation.

**E. Software Data:**

Any and all data pertaining to or retained in installed software on the above device that tends to show evidence of the possession of child pornography or the user of specified applications as well as victims or co-conspirators in child sexual exploitation.

Computer/Equipment software (digital information) can be interpreted by electronic storage device equipment, computers and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical or other digital form. It commonly includes programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs) utilities, compilers, interpreters and communication programs.

**F. Contact Lists:**

Any and all contacts located on the phone or installed applications within the phone which show a relationship to the suspect which are related to the crime of child sexual exploitation.

**G. Metadata:**

Any and all data within data linked to the digital files contained on the above referenced electronic devices which are related to the crime of child sexual exploitation.

*I am requesting the authority to search all content of the electronic devices regardless of date.*

Fresno PD Case 17-28265

Warrant ID: 000008488

U.S. v. JACOB BLANCO;  000218

The hardware consists of all equipment that can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but not limited to) any data-processing devices (such as central processing units, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanner, plotters, video display monitors, and optical reader); and related communication devices (such as modems, cables and connections, and recording equipment); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks.)

Computer software is digital information that can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communication programs.

The terms "records," "documents," and "materials" include all of the foregoing items of evidence in whatever form or by whatever means such records, documents, or materials, their drafts, or their modifications may have been created or stored, including (but not limited to) any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (prints, slides, negatives, videotapes, photocopies); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, backup tapes, CD-ROMs, optical discs, smart cards, or electronic notebooks, as well as printouts or readouts from any magnetic storage device).

The searching authority may use several different techniques to search electronic data for evidence or instrumentality's of crime. These include, but are not limited to the following: examining file directories and subdirectories for the lists of files they contain; "opening" or reading the pages of selected files to determine their contents; scanning for deleted or hidden data; searching for key word phrases ("string searches").

Based upon Your Affiant's knowledge, training and experience, Your Affiant knows that searching and seizing information from computers often requires officers to seize most or all electronic storage devices (along with related peripherals and auxiliary items) to be searched in a controlled environment. This is because of the following:

1. The volume of evidence. Computer storage devices (like hard disks, diskettes, tapes, and laser disks) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

2. Technical requirements. Searching computer systems for criminal evidence is a technical process requiring a properly controlled environment. The environment helps protect the

U.S. v. JACOB BLANCO;   000219

integrity of the evidence and assists to recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to complete an accurate analysis.

Computer system reconstruction.  The peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software.  Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system.  It is important that the searching authorities be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above.  In addition, the searching authorities needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

It Your Affiant's experience that hard drive examinations and searches cannot be completed within the ten days in which the Search Warrant must be served and the Search Warrant Return filed.  It is requested that the 10-day requirement be waived to 60 days in order to provide Your Affiant ample time to process and comply with the Search Warrant in a timely manner.  The Search Warrant Return will be filed promptly upon completion of the computer system examination and search.

**California Electronic Communications Privacy Act Requirements (CA PC 1546.1(d)):**

1. Pursuant to Penal Code Section 1546.1(d)(2), any information obtained through the execution of this search warrant that is unrelated to the objective of this warrant will be retained in this affiant's custody (Fresno Police Department secured evidence) and not subject to further review, use, or disclosure without a court order.

2. Upon service of this search warrant this affiant will serve upon, or deliver to by registered or first class mail, electronic mail, or other means reasonable calculated to be effective, the identified targets of the warrant or emergency request, an Electronic Communications Protection Act Warrant Notice, including a copy of the Search Warrant.

IN THE SUPERIOR COURT OF THE FRESNO JUDICIAL DISTRICT

COUNTY OF FRESNO, STATE OF CALIFORNIA

| | | | |
|---|---|---|---|
| STATE OF CALIFORNIA | ) | | |
| | ) | | |
| COUNTY OF FRESNO | ) | ss | AFFIDAVIT |
| | ) | | |

I, Officer David Wilkin #1297, am a duly qualified peace officer employed by the City of Fresno, Police Department and have been so employed for over 12 years. During that time I have been assigned to the Southeast, Northeast, Northwest, and Southwest Patrol Districts. I served on the Northwest and Southwest District Crime Suppression Team's for approx. 3 years. I am currently assigned to the Sexual Assault Unit and the Central California Internet Crimes Against Children Task Force (ICAC) as a Detective, and have been duly assigned for approx. 3 years. I am responsible for investigating Internet crimes including, child pornography, child exploitation, and other crimes where technology has been utilized. Previous to this, I was employed by the Fresno County Sheriff's Department as a Reserve Deputy for approx. two years. I attended and graduated from the POST certified Fresno City College Police Academy in 2004 which consisted in over 900 hours of training. I have a Bachelors of Science Degree in Criminology from California State University, Fresno.

Since being a sworn law enforcement officer, I have completed no less than 300 hours of training related to sexual assault of children. I have successfully completed training through San Diego Regional Training Center in Patrol Response to Sexual Assault, "Robert Presley's ICI Core Course" as well as "Robert Presley's ICI Sexual Assault Course", Internet Crimes Against Children training, response to Human Trafficking training, and Behavior Analysis Investigative Interview and Interrogation Techniques (BATI). Your Affiant has also received training from subject-matter experts in the investigation of child sexual exploitation and specifically the use of the Internet for this purpose. I have received training from Guidance Technologies (EnCase / Tableau) regarding computer forensics, Internet Forensics, and advanced computer forensics. I have personally examined photography, computer images, and videos depicting children involved in illegal sexual activities with themselves and adults. I have also has been trained to recognize the physical characteristics of prepubescent and pubescent children. I have been involved in numerous law enforcement search warrants involving sexual assaults and Internet crimes against children.

I have spoken with other peace officers and investigators with other law enforcement agencies who are knowledgeable regarding the methods and means used by individuals who buy, sell, trade, send, and/or receive child pornography via the internet and have related their personal knowledge and provided me with insights as to the manner evidence of these crimes are kept. I have personally been involved in no less than 250 sexual assault investigations as both a primary and assisting investigator. During many of these interviews, the sexual offenders discussed or confessed to their sexual interest in children and the manner in which they seek out, locate, and molest their victims. I have written no fewer than 150 search warrants and have participated in the execution of no fewer than 150 search warrants.

U.S. v. JACOB BLANCO;  000221

1   Having been first duly sworn, I do hereby depose and say that I am conducting a criminal
2   investigation in which I have probable cause to believe the act(s) defined in the following California
3   Penal Code Section was/were committed: **PC 311.4(c) and PC 311.11(a).**

4

5   The description of the person(s) and/or place(s) to be searched, as noted within the attachments,
6   were obtained from witnesses, reporting parties, law enforcement agencies, public records, and/or
7   from the original reporting officer's observations.

8

9   The following paragraphs document my and my fellow officers' investigation of this matter and
10   establish probable cause for the issuance of this search warrant.

11

12

13   **STATEMENT OF PROBABLE CAUSE:**

14

15       On 04-11-2017, while assigned to the Central California Internet Crimes Against Children Task
16   Force, I was contacted by Detective A. Constantino with the Nassau County Police Departments
17   Special Victims Unit (New York). He was requesting assistance with an investigation which began in
18   Nassau County, New York. He relayed the following to me:

19

20       On April 3rd, 2017 the parents of Confidential Victim ▓ female), ▓▓▓ and ▓▓ ▓,
21   filed a report with Detective Constantino. They relayed to him that Victim was using the App
22   Musically on their iPad. She was registered under the user name of @kayzoe29, email-
23   tekeisha_e@yahoo.com. Victim was contacted by a user named @summerme001 (email-
24   smoq1234555heisi@gmail.com). The subject @summerme001 met the victim online while viewing
25   videos created and broadcast on Musical.ly by Victim. The victim and suspect discussed having sex
26   and asked victim to send images of her buttocks and vagina. Additionally, the suspect instructed
27   Victim on how to pose and how to manipulate her vagina in the photographs.

28

29       An examination of the iPad, identified by serial number F9FPVUMFFCM8, was done utilizing
30   Cellebrite's Physical Analyzer program by Detective Constantino. He located messages between
31   the suspect and Victim. On Tuesday March 28, 2017 at approximately 1720 hours (EST) subject
32   @summerme001 asked the victim her age. She told him she was "7". He also asked her questions
33   such as "have you ever H U M P E D a pillow or anything", and "show between your legs". The
34   subject states to the child **"take your hand and spread it open with fingers"**. With this direction,
35   Victim took a photo, while wearing a pink shirt and nothing else. The child's legs are spread open
36   and the child is using her left hand, and utilizing her middle and ring fingers, slightly spreads open
37   her vagina. The Victim sent this image to @summerme001.

38

39       The suspect also asked victim to send pictures of her butt, which she did. The picture sent is a
40   close-up of the child's anus and vagina. The subject responded with **"so so hot can you spread
41   with your hands too"**. Another picture was sent of the child's anus and vagina, exposed more
42   clearly. The subject responded **"Ur so hot, I'm waiting for the next pic"**. After sending several
43   pictures to the suspect, the suspect returned a photo of what appears to be a nude prepubescent
44   female child. The image is from the child's neck to her knees. There is no breast development or
45   pubic hair. On March 29, 2017 the child victim sent a picture of herself with her vagina and anus
46   clearly exposed and a dog nose with its tongue exposed near her anus. A conversation between

**U.S. v. JACOB BLANCO; 000222**

the victim and the subject continues with the subject stating **"so hot, does ur dog like to lick it" "let him lick it more" "does it feel good" "show me a pic of him doing it"**

On April 4th, 2017 Detective Constantino authored a subpoena to Musical.ly for subscriber information. On April 5th, 2017 Musical.ly responded with subscriber information for "@summerme001" which has an IP address of 75.150.2.223. An internet search of the IP address identified it as belonging to Comcast Cable Communications and based in Fresno, California.

On 4/11/2017 Detective Constantino contacted me for assistance. On 04/112/2017 he provided me with the above details and the subpoena results from Musical.ly. I reviewed the results and found the following information regarding the subscriber to "@summerme001":

**Subscriber information:**

| | |
|---|---|
| Username: | summerme001 |
| Email: | smog1234555hejsj@gmail.com |
| Sign up date (GMT+8): | 3/22/2017, 5:40:23 AM |
| Sign up IP: | 75.150.2.233 |
| Sign up device: | samsung SM-G930T |

I also found an additional IP address used by the suspect while accessing Musical.ly. One was 73.192.178.95. Additional T-Mobile based IP addresses were also used. Both were registered to Comcast Cable Communications. On 04-19-2017 Fresno County Sheriff's Detective S. Schwamb authored a search warrant for the subscriber information pertaining to the Comcast Cable Communications IP Address 75.150.2.223 and 73.192.178.95. He submitted it to Comcast Cable Communications on 04-20-2017. On 04-21-2017 Comcast responded stating the IP Address 73.192.178.95 belonged to STEELE COOK with a social security number ending in "8430" and a phone number of 971-340-8426. The service address was 369 W Lexington #204, Fresno CA. An additional email address of "Jacob_blanco@comcast.net was also used for the account. The second IP Address did not return any records.

I entered the phone number into Facebook and found the profile for Steele Cook at the URL https://www.facebook.com/steele.cook. I then ran Steel Cook in Fresno PD records and found a match for Steel Cook with a birthday of ████ with the same phone number. Jacob Blanco (DOB ████) was an associate of Suspect Cook. They appeared to be foster kids living in the same residence in 2011. Using this information I ran Suspect Steele in California Department of Motor Vehicles and found a matching photograph under ID ████. I also checked the Fresno PD calls for service at the Lexington address and found a "Phil Cook" using the same phone number had called the police from that address regarding a disturbance with his brother, Hunter Cook. "Steele" and "Phil" sound similar over a phone with a disturbance going on in the background.

I also checked CA DMV and found a 1999 Ford Mustang (California Plate ████ ) registered to Suspect Cook at the Lexington address. I checked Jacob Blanco ████ in California DMV and found he had an address of 2420 E Webster #102, Fresno CA listed on his drivers license (████).

1   On 05-02-2017 I conducted surveillance at 369 W Lexington. I located a white Honda Civic;
2   California License 5RBX949, parked in a covered stall directly in front of the building apartment 204 is
3   in. It was registered to "Jacob E. Blanco" at 2420 E Webster #102. I also contacted the apartment
4   manager who confirmed Suspect Cook and Suspect Blanco both are on the lease at 369 W
5   Lexington #204.
6
7   Based on the above facts I have probable cause to believe Suspect Cook or Suspect Blanco
8   is in violation of PC 311.11(a) and PC 311.4(a).
9
10  **Training and Experience in Child Sexual Exploitation Crimes:**
11
12  Based upon Your Affiant's training, experience, and conversations with other investigators
13  with whom he currently works with and who have participated in child sexual exploitation
14  investigations, Your Affiant knows the following:
15
16  Those who have demonstrated a sexual interest in children also have an interest in collecting
17  child sexual exploitation material erotic chats, child pornography, ect). These individuals are
18  categorized in one of two ways. The first type is where the individuals keep images and records of
19  communications with children concealed, but accessible. The reasons offenders keep these
20  images and chats vary from offender to offender and collections are often maintained for multiple
21  reasons. Child sexual exploitation material may be kept as "trophies" such as actual photographs
22  or images of the suspect's own sexual activity with children. An offender may also keep this
23  material as a means of seducing the child victim by arousing curiosity, attempting to normalize the
24  desired acts, lowering the inhibitions of potential child sexual partners by showing them that other
25  children participate in this kind of sexual activity and demonstrating and explaining what the
26  offender may desire be done. This process is generally referred to as "grooming".
27
28  Child sexual exploitation material is also maintained as a means of sexually arousing the
29  suspect. In other instances, the material is maintained for commercial purposes, used to obtain
30  money or other items of value including more child pornography or sexual contact with a minor.
31  Child sexual exploitation material images tend to be extremely important to these offenders. This
32  material is likely to remain in the possession of or under their control for many years. Because of their
33  importance and the difficulty and risk in obtaining the files, it is unlikely an offender will destroy the
34  material they have collected. Likewise, if the individual has obtained child sexual exploitation
35  material via the Internet they rarely delete the material from their computer before printing or
36  copying to other media. Offenders who collect child sexual exploitation material using the internet
37  often copy these images to removable media included but not limited to floppy disks, compact
38  disks, and USB storage devices. This removable media is concealed in the residence, on their
39  person, or in their vehicle, often commingled with other media. Suspects may also copy these files
40  to additional electronic devices using the internet (email, MMS, communication applications) or
41  Bluetooth.
42
43  The second behavior displayed is one where the individual obtains child sexual exploitation
44  material from its source, obtains sexual gratification from it, and then deletes it. Due to the
45  proliferation of the internet, peer 2 peer programs, and social media, there has been an explosion
46  of available child sexual exploitation material. It is easy for suspects to locate exactly what they are

looking for in regards to child sexual exploitation, obtain the files only to delete them in a short amount of time, and then find them again days, months, or even a year later. Despite this increase of suspects deleting their contraband, it is still possible to locate the evidence on the electronic devices memory storage. With the use of forensic tools we are able to search the electronic devices memory and, depending on the device, find files that were deleted years prior. Suspects can also transfer their files from device to device using the internet, Bluetooth, expandable memory (SD Cards, external hard drives), CD's, DVD's and other similar electronic storage devices.

Offenders often collect, read, copy or maintain names, addresses, phone numbers or lists of persons who have similar sexual interests. These may have been collected by personal contact or through advertisements in various publications. These contacts are maintained as a means of personal referral, exchange and commercial profit. These people often correspond with others with the same interests through the use of computerized bulletin boards and the Internet. The names may be maintained in the original publication, in phone or notebooks or in computer hard or software, or merely on scraps of paper. Vast quantities of child pornography may also be stored on electronic media such as computer hard drives, computer diskettes, magnetic or digital tape, and computer CD-ROM disks.

In addition, there was no information exchanged with the Victim that would further identify who the suspect is. Based on the above facts it could be either Suspect Cook or Suspect Blanco, who both have access to the Comcast IP Address.

Lastly I am requesting the **authority to search all contents of the seized electronic devices regardless of dates.** Child pornography / Child Sexual Exploitation is rarely something a person engages in suddenly or for only one day, and then never does it again. This is an ongoing obsession that manifests itself for years. Suspects tend to start viewing images of provocatively dressed children and progress to nude children and then children engaged in sexual acts. This often leads to the physical sexual contact of a child. Law Enforcement is able to recover data on devices that has been deleted, sometimes years ago. Additionally, the collection /distribution of child pornography is something people partake in over a period of years. Suspects who engage in this behavior generally do not stop unless they are caught. A suspect who has engaged in the distribution of child pornography will continue to do so for years making it reasonable to believe the suspect is in possession of child pornography. The suspect has used the internet to contact a 6 year old girl to produce child pornography. Due to this fact I am requesting to search all data on the computer for evidence of the possession of child pornography.

*Based on the above facts I believe the items listed in Attachment A will contain evidence of the ongoing sexual exploitation of children, and provide evidence in regards to the sexual exploitation of CV.*

Based on the above information, there is probable cause to believe that PC 311.4(a) – use of a minor in child pornography (Felony) and PC 311.11(a) – possession of child pornography (Felony) have been violated, and that the evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located at locations described in Attachment A. Your Affiant requests authority to seize such material related to violations of the aforementioned statutes.

1
2
3   Items attached and incorporated by Reference:   YES ☐   NO ☒
4
5
6   I certify (declare) under oath that the foregoing is true and correct to the best of my
7   knowledge.
8
9
10
11   Executed at _____**Fresno**_____, California
12
13
14   __/s/ David Wilkin #129/____, 2ⁿᵈ day of May, 2017.
15   (Signature of Affiant)
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

EXHIBIT C

# *In the Name of the People of the State of New York*

TO:    Musically
1920 Olympic Blvd.
Santa Monica, CA 90404
legal@musical.ly

      **YOU ARE COMMANDED to appear before the** GRAND JURY OF THE COUNTY OF NASSAU, at the Nassau County Courthouse, 262 Old Country Road, Mineola, New York, at 9:30 a.m., on **4/11/17,** as a witness in a criminal action prosecuted by the PEOPLE OF THE STATE OF NEW YORK against John Doe, Case Number 217CR0016635, and you are required to bring with you and/or produce at the time and place aforesaid, the following:

All subscriber information pertaining to the Musical.ly accounts assigned to the user names listed below; said information shall include, but not be limited to: subscriber's name; subscriber's geographical addresses; subscriber's billing address; multi-family residence; subscribers' e-mail addresses; subscribers' daytime and evening telephone numbers; subscriber's registration information; subscriber's log in information, IP activity, including log ins and log outs, for:



**@Summerme001**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IF THIS SUBPOENA IS DISOBEYED

You may be prosecuted for the crime of CRIMINAL CONTEMPT IN THE SECOND DEGREE and, if found guilty, you will be subject to IMPRISONMENT FOR UP TO ONE YEAR AND A FINE OF UP TO ONE THOUSAND DOLLARS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOTE: If this case should not be called on the day mentioned in this subpoena, YOU ARE DIRECTED to attend from day to day until you are discharged.

**Dated:** 4/4/17, Mineola, New York

**ADA:** Emma Slane

**Bureau:** Special Victims Bureau
**Phone:** (516) 571-3262
**Fax:** (516) 571-1119

*Madeline Singas*

**MADELINE SINGAS**
*District Attorney of Nassau County*

---

☐    You may surrender requested items to a representative of the District Attorney, who will pick them up when ready, or you may produce them at the Grand Jury.

☒    In lieu of personal appearance, you may mail requested items to:
        Nassau County Grand Jury, c/o Nassau County District Attorney's Office
        262 Old Country Road, Mineola, NY 11501
        ATTN: ADA Emma Slane        Email: Emma.Slane@NassauDA.org

Please take notice that retention of requested items will be sought pursuant to CPL § 610.25.
**YOU ARE REQUESTED not to disclose the existence of this subpoena. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law.**

EXHIBIT D

**Subscriber information:**
Username: summerme001
Email: smog1234555hejsj@gmail.com
Sign up date (GMT+8): 3/22/2017, 5:40:23 AM
Sign up IP: 75.150.2.233
Sign up device: samsung SM-G930T

## IP details (GMT+0):

Period 1
Number of log(s): 2
time: 20170404 05:36:52 ~ 20170404 05:37:53
IP address:
75.150.2.233(United States)
73.192.178.95(United States)

Period 2
Number of log(s): 1
time: 20170402 22:35:47 ~ 20170402 22:37:07
IP address:
73.192.178.95(United States)

Period 3
Number of log(s): 1
time: 20170402 02:13:03 ~ 20170402 02:19:44
IP address:
73.192.178.95(United States)

Period 4
Number of log(s): 3
time: 20170401 02:27:01 ~ 20170401 02:34:27
IP address:
75.150.2.233(United States)
73.192.178.95(United States)
172.58.24.166(United States)

Period 5
Number of log(s): 3
time: 20170330 22:40:15 ~ 20170330 22:40:30
IP address:
172.56.41.218(United States)
75.150.2.233(United States)
73.192.178.95(United States)

EXHIBIT E



# Nassau County

**EDWARD P. MANGANO**
COUNTY EXECUTIVE

**1490 Franklin Avenue**
**Mineola, New York 11501**
**(516) 573-8800**

# Police Department

**THOMAS C. KRUMPTER**
ACTING COMMISSIONER

### Detective Information for
### Outside Agency Assistance

April 3, 2017- Complainants ▉▉▉▉▉▉▉▉▉▉▉▉ (parents of victim) were present at Special Victims Squad. They advised Detective Adam Constantino that their 6 year old daughter, ▉▉▉ DOB ▉▉▉▉ was using the App Musically on their iPad. She was registered under the user name of ▉▉▉▉, email-▉▉▉▉▉▉ She was contacted by a user named @summerme001 email-smog1234555hejsj@gmail.com. The subject "summer" met the victim while viewing videos created and broadcast on Musically by the 6 year old child. The child victim was contacted through messaging within the Musically App. There, the victim discussed having sex with the subject and the subject asked the victim to send images of the child's buttocks and vagina and also directed the child as to which types of images to create. On Tuesday March 28, 2017 at approximately 5:20pm subject "SUMMER" asked the victim her age and the response was from the victim "7".
An examination of the ipad, identified by serial number ▉▉▉▉▉▉▉▉, was done utilizing Cellebrite's Physical Analyzer program. The images that were sent to the subject were identified and determined to be pornographic in nature as well at the context of the conversation between the victim and the subject. The subject directs the child with wording such as-
"have you ever H U M P E D a pillow or anything"
"show between your legs"
In regards to a nude buttocks picture "spread it open too"
"spread open the private"
"take your hand and spread it open with fingers"
On April 4, 2017 a video recording of the entire chat that was recovered, was created from the iPad and added to the case files.

April 4, 2017 A subpoena was sent to Musically through ADA E. Slane for subscriber information

April 5, 2017 Musically responded with subscriber information for "2summerme001" which has an IP address of 75.150.2.223. An internet search of the IP address identifies it as belonging to Comcast and based in Fresno, California.4/11/2017 Assistance in Fresno,C

U.S. v. BLANCO; 000279

A was requested.  Case files pertinent to the furtherance of this case was supplied to
Detective David Wilkin, via department e-mail
▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪
The above is a brief synopsis of the investigation for case 217CR0016635, Nassau County
Police Department, Special Victims Squad, Child Exploitation Unit.  It is not a word for
word case summary and is for investigative assistance by Det. Wilkin or his designee.
Det. A. Constantino #1333 Serial# 8289

U.S. v. BLANCO;  000280

EXHIBIT F

W17002959

FILED
FRESNO COUNTY
SUPERIOR COURT

2017 MAY 24  PM 2:30

**SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**
1100 Van Ness Avenue
Fresno, California 93724-0002

| AGENCY CASE NUMBER:<br>17-28265 | **SEARCH WARRANT** | WARRANT NUMBER: |
|---|---|---|

The PEOPLE OF THE STATE OF CALIFORNIA to any peace officer in Fresno County.

The affidavit below, sworn and subscribed before me, has established probable cause for this search warrant which you are ordered to execute as follows:

    **Place(s) to be searched:** Described in Attachment A, attached hereto and incorporated by reference.

    **Property to be searched:** Described in Attachment B, attached hereto and incorporated by reference.

    **Night service:** [If initialed by Judge] For good cause shown, as set forth in the Statement of Probable

    Cause, night service is authorized: _____

**Disposition of Property:** All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further order of the court, pursuant to Penal Code §§ 1528(a) & 1536.

    ☒ -The oath was administered orally over the telephone by the magistrate to the affiant.

| **5/5/2017 9:40:19 AM** | _Jonathan Skla_ |
|---|---|
| Date and time warrant issued | Judge of the Superior Court |

---

**AFFIDAVIT**

**Incorporation:** The facts in support of this warrant are contained in the Statement of Probable Cause which is incorporated by reference. Also, incorporated by reference and attached hereto are Attachment A, describing the place(s) to be searched; and Exhibit B, describing the evidence to be seized.

**Evidence Type:** (Penal Code § 1524)

    ☐ Stolen or embezzled property.

    ☑ Property or things to be used as a means of committing a felony.

    ☐ Property or things in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing it from being discovered.

    ☑ Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person has committed a felony.

    ☑ Property or things that are evidence that tends to show that sexual exploitation of a child, in violation of Penal Code §311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code §311.11 has occurred or is occurring.

    ☐ Other: _____

    ☐ Night Service: [If checked] Authorization for night service is requested based on information in the Statement of Probate Cause, filed herewith.

**Declaration:** I declare under penalty of perjury that the information within my personal knowledge contained in this affidavit, including all incorporated documents, is true.

| 05/05/2017 | /S/ David Wilkin #1297 |
|---|---|
| Date | Affiant |

| FCR-26  E12-13 | **SEARCH WARRANT** | Warrant ID: 000006515 |
|---|---|---|

**U.S. v. BLANCO  1:17CR140 LJO**
**000383**

**ATTACHMENT "A"**

TO MAKE SEARCH OF THE FOLLOWING:

1. **THE PREMISES known as 2217 Mary St, Sanger CA** is described as a single family residence located within the city limits of Sanger, Ca. (County of Fresno). The residence is located on the south side of Mary St, five residences west of Cottle Av. The residence exterior is yellow stucco with red brick on the lower portion of the residence. The front door is brown in color and faces north, on the north wall of the residence. The roof consists of brown wood shingle. There is no garage, but there is an attached carport on the east side of the residence. The numbers "2217" are affixed to the left (east) of the front door in a brown sign with crème colored numbers. The numbers "2217" are also painted on the curb in front of the residence in approx. 5 inch tall black numbers on a white background.

2. **The Vehicle** belonging to Suspect Steele Knight Valor Cook described as follows:

    California License Plate ▮▮▮▮▮▮
    1999 Ford Mustang (Blue in Color)
    VIN: ▮▮▮▮▮▮▮▮▮

3. The detention and search of the person of **Steele Knight Valor Cook** as identified by California Department of Motor Vehicles (DMV) Driver's License ▮▮▮▮▮▮, Date of Birth (DOB) ▮▮▮▮▮

**U.S. v. BLANCO  1:17CR140 LJO
000384**

ATTACHMENT "B"

FOR THE FOLLOWING PROPERTY:

1. I am requesting the authority to search the body of **Steele Knight Valor Cook**, in order to obtain any and all electronic devices in his custody and control, capable of containing evidence of child sexual exploitation. I also request the authority to compel a fingerprint from **Steele Knight Valor Cook** if it becomes necessary to access any electronic device under his custody or control which is locked via a fingerprint scanner. I will use the least amount of reasonable force necessary to collect the described evidence

2. Indicia in the name of "**Steele Knight Valor Cook**" that will tend to show the domination and control of **2217 Mary St, Sanger CA.**

3. Articles of personal property tending to establish the identity of persons in control of the premises, vehicles, storage areas, consisting of in part utility company receipts, rent receipts, cancelled mail envelopes, vehicles registration, address mail, personal identification, purchase or sales receipts, photographs, usage or transactions or which connect occupants to the residence and or transactions, and keys which are found on the premises or the person of occupants which tend to connect the occupants with the residence or vehicles.

*I am requesting to search the above location for any items listed below reasonably believed to belong to Suspect Steele Cook:*

4. Images, pictures, magazines, correspondence, videos, VHS tape, and 8mm tape or other media depicting sexual conduct, as described in PC 311.3(b), by persons under 18 years of age or appearing to be under 18 years of age whether found in actual physical form or stored digitally on computer media.

5. Photographic or video equipment that could be used to create images described under item 1.

6. Images, photos, videos, magazines, diaries, records, and correspondence which shows an interest in sexual activity with persons under the age of 18 or appearing to be under the age of 18.

7. Any diaries or journals relating to sexual encounters with persons under or appearing to under 18 years of age.

**U.S. v. BLANCO  1:17CR140 LJO**
**000385**

8. Sexual aids, behavioral grooming aids, or items of property that could be used to assist in the completion of or the development of a willingness to engage in sexual acts by minors.

9. Any name and address ledgers that could include names, addresses, phone numbers, email addresses, or lists of persons with similar sexual interests.

10. Any computer system components such as hardware, input/output peripheral and auxiliary devices, related software, storage media, documentation, and data security devices and records, documents, and materials that may contain any of the items listed above in electronic form. (See below for a complete description and explanation).

11. Digital communications devices allowing access to the Internet or to cellular digital networks to include cellular telephones, email devices, and personal digital assistants (not referenced above).

12. Items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.

13. Contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence.

14. Computer software, hardware or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.

In reference to the above electronic devices I am requesting the authority to search for the following:

### A. Digital Communications:

Any and all emails, SMS, MMS threads / communications located on the above listed devices and within various programs installed on the devices containing evidence of child sexual exploitation.  I further request the authority to access the content of any accounts linked to the above referenced devices by interfacing with the linked device.

### B. Photographs / Videos:

Any and all photographs / videos depicting child sexual exploitation.

U.S. v. BLANCO  1:17CR140 LJO
000386

**C. Internet Activity:**

Internet Activity includes but is not limited to browsing history, search terms, URL's visited, and cookies pertaining to child sexual exploitation.

**D. Location Data:**

GPS, Location History, IP and MAC Address History, and all EXIF information (metadata) attached to the media files which would tend to show the location of where the files pertaining to child pornography may have been created to assist in identifying victims and suspects in child sexual exploitation.

**E. Software Data:**

Any and all data pertaining to or retained in installed software on the above device that tends to show evidence of the possession of child pornography or the user of specified applications as well as victims or co-conspirators in child sexual exploitation.

Computer/Equipment software (digital information) can be interpreted by electronic storage device equipment, computers and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical or other digital form. It commonly includes programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs) utilities, compilers, interpreters and communication programs.

**F. Contact Lists:**

Any and all contacts located on the phone or installed applications within the phone which show a relationship to the suspect which are related to the crime of child sexual exploitation.

**G. Metadata:**

Any and all data within data linked to the digital files contained on the above referenced electronic devices which are related to the crime of child sexual exploitation.

*I am requesting the authority to search all content of the electronic devices regardless of date.*

1   The hardware consists of all equipment that can collect, analyze, create, display, convert, store,
2   conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware
3   includes (but not limited to) any data-processing devices (such as central processing units, memory
4   typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage
5   devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and
6   tapes, optical storage devices, and other memory storage devices); peripheral input/output devices
7   (such as keyboards, printers, scanner, plotters, video display monitors, and optical reader); and
8   related communication devices (such as modems, cables and connections, and recording
9   equipment); as well as any devices, mechanisms, or parts that can be used to restrict access to
10  computer hardware (such as physical keys and locks.)

11  Computer software is digital information that can be interpreted by a computer and any of its
12  related components to direct the way they work. Software is stored in electronic, magnetic, optical,
13  or other digital form. It commonly includes programs to run operating systems, applications (like
14  word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and
15  communication programs.

16  The terms "records," "documents," and "materials" include all of the foregoing items of evidence
17  in whatever form or by whatever means such records, documents, or materials, their drafts, or their
18  modifications may have been created or stored, including (but not limited to) any handmade form
19  (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any
20  photographic form (prints, slides, negatives, videotapes, photocopies); any electrical, electronic, or
21  magnetic form (such as tape recordings, cassettes, compact discs, or any information on an
22  electronic or magnetic storage device, such as floppy diskettes, hard disks, backup tapes, CD-
23  ROMs, optical discs, smart cards, or electronic notebooks, as well as printouts or readouts from any
24  magnetic storage device).

25  The searching authority may use several different techniques to search electronic data for
26  evidence or instrumentality's of crime. These include, but are not limited to the following: examining
27  file directories and subdirectories for the lists of files they contain; "opening" or reading the pages of
28  selected files to determine their contents; scanning for deleted or hidden data; searching for key
29  word phrases ("string searches").

30  Based upon Your Affiant's knowledge, training and experience, Your Affiant knows that
31  searching and seizing information from computers often requires officers to seize most or all
32  electronic storage devices (along with related peripherals and auxiliary items) to be searched in a
33  controlled environment. This is because of the following:

34

35  1.  The volume of evidence. Computer storage devices (like hard disks, diskettes, tapes, and
36      laser disks) can store the equivalent of thousands of pages of information. Additionally, a
37      suspect may try to conceal criminal evidence; he or she might store it in random order
38      with deceptive file names. This may require searching authorities to examine all the
39      stored data to determine which particular files are evidence or instrumentalities of crime.
40      This sorting process can take weeks or months, depending on the volume of data stored,
41      and it would be impractical to attempt this kind of data search on site.
42  2.  Technical requirements. Searching computer systems for criminal evidence is a technical
43      process requiring a properly controlled environment. The environment helps protect the

1   integrity of the evidence and assists to recover even "hidden," erased, compressed,
2   password-protected, or encrypted files.  Since computer evidence is extremely vulnerable
3   to inadvertent or intentional modification or destruction (both from external sources or
4   from destructive code imbedded in the system as a "booby trap"), a controlled
5   environment is essential to complete an accurate analysis.
6
7   <u>Computer system reconstruction</u>.  The peripheral devices which allow users to enter or retrieve data
8   from the storage devices vary widely in their compatibility with other hardware and software.  Many
9   system storage devices require particular input/output (or "I/O") devices in order to read the data on
10  the system.  It is important that the searching authorities be able to properly re-configure the system
11  as it now operates in order to accurately retrieve the evidence listed above.  In addition, the
12  searching authorities needs the relevant system software (operating systems, interfaces, and
13  hardware drivers) and any applications software which may have been used to create the data
14  (whether stored on hard drives or on external media), as well as all related instruction manuals or
15  other documentation and data security devices.
16       It Your Affiant's experience that hard drive examinations and searches cannot be completed
17  within the ten days in which the Search Warrant must be served and the Search Warrant Return
18  filed.  It is requested that the 10-day requirement be waived to 60 days in order to provide Your
19  Affiant ample time to process and comply with the Search Warrant in a timely manner.  The Search
20  Warrant Return will be filed promptly upon completion of the computer system examination and
21  search.
22
23
24
25  **California Electronic Communications Privacy Act Requirements (CA PC 1546.1(d)):**
26
27       1. Pursuant to Penal Code Section 1546.1(d)(2), any information obtained through the
28          execution of this search warrant that is unrelated to the objective of this warrant will be
29          retained in this affiant's custody (Fresno Police Department secured evidence) and not
30          subject to further review, use, or disclosure without a court order.
31
32       2. Upon service of this search warrant this affiant will serve upon, or deliver to by registered
33          or first class mail, electronic mail, or other means reasonable calculated to be effective,
34          the identified targets of the warrant or emergency request, an Electronic Communications
35          Protection Act Warrant Notice, including a copy of the Search Warrant.
36
37
38
39
40
41
42
43
44
45

**U.S. v. BLANCO   1:17CR140 LJO**
**000389**

IN THE SUPERIOR COURT OF THE FRESNO JUDICIAL DISTRICT

COUNTY OF FRESNO, STATE OF CALIFORNIA

STATE OF CALIFORNIA      }
                                }
COUNTY OF FRESNO       }   ss   AFFIDAVIT
                                }

I ,Officer David Wilkin #1297, am a duly qualified peace officer employed by the City of Fresno, Police Department and have been so employed for over 12 years. During that time I have been assigned to the Southeast, Northeast, Northwest, and Southwest Patrol Districts. I served on the Northwest and Southwest District Crime Suppression Team's for approx. 3 years. I am currently assigned to the Sexual Assault Unit and the Central California Internet Crimes Against Children Task Force (ICAC) as a Detective, and have been duly assigned for approx. 3 years. I am responsible for investigating Internet crimes including, child pornography, child exploitation, and other crimes where technology has been utilized. Previous to this, I was employed by the Fresno County Sheriff's Department as a Reserve Deputy for approx. two years. I attended and graduated from the POST certified Fresno City College Police Academy in 2004 which consisted in over 900 hours of training. I have a Bachelors of Science Degree in Criminology from California State University, Fresno.

Since being a sworn law enforcement officer, I have completed no less than 300 hours of training related to sexual assault of children. I have successfully completed training through San Diego Regional Training Center in Patrol Response to Sexual Assault, "Robert Presley's ICI Core Course" as well as "Robert Presley's ICI Sexual Assault Course", Internet Crimes Against Children training, response to Human Trafficking training, and Behavior Analysis Investigative Interview and Interrogation Techniques (BATI). Your Affiant has also received training from subject-matter experts in the investigation of child sexual exploitation and specifically the use of the Internet for this purpose. I have received training from Guidance Technologies (EnCase / Tableau) regarding computer forensics, Internet Forensics, and advanced computer forensics. I have personally examined photography, computer images, and videos depicting children involved in illegal sexual activities with themselves and adults. I have also has been trained to recognize the physical characteristics of prepubescent and pubescent children. I have been involved in numerous law enforcement search warrants involving sexual assaults and Internet crimes against children.

I have spoken with other peace officers and investigators with other law enforcement agencies who are knowledgeable regarding the methods and means used by individuals who buy, sell, trade, send, and/or receive child pornography via the internet and have related their personal knowledge and provided me with insights as to the manner evidence of these crimes are kept. I have personally been involved in no less than 250 sexual assault investigations as both a primary and assisting investigator. During many of these interviews, the sexual offenders discussed or confessed to their sexual interest in children and the manner in which they seek out, locate, and molest their victims. I have written no fewer than 150 search warrants and have participated in the execution of no fewer than 150 search warrants.

1   Having been first duly sworn, I do hereby depose and say that I am conducting a criminal
2   investigation in which I have probable cause to believe the act(s) defined in the following California
3   Penal Code Section was/were committed; **PC 311.4(c) and PC 311.11(a).**
4
5   The description of the person(s) and/or place(s) to be searched, as noted within the attachments,
6   were obtained from witnesses, reporting parties, law enforcement agencies, public records, and/or
7   from the original reporting officer's observations.
8
9   The following paragraphs document my and my fellow officers' investigation of this matter and
10  establish probable cause for the issuance of this search warrant.
11
12
13  **STATEMENT OF PROBABLE CAUSE:**
14
15          On 04-11-2017, while assigned to the Central California Internet Crimes Against Children Task
16  Force, I was contacted by Detective A. Constantino with the Nassau County Police Departments
17  Special Victims Unit (New York).  He was requesting assistance with an investigation which began in
18  Nassau County, New York.  He relayed the following to me:
19
20          On April 3rd, 2017 the parents of Confidential Victim (6yo female), ███████████
21  filed a report with Detective Constantino.  They relayed to him that Victim was using the App
22  Musically on their iPad. She was registered under the user name of ███████ email-
23  ███████.  Victim was contacted by a user named @summerme001 (email-
24  smoq1234555hejsi@gmail.com). The subject @summerme001 met the victim online while viewing
25  videos created and broadcast on Musical.ly by Victim. The victim and suspect discussed having sex
26  and asked victim to send images of her buttocks and vagina. Additionally, the suspect instructed
27  Victim on how to pose and how to manipulate her vagina in the photographs.
28
29          An examination of the iPad, identified by serial number ██████████, was done utilizing
30  Cellebrite's Physical Analyzer program by Detective Constantino. He located messages between
31  the suspect and Victim.  On Tuesday March 28, 2017 at approximately 1720 hours (EST) subject
32  @summerme001 asked the victim her age. She told him she was "█". He also asked her questions
33  such as "have you ever H U M P E D a pillow or anything", and "show between your legs".  The
34  subject states to the child **"take your hand and spread it open with fingers"**.  With this direction,
35  Victim took a photo, while wearing a pink shirt and nothing else.  The child's legs are spread open
36  and the child is using her left hand, and utilizing her middle and ring fingers, slightly spreads open
37  her vagina.  The Victim sent this image to @summerme001.
38
39          The suspect also asked victim to send pictures of her butt, which she did. The picture sent is a
40  close-up of the child's anus and vagina. The subject responded with **"so so hot can you spread
41  with your hands too"**. Another picture was sent of the child's anus and vagina, exposed more
42  clearly. The subject responded **"Ur so hot, I'm waiting for the next pic"**. After sending several
43  pictures to the suspect, the suspect returned a photo of what appears to be a nude prepubescent
44  female child. The image is from the child's neck to her knees. There is no breast development or
45  pubic hair. On March 29, 2017 the child victim sent a picture of herself with her vagina and anus
46  clearly exposed and a dog nose with its tongue exposed near her anus.  A conversation between

1  the victim and the subject continues with the subject stating **"so hot, does ur dog like to lick it" "let**
2  **him lick it more" "does it feel good" "show me a pic of him doing it"**
3
4         On April 4th, 2017 Detective Constantino authored a subpoena to Musical.ly for subscriber
5  information.  On April 5th, 2017 Musical.ly responded with subscriber information for
6  "@summerme001" which has an IP address of 75.150.2.223. An internet search of the IP address
7  identified it as belonging to Comcast Cable Communications and based in Fresno, California.
8
9         On 4/11/2017 Detective Constantino contacted me for assistance.  On 04/112/2017 he
10  provided me with the above details and the subpoena results from Musical.ly.  I reviewed the results
11  and found the following information regarding the subscriber to "@summerme001":
12
13       **Subscriber information:**
14       Username:          summerme001
15       Email:              smog1234555hejsj@gmail.com
16       Sign up date (GMT+8):   3/22/2017, 5:40:23 AM
17       Sign up IP:         75.150.2.233
18       Sign up device:     samsung SM-G930T
19
20         I also found an additional IP address used by the suspect while accessing Musical.ly.  One
21  was 73.192.178.95.  Additional T-Mobile based IP addresses were also used.  Both were registered to
22  Comcast Cable Communications.  On 04-19-2017 Fresno County Sheriff's Detective S. Schwamb
23  authored a search warrant for the subscriber information pertaining to the Comcast Cable
24  Communications IP Address 75.150.2.223 and 73.192.178.95.  He submitted it to Comcast Cable
25  Communications on 04-20-2017.  On 04-21-2017 Comcast responded stating the IP Address
26  73.192.178.95 belonged to STEELE COOK with a social security number ending in "████" and a
27  phone number of ████████.  The service address was 369 W Lexington #204, Fresno CA.  An
28  additional email address of "Jacob_blanco@comcast.net was also used for the account.  The
29  second IP Address did not return any records.
30
31         I entered the phone number into Facebook and found the profile for Steele Cook at the URL
32  https://www.facebook.com/steele.cook.  I then ran Steel Cook in Fresno PD records and found a
33  match for Steel Cook with a birthday of 10-15-1995 with the same phone number.  Jacob Blanco
34  (DOB ████████ was an associate of Suspect Cook.  They appeared to be foster kids living in the
35  same residence in 2011.  Using this information I ran Suspect Steele in California Department of
36  Motor Vehicles and found a matching photograph under ID #████████.  I also checked the Fresno
37  PD calls for service at the Lexington address and found a "Phil Cook" using the same phone number
38  had called the police from that address regarding a disturbance with his brother, Hunter Cook.
39  "Steele" and "Phil" sound similar over a phone with a disturbance going on in the background.
40
41         I also checked CA DMV and found a 1999 Ford Mustang (California Plate ████████)
42  registered to Suspect Cook at the Lexington address.  I checked Jacob Blanco ████████ in
43  California DMV and found he had an address of 2420 E Webster #102, Fresno CA listed on his drivers
44  license (# ████████).
45

**U.S. v. BLANCO  1:17CR140 LJO**
**000392**

1    On 05-02-2017 I conducted surveillance at 369 W Lexington. I located a white Honda Civic;
2    California License 5RBX949, parked in a covered stall directly in front of the building apartment 204 is
3    in. It was registered to "Jacob E. Blanco" at 2420 E Webster #102. I also contacted the apartment
4    manager who confirmed Suspect Cook and Suspect Blanco both are on the lease at 369 W
5    Lexington #204.
6
7    I located Fresno County Sheriff's Dept. case 15-9259. This case was taken on 06-24-2015.
8    Suspect Cook was implicated in the sexual molestation of a 10 year old boy whom he was a foster
9    child with. Suspect Steele was approx. 16 years of age and the victim stated he penetrated
10   Suspect Cook's anus with his penis and orally copulated the 10 year old. The case has not been
11   investigated as of this date to my knowledge.
12
13   On 05-02-2017 I authored a search warrant for 369 W Lexington #204, Fresno as well as
14   Suspect Cook and Blanco. I, along with assisting investigators, responded to 369 W Lexington where
15   we contacted the manager. The manager contacted Suspect Cook via telephone. Suspect Cook
16   advised he was out of town and would come in to take care of some paperwork on 05-03-2017 at
17   noon. On 05-03-2017 investigators arrived at the apartments. At approx.. 1400 hours Suspect Cook
18   had still not arrived and would not answer the phone calls from the apartment manager. The
19   apartment manager contacted Suspect Blanco who advised her Suspect Cook moved out a
20   month ago and Suspect Cook's brother, Hunter Cook, was moving in.
21
22   At this time I began checking Suspect Cook's Facebook for additional information as to his
23   whereabouts. I located a female named Samantha Blaison whom the apartment manager had
24   previously identified as Suspect Cook's girlfriend. She had a picture of herself standing next to a
25   white PT Cruzer with an Oregon License Plate of "███████". Using a license plate reader database
26   called "Vigilant" we identified the license plate as "███████". The plate was seen earlier in April 2017
27   at a residence in Clovis CA. ████████████████████████████████████████████████████
28   ████████████████████████████████████████████████████████████████advised us
29   that Samantha Blaision was well known to them and was dating both Suspect Cook and his brother
30   Hunter Cook and this led to a fallout between the two. Suspect Cook moved out of his apartment
31   in early April. █████████████advised Suspect Cook was living in Sanger with the a man named
32   Ray. The INFORMANT further described "Ray" as the son of the owner of the business which Suspect
33   Cook worked for.
34
35   On 04-27-2017 I had requested employment history from the Employment Development
36   Department. The department indicated Suspect Cook was employed at "Production Services LLC"
37   with a PO Box in Del Rey, CA. On 05-04-2014 I researched friends of Suspect Cook on Facebook
38   with the name "Ray". (Suspect Cook's Facebook account is partially open to public view). I
39   located a "Ray Farnsworth" in Del Rey, CA and Sanger, CA. I then used Google to research the
40   name "Farnsworth, Del Rey" and found The Farnsworth's owned "Production Services LLC" at 5210 S
41   Portola Av. I searched Accurint (public information database) for Ray Farnsworth and found a
42   Raymond Farnsworth ███████residing at 2217 Mary St, Fresno Ca. At approx. 1400 hours I drove
43   by the residence and located a blue Ford Mustang parked in front of the address. The license plate
44   was ████████. This was in fact Suspect Cook's vehicle. I then drove by Production Services LLC and
45   saw a brown lifted Chevrolet Truck parked in the parking lot. It had a CA license plate of #█████████
46   At approx. 1631 hours Investigators responded back to the residence and located the same brown

**U.S. v. BLANCO  1:17CR140 LJO**
**000393**

1   lifted Chevrolet Truck with the California License ███████ parked in the driveway. The license
2   plate was registered to Raymond Farnsworth at the Mary St. address. Investigators also noticed the
3   Ford Mustang was gone but it returned to the residence after approx. 20 minutes. Investigators
4   went to the residence again on 05-05-2017 at 0550 hours and found the Ford Mustang still parked in
5   front of the residence. Based on this evidence Suspect Cook is residing at 2217 Mary St, Sanger CA.
6
7   On 05-05-2017 at approx. 0550 hours I conducted surveillance on 2217 Mary St. I noted Suspect
8   Cook's Ford Mustang was still parked outside as well as Raymond Farnsworth's truck. At approx.
9   0630 hours a male and female exited the residence. The male and female appeared to be
10  Raymond Farnsworth and Julia Farnsworth (Ray's sister) as depicted on there Facebook accounts.
11  We followed them to 5210 S Portola Av (Production Services LLC) where Raymond opened the gate
12  with a key. They then went inside the business. I then responded back to 2217 Mary St where I saw
13  Suspect Cook's mustang backing up along the curb from the front of the residence. I passed him
14  and saw Suspect Cook seated in the driver's seat. I confirmed it was in fact Suspect Cook as
15  depicted in his California Driver's License ███████ and his Facebook profile. I followed him to
16  5210 S Portola Av (Production Services LLC) where he parked and went inside as well.
17
18        Based on the above facts I have probable cause to believe Suspect Cook or Suspect Blanco
19  is in violation of PC 311.11(a) and PC 311.4(a). A previous warrant (which has not been executed at
20  the time of the authorization of this warrant) authorizes the search of Suspect Blanco and 369 W
21  Lexington #204, Fresno CA. This search warrant is requesting the search of Suspect Cook and his
22  new residence at 2217 Mary St, Sanger CA for any items listed in Attachment B reasonably believed
23  to belong to Suspect Cook.
24
25  <u>**Training and Experience in Child Sexual Exploitation Crimes:**</u>
26
27        Based upon Your Affiant's training, experience, and conversations with other investigators
28  with whom he currently works with and who have participated in child sexual exploitation
29  investigations, Your Affiant knows the following:
30
31        Those who have demonstrated a sexual interest in children also have an interest in collecting
32  child sexual exploitation material erotic chats, child pornography, ect). These individuals are
33  categorized in one of two ways. The first type is where the individuals keep images and records of
34  communications with children concealed, but accessible. The reasons offenders keep these
35  images and chats vary from offender to offender and collections are often maintained for multiple
36  reasons. Child sexual exploitation material may be kept as "trophies" such as actual photographs
37  or images of the suspect's own sexual activity with children. An offender may also keep this
38  material as a means of seducing the child victim by arousing curiosity, attempting to normalize the
39  desired acts, lowering the inhibitions of potential child sexual partners by showing them that other
40  children participate in this kind of sexual activity and demonstrating and explaining what the
41  offender may desire be done. This process is generally referred to as "grooming".
42
43        Child sexual exploitation material is also maintained as a means of sexually arousing the
44  suspect. In other instances, the material is maintained for commercial purposes, used to obtain
45  money or other items of value including more child pornography or sexual contact with a minor.
46  Child sexual exploitation material images tend to be extremely important to these offenders. This

1   material is likely to remain in the possession of or under their control for many years. Because of their
2   importance and the difficulty and risk in obtaining the files, it is unlikely an offender will destroy the
3   material they have collected. Likewise, if the individual has obtained child sexual exploitation
4   material via the Internet they rarely delete the material from their computer before printing or
5   copying to other media. Offenders who collect child sexual exploitation material using the internet
6   often copy these images to removable media included but not limited to floppy disks, compact
7   disks, and USB storage devices. This removable media is concealed in the residence, on their
8   person, or in their vehicle, often commingled with other media. Suspects may also copy these files
9   to additional electronic devices using the internet (email, MMS, communication applications) or
10  Bluetooth.
11
12      The second behavior displayed is one where the individual obtains child sexual exploitation
13  material from its source, obtains sexual gratification from it, and then deletes it. Due to the
14  proliferation of the internet, peer 2 peer programs, and social media, there has been an explosion
15  of available child sexual exploitation material. It is easy for suspects to locate exactly what they are
16  looking for in regards to child sexual exploitation, obtain the files only to delete them in a short
17  amount of time, and then find them again days, months, or even a year later. Despite this increase
18  of suspects deleting their contraband, it is still possible to locate the evidence on the electronic
19  devices memory storage. With the use of forensic tools we are able to search the electronic
20  devices memory and, depending on the device, find files that were deleted years prior.  Suspects
21  can also transfer their files from device to device using the internet, Bluetooth, expandable memory
22  (SD Cards, external hard drives), CD's, DVD's and other similar electronic storage devices.
23
24      Offenders often collect, read, copy or maintain names, addresses, phone numbers or lists of
25  persons who have similar sexual interests. These may have been collected by personal contact or
26  through advertisements in various publications. These contacts are maintained as a means of
27  personal referral, exchange and commercial profit. These people often correspond with others with
28  the same interests through the use of computerized bulletin boards and the Internet. The names
29  may be maintained in the original publication, in phone or notebooks or in computer hard or
30  software, or merely on scraps of paper. Vast quantities of child pornography may also be stored on
31  electronic media such as computer hard drives, computer diskettes, magnetic or digital tape, and
32  computer CD-ROM disks.
33
34      In addition, there was no information exchanged with the Victim that would further identify
35  who the suspect is. Based on the above facts it could be either Suspect Cook or Suspect Blanco,
36  who both have access to the Comcast IP Address.
37
38      Lastly I am requesting the **authority to search all contents of the seized electronic devices**
39  **regardless of dates.** Child pornography / Child Sexual Exploitation is rarely something a person
40  engages in suddenly or for only one day, and then never does it again. This is an ongoing obsession
41  that manifests itself for years. Suspects tend to start viewing images of provocatively dressed
42  children and progress to nude children and then children engaged in sexual acts. This often leads
43  to the physical sexual contact of a child. Law Enforcement is able to recover data on devices that
44  has been deleted, sometimes years ago. Additionally, the collection /distribution of child
45  pornography is something people partake in over a period of years. Suspects who engage in this
46  behavior generally do not stop unless they are caught. A suspect who has engaged in the

1  distribution of child pornography will continue to do so for years making it reasonable to believe the
2  suspect is in possession of child pornography. The suspect has used the internet to contact a 6 year
3  old girl to produce child pornography. Due to this fact I am requesting to search all data on the
4  computer for evidence of the possession of child pornography.
5
6  *Based on the above facts I believe the items listed in Attachment A will contain evidence of*
7  *the ongoing sexual exploitation of children, and provide evidence in regards to the sexual*
8  *exploitation of CV.*
9
10  Based on the above information, there is probable cause to believe that PC 311.4(a) – use of
11  a minor in child pornography (Felony) and PC 311.11(a) – possession of child pornography (Felony)
12  have been violated, and that the evidence, fruits and instrumentalities of these offenses, more fully
13  described in Attachment B of this Affidavit, are located at locations described in Attachment
14  A. Your Affiant requests authority to seize such material related to violations of the aforementioned
15  statutes.
16
17
18  Items attached and incorporated by Reference:     YES  ☐     NO  ☒  .
19
20
21  I certify (declare) under oath that the foregoing is true and correct to the best of my
22  knowledge.
23
24
25
26  Executed at _____**Fresno**_____, California
27
28
29  ___**/s/ David Wilkin #1297**___, 5th day of May, 2017.
30  (Signature of Affiant)
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49

<u>Certificate of Service</u>

I hereby declare that I am the defendant in this action and that on this date, I served a copy of:  MOTION TO SUPPRESS

REQUEST FOR EVIDENTIARY HEARING

On the persons listed below, by handing said document, in a sealed envelope with postage prepaid, to a jail official for mailing.

Names and addresses of persons served:

DAVID L. GAPPA
UNITED STATES ATTORNEY'S OFFICE
2500 TULARE STREET, SUITE 4401
FRESNO, CA, 93721

CLERK OF THE COURT
EASTERN DISTRICT OF CALIFORNIA
2500 TULARE STREET
FRESNO, CA, 93721

Executed this 24TH day of JANUARY ,2019 under penalty of perjury in Fresno, California.

Declarant