McGREGOR W. SCOTT
United States Attorney
DAVID L. GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone:  (559) 497-4000
Facsimile:  (559) 497-4099


NADIA C. PRINZ
Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1400 New York Avenue NW, Suite 600
Washington, DC 20005
Telephone: (202) 514-3740
Facsimile: (202) 514-1793

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>JACOB ERIC BLANCO,<br><br>                              Defendant. | CASE NO.  1:17-CR-00140 LJO-SKO<br><br>GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br>COURT: Hon. Lawrence J. O'Neill |

I.      **INTRODUCTION**

The defendant filed on January 30, 2019, a motion to suppress evidence that was seized during

the execution two different search warrants that were obtained and executed by investigators assigned to

the Central California Internet Crimes Against Children (ICAC) task force based in Fresno, California.

The defendant has requested a hearing to develop facts related to his motion, and he has requested that

the court order that property seized under authority of the warrants be returned.  ECF 45.  The court has

permitted the government to file this response.  ECF 46.  Because the search warrants were valid, the

1

court should deny the defendant's motion to suppress evidence and to return property that was seized when the warrants were executed.  The court can and should do this without holding an evidentiary hearing.

## II.       FACTUAL BACKGROUND

On April 3, 2017, Detective Adam Constantino of the Nassau County (New York) Police Department Special Victims Unit met with the two parents of Minor Victim 1 (MV1).  The parents reported that MV1, who was six years old at the time, had been using the Musical.ly app[1] on their iPad when she had been contacted by a Musical.ly user with the username "@summerme001." They reported that @summerme001 asked MV1 to send images of her buttocks and vagina. Additionally, the user @summerme001 instructed MV1 how to pose and how to manipulate her vagina in the photographs. Detective Constantino conducted a forensic exam of the iPad used by MV1.  Detective Constantino was able to extract and view the messages and images exchanged by MV1 and @summerme001. This message exchange occurred over the course of several days, from March 27, 2017, to March 31, 2017. In these chats, @summerme001 asked MV1 how old she was, and MV1 answered that she was "7" years old.  The chat extractions confirmed that @summerme001 had requested and received sexually explicit images from MV1.

On April 4, 2017, Detective Constantino submitted a subpoena to Musical.ly that requested subscriber information for the @summerme001 account.  On April 5th, 2017, Musical.ly responded with subscriber information for@summerme001." Musical.ly stated that someone established the account while using the internet protocol (IP) address 75.150.2.233 on March 22, 2017.  ECF 45 at 54 of 74. Detective Constantino learned (by doing an internet query) that the IP address 75.150.2.233 was assigned to Comcast Cable Communications and was being used in the Fresno, California area. The subpoena return indicated that an additional IP address (73.192.178.95) as well as two others

---

[1] Musical.ly was an application designed by a company in China in 2014 for use on mobile devices (such as cell phones and iPads) which permitted users to record short videos (up to one minute in length) that are synchronized to music.  By May 2017 there were an estimated 200 milllion users of the app.  A different Chinese company (Bytedance) purchased the app in November 2017 and merged it with a different, but similar app called TikTok.  As of August 2018, the Musical.ly app operates under the name TikTok. See Musical.ly at https://en.wikipedia.org/wiki/Musical.ly (last visited February 3, 2019).

(172.56.41.218 and 172.58.24.166) had been used to log into the Musical.ly account.[2]  Because the IP address ending in .233 resolved to the Fresno area, Detective Constantino contacted the Central California ICAC Task Force and requested assistance with the investigation.

Detective Constantino forwarded the subpoena return results he had received from Musical.ly to the Central California ICAC.  Constantino also wrote and forwarded an investigative referral, which contained a typographical error.  Although he cited the correct IP address (75.150.2.2**3**3) in parts of his report he also mistyped the address as 75.150.2.2**2**3 in other parts.

On April 20, 2017, Detective Schwamb of the Fresno County Sheriff's Office, who was also working with the Central California ICAC, authored and executed a search warrant for the subscriber information for Comcast Cable IP addresses 75.150.2.223 and 73.192.178.95.  In portions of his affidavit, Detective Schwamb also included the correct IP address, 75.150.2.233, as obtained from the Musical.ly subpoena return (which Constantino had forwarded).  Unfortunately, Schwamb carried over the typographical error (which Detective Constantino had made in his written investigative referral) into the Attachment B for his search warrant.

On April 21, 2017, Comcast responded to the Schwamb search warrant with information that IP address 73.192.178.95 belonged to "Steele Cook".  The service address was 369 W Lexington #204, Fresno CA.  An additional email address of "Jacob_blanco@comcast.net" was also associated with the account. The second IP address (which Schwamb mistyped as 75.150.2.223) did not return any records, perhaps because it might not have been an IP address in use at that time, although it had been assigned to Comcast.  ECF 45 at 47 of 74 (lines 22-29).

Based on the return information from Comcast, Fresno Police Department Detective David Wilkin (who had extensive experience in investigating crimes involving the sexual exploitation of minors) along with Fresno Homeland Security Investigations (HSI) Special Agent Timothy Kotman, began an investigation into the Lexington Street residence and determined that Jacob Blanco (the defendant in this case) and Steele Cook had been living at 369 W. Lexington Street, Unit 204, in Fresno California.  ECF 45 at 47 (lines 31-34) to 48 (line 8).

---

[2] These two additional IP addresses were assigned to T-Mobile for use with mobile devices and so were not tied to any particular geographic location.

On May 2, 2017, Detective Wilkin authored a search warrant for 369 W Lexington #204, Fresno, including for the persons of Cook and Blanco. Upon further investigation, Detective Wilkin learned that suspect Cook had moved out of the Lexington residence a month prior and was then currently living at 2217 Mary Street in Sanger, California. Detective Wilkin also learned that Cook was then currently employed at Production Services LLC, in Del Ray, California. Thus, on May 5, 2017, Wilkin authored and executed an additional search warrant for the residence and person of Steele Cook at the Mary Street address.

During the execution of the search warrant on Mary Street in Sanger, Kotman and Wilkin interviewed Steele Cook. Cook vehemently denied any activities involving child exploitation. He also denied knowing what Musical.ly was and consented to an examination of his cellphone, as well as his other electronic devices. Cook also advised that his roommate, Jacob Blanco, was a computer programmer who worked at Pacific Solar. Cook indicated that Blanco spent a lot of time after work in his room playing video games. Investigators examined the contents of Cook's iPhone and found no evidence of child sexual exploitation. Several electronic devices were also seized from Cook's residence, but nothing depicting child pornography was discovered. ECF 45 (Attachment F) at 68-71.

On May 5, 2017, Detective Wilkin and Special Agent Kotman went to Pacific Solar (Valley Pacific Builders does business as Pacific Solar) at 4920 E. Yale Avenue in Fresno and met with defendant Jacob Blanco, who was seated in front of a computer station with a Samsung Galaxy S7 on the desk in front of him. Investigators later learned that Blanco was developing an application (for use with mobile devices) for the company. The law enforcement agents seized Blanco's Samsung phone and asked to speak with him. Blanco agreed to answer their questions, and they advised him of his Miranda rights. In the course of this interview, Blanco confessed to enticing approximately fifty minors to send him nude images and/or videos of themselves via Musical.ly, and/or other social media platforms, using both his phone and his computer. He also admitted he recognized the victim from New York and admitted he had asked her to send him nude photographs. Blanco confessed that @summerme001 was his user name on Musical.ly and that when his account would get shut down he would create another one using a variation of that name. Blanco also stated there was an encrypted folder on his desktop computer in his room. He provided the passcode for this folder. Blanco also admitted that there would

be a large amount of child pornography on his computer.  ECF 1 (Affidavit of SA Tim Kotman).

## III.   THE SEARCH WARRANTS IN THIS CASE WERE VALID.

> A.  The issuing magistrates correctly found that there was probable cause to believe
> evidence of a crime would be located at the locations described in the warrants.

The warrant clause of the Fourth Amendment requires "probable cause, supported by Oath or affirmation" to justify the issuance of a search warrant.  U.S. Constitution, amend. IV.  In Illinois v. Gates, 462 U.S. 213 (1983), the United States Supreme Court held that "the term 'probable cause,' . . . means less than evidence which would justify condemnation . . . it imports a seizure made under circumstances which warrant suspicion."  Id. at 235.  The court continued, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision . . . it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard for probable cause."  Id.

The Ninth Circuit has articulated in more detail the relatively low threshold associated with probable cause in the context of a magistrate issuing a search warrant.  A "magistrate judge is only required to answer the 'common sense, practical question' whether there is 'probable cause' to believe that contraband or evidence is located in a particular place before issuing a search warrant."  See United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006).  This requires only the showing of a fair probability of criminal activity and that evidence of commission of a crime will be located at the place to be searched.  It is not necessary for an affiant to specify with precision which crime might have been committed or which statute was believed to have been violated.  See United States v. Meek, 366 F.3d 705, 7313 (9th Cir. 2004); see also United States v. Koyomejian, 970 F.2d 536, 548 (9th Cir. 1992).  Here, however, Detectives Schwamb and Wilkin not only identified relevant felony provisions of the California Penal Code, they articulated why there was likely to be evidence related to the commission of those crimes at the locations to be searched.

It is also clear that courts should not invalidate warrants by interpreting affidavits in a hyper-technical, rather than a common-sense manner.  <u>Gates</u>, 462 U.S. 213, at 236 (1983).  As the Supreme Court has observed: "doubtful cases should be resolved in favor of upholding the warrant."  <u>See</u> <u>United States v. Ventresca</u>, 380 U.S. 102, 106 (1965); <u>see also</u> <u>United States v. Peacock</u>, 761 F.2d 1313, 1315 (9th Cir. 1985).  "[A]fter-the-fact scrutiny by courts of the sufficiency of the affidavit should not take the form of de novo review."  <u>Gates</u>, 462 U.S. 213, at 236 (1983).  Review of another judge's probable cause determination is deferential, meaning that the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." <u>Id</u>. at 238-39.  Indeed, the Ninth Circuit has held that a reviewing court should give "great deference" to a judge's decision that probable cause existed for issuance of a search warrant.  <u>See</u> <u>United States v. Krupa</u>, 658 F.3d 1174, 1177 (9th Cir. 2011).  This deferential approach is the antithesis of a "grudging or negative attitude" toward search warrants.  <u>United States v. Gourde</u>, 440 F.3d 1065, 1069 (9th Cir. 2006); <u>see also</u> <u>United States v. Seybold</u>, 726 F.2d 502, 505 (9th Cir. 1983) (holding that appellate court's limited scope of review means determining whether the magistrate had a substantial basis for concluding there was a fair probability that evidence would be found).

Applying all of these legal principals - practicality, common sense, a fluid and nontechnical conception of probable cause, and great deference to the magistrate's determination - this court should find that the judges who issued the search warrants that the defendant is challenging correctly concluded that there was probable cause to believe that each warrant would lead to the discovery of evidence of the commission of a crime at the locations described in the warrant.

> 1. A typographical error and the lack of reported IP activity on March 28, 2017, did not undermine the probable cause for issuance of Schwamb's search warrant.

Detective Schwamb had received information from Detective Constantino that a person using the Musical.ly app had created an account on March 22, 2017, while using IP address 75.150.2.233.  This IP address had been assigned to Comcast Cable Communications and was used in the Fresno, California

area.  Detective Constantino had requested on April 3, 2017, that Musical.ly preserve records related to the Musical.ly account for @summerme001.  When Musical.ly responded to the Constantino subpoena, Musical.ly provided information that the account had been accessed from IP address 73.192.178.95 as recently as April 4, 2017.  Musical.ly also provided the G-mail address associated with the account.  Constantino had forwarded evidence that the @summerme001 Musically account holder had sexually exploited a minor female in New York state by directing her to engage in sexually explicit conduct and transmit the resulting images.  Detective Schwamb identified the several California felony provisions that this conduct would have violated.[3]  He also provided in his search warrant affidavit additional relevant information that he had received from Detective Constantino.  Unfortunately, this means that he carried forward in parts of the warrant the typographical error related to one of the IP addresses (incorrectly referencing 75.150.2.223 instead of 75.150.2.233).  But Schwamb also sought from Comcast the same information for the other IP address (73.192.178.95) for which there was no confusion and which unquestionably was connected to the @summerme001 Musical.ly account.

There was no intent to mislead the issuing judge, because Schwamb provided truthful information that he had received from Constantino.  That additional IP addresses had also been associated with the same Musical.ly account did not detract from the fact that the account had been established on March 22, 2017, and that it had been accessed as recently as April 4, 2017, from a Comcast IP address being used in the Fresno area.  If anything, learning that the Musical.ly account was being accessed by multiple IP addresses confirmed that the account was still active and being accessed with regularity.  There is no statutory or other duty for a company to retain IP logs, so the defendant's inference that Musical.ly retained logs that showed no account activity on March 28, 2017, is no more compelling, or even appropriate, than an inference that Musical.ly only retained logs for a limited time period and that they provided the records consistent with their retention practice.

As can be seen from reviewing the records in Attachment 1, discussed in more detail below, had

---

[3] The commission of a single crime, for example even by sending a single photograph to a minor for an illicit purpose, can support a finding of probable cause and issuance of a search warrant to look for evidence of commission of the crime.  See United States v. Meek, 366 F.3d 705, 717 (9th Cir. 2004).

Fresno investigators not carried forward Detective Constantino's errant reference to the IP address

ending in 223 – which seems to have been a copy and paste error repeated by Detective Wilkin – they

likely would have located and arrested the defendant more quickly.  This is so because the IP address

ending in 233 was assigned to the defendant's employer, providing another connection to Blanco.  Thus

investigators would have ruled out Steele Cook as a suspect before going to either residence, as Cook

had no known affiliation to Pacific Valley Solar.  Indeed, if the Fresno investigators had the malicious

intent to identify Blanco as the suspect and mislead judges in the process, they certainly took actions

inconsistent with that by obtaining a search warrant for Steele Cook's separate, more recent residence

and interviewing him before they interviewed the defendant.  Detective Schwamb copied and pasted a

typographical error of one digit in one of two IP addresses that Detective Constantino had referred for

investigation; this is no way can be elevated to an intentionally or recklessly false statement or omission

that justifies further inquiry.  Only after a defendant makes a "substantial preliminary showing" of

intentional or reckless false statements should an evidentiary hearing be conducted.  Franks v. Delaware,

438 U.S. 154, 156 (1978).  Significantly, too, that the IP address for which there was a typographical

error was not the only IP address means that the error was not material to a finding of probable cause.

Investigators still had the ability to locate the defendant, and they did.  It just took additional steps.

> 2.  The same typographical error in Detective Wilkin's search warrant did not undermine or eliminate the probable cause for its issuance.

Detective Wilkin's affidavit in support of a warrant to search the defendant's residence (which

was also believed to be Steele Cook's residence) and person submitted on May 2, 2017, contained even

more information that supported a fair probability that evidence of crimes involving the sexual

exploitation of a minor would be located there and/or on the defendant.  ECF 45, Attachment E (38-50

of 74).  Detective Wilkin stated that someone using the @summerme001 Musical.ly account had

communicated with a girl in New York who stated that she was seven years old.  The @summerme001

user instructed the minor victim how to pose in ways that exposed her buttocks and vagina.  The same

user discussed having sex with the minor female and requested sexually explicit images of her.  When

the requester received the sexually explicit images from the victim, comments such as "take your hand and spread it open with fingers" and "so hot can you spread with your hands too" as well as "Ur so hot, I'm waiting for the next pic" followed.  The @summerme001 account holder also discussed images in which the minor female was encouraged to have sexual interaction with a dog.

Wilkin also outlined for a judge in Fresno that Detective Constantino had obtained subpoena results from Musical.ly which gave insight into who was connected to the account.  Wilkin relayed the information about the IP address used to create the @summerme001 user account (75.150.2.233) and the date on which that account had been created (March 22, 2017) as well as a G-mail address (smog1234555hejsj@gmail.com) and device (Samsung SM-G930T) associated with the account.  He also outlined additional investigative steps that he had taken such as learning that IP addresses assigned to T-Mobile had also been used to access the Musical.ly account.  Wilkin was also able to incorporate the response Detective Schwamb had obtained from Comcast about IP address 73.192.178.95, specifically that the IP address had been assigned to Steele Cook with a service address at 369 West Lexington #204 in Fresno, California.  Comcast also provided information that the e-mail address Jacob_blanco@comcast.net was associated with the account as was phone number 971-340-8426.  Detective Wilkin explained how he connected that phone number to a Facebook account for Steele Cook as well as how Cook was associated with the Lexington address through Fresno Police Department records.  Wilkin also stated that he had observed a vehicle registered in defendant Blanco's name parked at the Lexington apartment.  ECF 45, Attachment E (46-47 of 74).

The facts that Detective Wilkin set forth provided abundant probable cause to believe that evidence of several felonies (such as California Penal Code sections 311.4(c) and 311.11(a) – as articulated in the affidavit) would be located at the residence to be searched and/or on the persons of Jacob Blanco and Steele Cook.  Someone using a Comcast internet account on March 22, 2017, with access to a G-mail address, set up a Musical.ly account that was used on March 28, 2017, to engage in

sexually explicit communications with a minor female in New York.  The account had been used as recently as April 4, 2017, and it had been accessed by multiple IP addresses, and presumably mobile devices, such as a Samsung SM-G930T.  The account user had solicited images of the minor female engaged in sexually explicit conduct on March 28, 2017.  Even though Musical.ly did not provide information about log ins to the account on that date, they also did not provide an explanation for why the earliest date for which log in information was provided was March 30, 2017.  This does nothing to diminish the value of knowing that the account had been established on March 22, 2017, and that it was used less than one week later to victimize a very young girl in New York, and that there was every indication that the account was still being accessed, including from an internet account associated with the residence to which Steele Cook and Jacob Blanco were associated.

It was reasonable to conclude that evidence such as a router, a computer, digital storage devices such as a hard drive or media capable of storing flash memory, and/or cellular phones and associated accessories would not only be at the locations identified in the search warrant but that they would contain valuable evidence of who committed crimes as well as when and how the crimes were committed.  This is especially true given that Detective Wilkin was applying for the search warrant on May 5, 2017, only approximately six weeks after the crimes had been committed.  And given that there was likely a mobile device, such as a Samsung cellular phone involved, this increased the probability that evidence would still be available given that people rarely destroy their phones or computers but instead retain them even if the user upgrades to a different device.  Indeed, more often than not users transfer data from the older device to the newer device.  It is well-settled that a magistrate can rely not only on statements from an affiant but also on reasonable inferences that can be drawn from those statements.  Here it was reasonable to conclude that any device listed in the search warrant application and the related list of items to be seized and searched would have evidence relevant to the investigation being conducted by Detectives Constantino, Schwamb, and Wilkin.  The Ninth Circuit in <u>United States</u>

v. Kelley, 482 F.3d 1047, 1055 (9th Cir. 2007), noted when reviewing a challenged search warrant that led to the seizure of a computer that contained child pornography "we are not asked to decide whether Kelley could be arrested, or convicted on the basis of the evidence in the affidavit. We must simply decide whether there is a 'fair probability' that, based upon the facts set forth and inferences from them, his computer would house" relevant evidence. The court also observed that Ninth Circuit decisions had emphasized that "a location, such as Kelley's computer can be searched for evidence of a crime even if there is no probable cause for arrest, or a prima facie showing of criminal activity, let alone proof sufficient to prosecute a criminal case beyond a reasonable doubt, or even to prevail under the civil burden that is more likely than not." Id., citing Gates, 462 U.S. at 235, Gourde, 440 F.3d at 1072-73, United States v. Hay, 231 F.3d 630, 635 (9th Cir. 2000).

The Ninth Circuit has relatively recently reiterated legal principles that weigh heavily against the defendant's arguments. In United States v. Schesso, 730 F.3d 1040 (9th Cir. 2013), the Ninth Circuit reversed a district court decision to suppress evidence that had been seized under the authority of a state search warrant. The warrant authorized a search of the defendant's residence for "[a]ny computer or electronic equipment or digital data storage devices that are capable of being used" for violations related to child pornography. The warrant permitted seizure of items and their transfer to a law enforcement setting for examination, analysis, and recovery of data. The warrant did not contain any protocols for sifting through the data or any provision for the return of non-evidentiary property. The district court, in part, found that the affidavit failed to connect generalized statements about child pornography collectors to the defendant thus rendering the warrant facially defective and the good faith exception inapplicable. The Ninth Circuit disagreed and observed that it reviews for "clear error" whether a state court judge issuing the warrant had a substantial basis for concluding that probable cause existed and that it must give "great deference" to such a finding. Id. at 1045, citing United States v. Hay, 231 F.3d 630, 634 n.4 (9th Cir. 2000).

The Ninth Circuit articulated other principles that are helpful to issues in this case. The Ninth Circuit concluded that the state court judge issuing the warrant made the "practical, common-sense decision" that "given all the circumstances set forth in the affidavit before him . . . there [was] a fair probability that contraband **or evidence" of the offenses** would be found on the defendant's computer and other digital storage equipment (emphasis supplied). United States v. Schesso, 730 F.3d 1040, 1046 (9th Cir. 2013), citing Gates, 103 S.Ct. 2317. Importantly, the Ninth Circuit reiterated that a search warrant can be issued not only to find contraband, but also evidence of the commission of a crime. The court concluded that "the facts cited in the affidavit, combined with reasonable inferences drawn from those facts, provided probable cause to search Schesso's entire computer system and his digital storage devices for "**any evidence**" of possession of or dealing in child pornography. Id. at 1045 (emphasis supplied). The court specifically found that "there was a fair probability that the eDonkey [contraband] video as well as other evidence of possession of and dealing in child pornography would be found on Schesso's equipment," so "the warrant was not overbroad." Id. at 1046. This is consistent with long-standing Supreme Court and Ninth Circuit precedent. See United States v. Hay, 231 F.3d 630 (9th Cir. 2000) ("it is well-established that a location can be searched for evidence of a crime even if there is no probable cause to arrest the person at the location); see also Zurcher v. The Stanford Daily, 436 U.S. 547, 556 (1970) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that specific 'things' to be searched for and seized are located on the property to which entry is sought."); United States v. Taketa, 923 F.2d 665, 674 (9th Cir. 1991) ("[T]he correct inquiry is whether there was reasonable cause to believe that evidence of . . . misconduct was located on the property that was searched.") United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991) ("Probable cause exists when, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

Here, Detective Wilkin set forth facts that demonstrated the Musical.ly account @summerme001 was used by someone who had demonstrated a strong sexual interested in at least one minor female. There was a fair probability that evidence of that interest would be found on any computer, phone, or other electronic device capable of storing data at the apartment to be searched or on the person(s) of the occupants.  The Ninth Circuit noted that it has "repeatedly found equally broad searches constitutional on similar or less evidence" than that which supported the warrant in <u>Schesso</u>.  <u>Id</u>., citing <u>United States v. Krupa</u>, 658 F.3d 1174, 1178 (9th Cir. 2011) (holding valid a search of fifteen computers at a residence based on evidence of one contraband image and a report of child neglect); <u>United States v. Brobst</u>, 558 F.3d 982, 993-94 (9th Cir. 2009) (holding valid a warrant authorizing the search and seizure of photographs, compact disks, floppy disks, hard drives, memory cards, printers, other portable digital devices, DVDs, and video tapes based on a witness's observation of one illicit photograph in defendant's home); <u>Lacy</u>, 119 F.3d at 746 (9th Cir. 1997) (holding valid a warrant authorizing the "blanket seizure" of Lacy's "entire computer system" because the government did not know where at least two illicit child pornography images were stored and "no more specific description of the computer equipment sought was possible").

The Ninth Circuit in <u>Schesso</u> also rejected the defendant's argument that the state search warrant was invalid, because it had been premised upon "stale" information.  Investigators had connected Schesso to contraband that had been transmitted approximately twenty months before the challenged search warrant was issued.  The Ninth Circuit noted that information underlying a warrant is not stale "if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  <u>United States v. Schesso</u>, 730 F.3d 1040, 1047 (9th Cir. 2013), citing <u>United States v. Lacy</u>, 119 F.3d at 745-46.  Here Detective Wilkin was applying for the search warrant on May 5, 2017, only approximately six weeks after the crimes had been committed.  Given the chronology that detectives had articulated in their search warrant affidavits, it is difficult to imagine

them working with more alacrity and providing the reviewing judges with fresher information.

## IV.     THE SEARCH WARRANTS WERE ALSO OBTAINED AND EXECUTED IN GOOD FAITH.

There was sufficient probable cause to support the issuance of the challenged search warrants, and the seizing officers acted in good faith in obtaining and executing them.  In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court considered "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate but ultimately found not to be supported by probable cause." Leon, 468 U.S. at 900.  After considering that issue, the Supreme Court ultimately ruled that, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  Id. at 926.

In Herring v. United States, 129 S.Ct. 695, 698 (2009), the Supreme Court reiterated, without equivocation, that "suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct."  In fact, "exclusion has always been [the court's] last resort, not ... first impulse."  Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159 (2006); United States v. Noster, 573 F.3d 664, 670 (9th Cir. 2009).  Accordingly, "this judicially created rule is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" Herring, 129 S.Ct at 699 (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613 (1974)).

The Court held that "the exclusionary rule is not an individual right and applies only where it 'results in appreciable deterrence.'" Herring, 129 S.Ct. at 700 (quoting United States v. Leon, 468 U.S.

897, 909, 104 S.Ct. 3405 (1984)).[4]  More precisely, the "benefits of deterrence" invoked through

exclusion of challenged evidence "must outweigh the costs."  Herring, 129 S.Ct. at 700 (citing Illinois

v. Krull, 480 U.S. 340, 352-353, 107 S.Ct. 1160 (1987)).  "The principle cost of applying the

[exclusionary] rule is, of course, letting guilty and possibly dangerous defendants go free – something

that 'offends the basic concepts of the criminal justice system.'" Herring, 129 S.Ct. at 701 (citing Leon,

468 U.S. at 908.))  On this end, "'the rule's costly toll upon truth-seeking and law enforcement

objectives presents a high obstacle for those urging [its] application.'" Herring, 129 S.Ct. at 701

(quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S.  357, 363, 118 S.Ct. 2014

(1998)).

Indeed, "the exclusionary rule does not apply if the police acted in 'objectively reasonable

reliance' on a subsequently invalidated search warrant."  Herring, 129 S.Ct. at 701.  Stated another way,

"[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can

meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid to the justice

system. ... [T]he exclusionary rule serves to deter deliberate, reckless or grossly negligent conduct, or in

some cases recurring or systematic negligence."  Herring, 129 S.Ct. at 702; United States v. Nassar, 555

F.3d 722, 726, n.13 (9th Cir. 2009).

It is well established that suppression of evidence is not an appropriate remedy where an officer

executes a warrant he reasonably believed to be valid.  See Illinois v. Krull, 480 U.S. 340, 349-50

(1987).  The defendant has done nothing to demonstrate that Detectives Schwamb and Wilkin had any

reason to believe that they were not executing valid search warrants.  Nor has the defendant shown that

the judges who issued the warrants were not neutral in considering the evidence presented.  As such,

---

[4] The Court in Herring further stated "[w]e have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."  Id., at 700.  Instead, "the very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision."  Id., at 699.

this court should not suppress any evidence obtained as a result of the execution of the warrants.  In cases such as this, the Ninth Circuit has found that the issue regarding the admissibility of evidence turns on the extent an agent's reliance on a warrant is objectively reasonable.  United States v. Brown, 951 F.2d 999 (9th Cir. 1992).  In Brown, the Ninth Circuit held that the good faith exception applied despite a lack of probable cause where the agents conducted the search with a good faith belief in the validity of the warrant.  Id.  Citing Leon, Brown highlighted the rationale of the good faith exception to the exclusionary rule:

> A motion to suppress evidence obtained with an invalid search warrant may be denied if the officers who obtained the evidence had a reasonable belief in its validity... "Penalizing the officer for the magistrate's error, rather than his own," the Court reasoned, "cannot logically contribute to the deterrence of Fourth Amendment violations." ... The good-faith exception does not apply, however, where the warrant is facially deficient, where the magistrate was misled by an officer's dishonesty or disregard for the truth, or where the magistrate abandons his judicial role.

> Id., at 1004, citing Leon and Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424 (1984).

As discussed above, the defendant has not challenged any of the investigative work that Detective Constantino did before he referred his investigative lead and request to the Central California ICAC.  Unfortunately, even though Constantino had correct information – which he forwarded to investigators in Fresno – he also made a typographical error which made its way into subsequent search warrants.  But this only caused Fresno investigators to exert more investigative resources, which they were able to do because they also had information for a second IP address (73.192.178.95) that was not affected by the typographical error with the other IP address.  The Fresno investigators methodically took sound investigative steps to determine who the individual associated with the Musical.ly username @Summerme001 was, where the person lived, and which electronic devices the person had been using. Cf. United States v. Crews, 502 F.3d 1130, 1138 (9th Cir. 2007) (finding the amount of work that goes into investigation, surveillance and execution of the warrant further demonstrates the good faith efforts of the police).

16

The Ninth Circuit has held that the government is not required to provide more facts than necessary to show a "fair probability" that a crime has been committed.  United States v. Gourde, 440 F.3d 1065, 1073 (9th Cir. 2006).  Moreover, the benchmark is not what law enforcement "could have" done.  "An affidavit may support probable cause even if the government fails to obtain potentially dispositive information."  Id., see also United States v. Miller, 753 F.2d 1475, 1481 (9th Cir. 1985) (holding that an affidavit supported probable cause even though "[i]ndependent verification could have been easily accomplished in this case" and the "officers failed to take these simple steps"); United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995) ([T]he magistrate judge erred in focusing his Franks v. Delaware analysis in what the FBI could have learned with more investigation . . . ."); United States v. Dale, 991 F.2d 819, 844 (D.C. Cir. 1993) (noting that "failure to investigate fully is not evidence of an affiant's reckless disregard for the truth" and that "probable cause does not require an officer to . . . accumulate overwhelming corroborative evidence".).

Here, the defendant has inferred a malicious intent by law enforcement, but investigators had no reason to make the innocent mistake that they did.  In fact, it worked to their detriment, because the correct IP address (75.150.2.233 rather than 75.150.2.223) would have taken them more quickly and efficiently to the defendant at his place of employment (where they ultimately found him after following a more circuitous route).  Ironically, the defendant has committed the very same mistake in constructing his motion, because he inadvertently referenced an incorrect IP address.  More specifically, on line 14 of page seven of his motion (ECF 145), Blanco states that IP address 172.158.24.166 was referenced in a Musical.ly subpoena return.  But the return actually refers to IP address 172.58.24.166 (without a 1 before the 5).  ECF 145 at 12 (defendant's incorrect reference at line 7) and 54 (last line).  The government does not infer that the defendant did anything other than attempt to copy the correct information, just as Detectives Constantino, Schwamb, and Wilkin intended in good faith to present accurate information to people who received it.  But the defendant's own motion undermines the

arguments by which he had attempted to interject ill motives to investigators.  Although the challenged

warrants were valid and there is no need for this court to find that they were issued and executed in good

faith, because they were, this provides an additional justification to reject the defendant's arguments.

### V.   THE COURT SHOULD ALSO DENY THE DEFENDANT'S MOTION, BECAUSE LAW ENFORCEMENT INVESTIGATORS IN FRESNO INEVITABLY WOULD HAVE DISCOVERED BLANCO'S IDENTITY AND HAD PROBABLE CAUSE TO SEIZE AND SEARCH THE SAME DEVICES BASED ON AN IDEPENDENT INVESTIGATIVE LEAD FROM MISSISSPPI

Not only were the search warrants that investigators in Fresno executed valid, the investigators

would have had probable cause to obtain similar warrants based upon information they only a short time

later received from investigators in Mississippi.  Blanco told investigators in Fresno that he had likely

victimized at least fifty young females.  This was later confirmed, in part, when Fresno investigators

received from investigators in Mississippi an independent lead about the sexual exploitation of a nine

year-old girl near Madison, Mississippi.  After the young girl revealed to her mother in April 2017 that

someone using the screen name "Summerme001" on Musical.ly had asked her to take and transmit

sexually explicit images of herself, law enforcement got involved.  Investigators took steps similar to

those already taken by Detective Constantino such as sending a subpoena to Musical.ly to identify

"Summerme001" account information.  The Mississippi investigators received the same information

from Musical.ly which confirmed that the account had been established on March 22, 2017, with IP

address 75.150.2.233.  Investigators in Mississippi then sent a subpoena to Comcast Communications,

because the IP address had been assigned to Comcast.  Comcast reported that IP address 75.150.2.233

was assigned to Valley Pacific Builders at 4920 E Yale Street, Suite 101 in Fresno, California.  This was

Blanco's employer and the location where Fresno investigators had found and interviewed him.   Based

upon their investigation, the Mississippi investigators contacted the ICAC commander in Fresno in

approximately late September 2017 and learned that the Central California ICAC had already identified

Blanco, executed search warrants, recovered relevant evidence, and had arrested him for child sexual exploitation offenses.  Attachment 1 (Bates 501-02, 562-63).

The United States Supreme Court and Ninth Circuit Court of Appeals have held that if, "by following routine procedures, the police would inevitably have uncovered the evidence," then the evidence will not be suppressed despite any constitutional violation.  Nix v. Williams, 467 U.S. 431 (1984).  The Supreme Court ruled in Nix that evidence of the location and condition of a victim's body was admissible in a defendant's murder trial even though the evidence was obtained in violation of the defendant's Sixth Amendment right to counsel.  The Court reasoned that an ongoing search directed by the Iowa Bureau of Criminal Investigation would inevitably have discovered the body.

The Ninth Circuit has recognized this doctrine and does not require that the evidence be obtained from a previously initiated, independent investigation.  United States v. Boatwright, 822 F.2d 862, 864-65 (9th Cir. 1987).   The government can meet its burden by establishing that, by following routine procedures, the police would inevitably have discovered the evidence at issue.  United States v. Martinez-Gallegos, 807 F.2d 868, 870 (9th Cir. 1987).  In Martinez-Gallegos, the defendant challenged a district court's refusal to suppress evidence obtained from an immigration file that the government maintained on him.  The government located the file after it had obtained statements from him that violated his Miranda rights.  The Ninth Circuit affirmed the district court's ruling that the defendant's immigration file would have been discovered even without the benefit of his statements, because the next step of investigators would have been to obtain the file.   Similarly, in United States v. Andrade, 784 F.2d 1431, 1433 (9th Cir. 1986), the Ninth Circuit did not rule on the validity of an allegedly illegal search of a defendant's garment bag by Drug Enforcement Agents, because the court held that the evidence would inevitably have been discovered through a routine inventory search of his belongings after his arrest at an airport.

In this case, however, the defendant entered the radar screens of several law enforcement agencies independently of each other, as not long after law enforcement from New York sent its lead to Fresno, the same Central California ICAC investigators received very similar information from investigators in Mississippi.  The Mississippi information provided probable cause to search for evidence connected to the IP address (75.150.2.233) used to establish the Musical.ly account associated with the @Summerme001 username.  Mississippi investigators also received information that the account was associated with a G-mail address (smog1234555hejsj@gmail.com) and phone number (641-210-0699).  Chances are high that Fresno investigators would not have mistyped the IP address, so they would have gone directly to Blanco's employer instead of following a more circuitous route connected to his former roommate and that roommate's more current residence.  There is every reason to believe that search warrants similar to those issued in April and May 2017 would have been issued and executed in October 2017 based upon the information sent to Fresno from Mississippi.   So not only are the challenged warrants valid, the same evidence would have been discovered and lawfully seized several months later, based upon the thorough investigative work by detectives in Mississippi.  So the challenged evidence should not be subject to the exclusionary rule for this additional reason, because suppressing the evidence would put the government in a worse position "than it would have been in if no illegality had transpired."  <u>Nix</u>, 467 U.S. at 443.  This is especially true here where Blanco is the only one who has committed any illegality.

///

///

///

///

///

///

1

## V.   CONCLUSION

There was probable cause for the issuance of the search warrants that were executed in this case. They were also issued and executed in good faith, and they led to the seizure of evidence that would have been discovered and obtained a short time later by other means.  Because there is no legal or factual basis upon which the defendant's motion can be granted, the court should deny it.

Dated:  February 4, 2019

McGREGOR W. SCOTT
United States Attorney


By:   /s/ DAVID L. GAPPA

DAVID L. GAPPA
Assistant United States Attorney

NADIA C. PRINZ
Trial Attorney